# Exhibit C

# SUBSIDIARY GUARANTY

## (First Lien)

This **GUARANTY** (the "Guaranty") is made and entered into as of June 8, 2006 (the "Closing Date") by each person signing this Guaranty, each having an address as stated below its signature of this Guaranty (each, a "Guarantor"), for the benefit of CREDIT SUISSE, CAYMAN ISLANDS BRANCH, in its capacity as Administrative Agent and Collateral Agent for the Lenders, as more fully described in the First Lien Credit Agreement, as defined below (the "Administrative Agent" ). This Guaranty is made with reference to the following facts (with some capitalized terms being defined below):

    A.    The Lenders, acting by and through Administrative Agent, are making certain loans (the "Loan") in the amount of $525,000,000, to Ginn-LA CS Borrower, LLC, a Delaware limited liability company and Ginn-LA Conduit Lender, Inc., a Delaware corporation (collectively, the "Borrower").

    B.    The Loan is to be evidenced by a note, to the extent requested by the Lenders, dated as of the Closing Date executed by Borrower (as it may be modified, extended, renewed, or replaced, the "Note"), and is more fully described in the First Lien Credit Agreement dated as of the Closing Date entered into between Administrative Agent (as Administrative Agent and Collateral Agent for the Lenders, as defined in the First Lien Credit Agreement), Credit Suisse Securities (USA) LLC, as paying agent, fronting bank, sole lead arranger and sole bookrunner and Borrower (the "First Lien Credit Agreement").

    C.    As security for the Loan, Guarantor is executing and delivering to Administrative Agent for the Lenders a First Lien Mortgage or Collateral Assignment of Mortgage and Note with respect to the real property commonly known as Grand Bahama (West End) (the "Mortgage") encumbering the real property commonly known as Quail West, Laurelmor, Tesoro, Tesoro Beach Club and Hammock Beach River Club (the "Real Property Collateral").

    D.    Guarantor acknowledges that Administrative Agent has examined, among other things, Borrower's creditworthiness and ability to pay and perform the Obligations and has requested, as a condition of making the Loan, that Guarantor guaranty some or all Obligations, as provided for below.

    E.    Guarantor, a wholly-owned subsidiary of Borrower, will benefit if the Lenders, acting through Administrative Agent, make the Loan; and desires that the Lenders, acting through Administrative Agent, make the Loan to Borrower.

    F.    The Lenders would not make, and would not be obligated to make, the Loan to Borrower unless Guarantor executed this Guaranty. This Guaranty is therefore delivered to Lenders, acting through Administrative Agent, to induce the Lenders to make the Loan.

**NOW, THEREFORE,** in consideration of the foregoing recitals, and for $10 and other good, adequate, and valuable consideration, the receipt of which Guarantor acknowledges, Guarantor agrees:

1. Definitions. For purposes of this Guaranty, the following terms shall be defined as set forth below. In addition, any capitalized term defined in the First Lien Credit Agreement but not defined in this Guaranty shall have the same meaning in this Guaranty as in the First Lien Credit Agreement.

a. "Borrower" means: (a) Borrower as defined above, acting on its own behalf; (b) any estate created by the commencement of an Insolvency Proceeding affecting Borrower; (c) any trustee, liquidator, sequestrator or receiver of Borrower or Borrower's property; and (d) any similar person appointed in any Insolvency Proceeding of Borrower.

b. "Guarantied Obligations" means all Obligations.

c. "Insolvency Proceeding" means any Proceeding under any present or future state or federal law on bankruptcy, reorganization, insolvency or relief of debtors, appointment of a trustee (or custodian or receiver), assignment for the benefit of creditors, readjustment, liquidation, dissolution, or the rights of creditors generally, including the federal bankruptcy code and laws on fraudulent conveyances and fraudulent transfers.

d. "Loan Documents" shall have the meaning given such term in the First Lien Credit Agreement. If the Loan Documents, as so defined, are modified pursuant to any Insolvency Proceeding, even if Administrative Agent consented to such modification, then such modification shall not affect the definition of "Loan Documents" under this Guaranty, unless Administrative Agent elects otherwise in its sole discretion.

e. "Preserved Defenses" means only any defenses that Borrower could, under the express terms of the Loan Documents, properly assert against the Obligations based upon only: (a) actual payment and performance in compliance with the Loan Documents; or (b) Administrative Agent's acts and omissions.

f. "Proceeding" means any action, suit, nonjudicial foreclosure, arbitration hearing or proceeding arising out of, or relating to the interpretation or enforcement of, this Guaranty or the Loan Documents, including: (a) an Insolvency Proceeding; and (b) any proceeding in which Administrative Agent endeavors to realize upon any Collateral or enforce any Loan Document(s) against Borrower, Guarantor, or any other obligor.

g. "State" means the State of New York.

2. Guarantied Obligations. Guarantor unconditionally, absolutely and irrevocably guarantees Borrower's prompt and complete payment, observance, fulfillment and performance of all Guarantied Obligations. Guarantor shall be personally liable for, and personally obligated to perform, all Guarantied Obligations. All assets of Guarantor shall be subject to recourse if Guarantor fails to pay and perform any Guarantied Obligation. Guarantor shall personally pay and perform all Guarantied Obligations, as if Guarantor had itself assumed and agreed to

perform such Guarantied Obligations in the first instance. Administrative Agent shall apply any payments Guarantor makes under this paragraph on account of such Guarantied Obligations as Administrative Agent shall determine. To the extent that Guarantor at any time incurs any liability under this Guaranty as to any Guarantied Obligations, Guarantor shall immediately pay Administrative Agent (to be applied on account of the Guarantied Obligations) the amount provided for in this Guaranty, without any requirement that Administrative Agent demonstrate that the Real Property Collateral provides inadequate security for the Loan; that Administrative Agent has currently suffered any loss; or that Administrative Agent has otherwise exercised (to any degree) or exhausted any of Administrative Agent's remedies against Borrower or any Collateral. If (a) the Loan Documents provide that any Guarantied Obligation does not arise unless and until Administrative Agent has given notice to Borrower (whether or not any additional conditions must be satisfied for such liability to arise), and (b) Borrower is the subject of any Insolvency Proceeding, then for purposes of this Guaranty and Guarantor's liability, Administrative Agent may give any such notice to Guarantor in place of Borrower, and, as against Guarantor, such Guarantied Obligation shall arise at the same time and in the same manner as if Administrative Agent had validly given notice to Borrower as of the date of Administrative Agent's notice to Guarantor, and no notice to Borrower shall be required.

3. Nature and Scope of Liability. Guarantor's liability under this Guaranty shall be primary and not secondary, in the full amount of the Guarantied Obligations, including any interest, default interest, costs and fees (including attorney's fees) that would have accrued under the Loan Documents on account of the Guarantied Obligations but for any Insolvency Proceeding affecting Borrower, but subject to the Preserved Defenses.

4. Changes in Loan Documents. Without notice to, or consent by, Guarantor, and in Administrative Agent's sole and absolute discretion and without prejudice to Administrative Agent or in any way limiting or reducing Guarantor's liability under this Guaranty, Administrative Agent may: (a) grant extensions of time, renewals or other indulgences or Modifications to Borrower or any other party liable under any Loan Document(s); (b) change the rate of interest under the Note; (c) change, amend, or modify any Loan Document(s); (d) authorize the sale, exchange, release, or subordination of any Collateral; (e) accept or reject additional Collateral; (f) discharge or release any Loan Party or any other party or parties liable under the Loan Documents or any Collateral; (g) foreclose or otherwise realize on any Collateral, or attempt to foreclose or otherwise realize on any Collateral, whether successfully or unsuccessfully; (h) accept or make compositions or other arrangements or file or refrain from filing a claim in any Insolvency Proceeding; (i) make other or additional loans to Borrower in such amount(s) and at such time(s) as Administrative Agent may determine; (j) credit payments in such manner and order of priority to the Obligations as Administrative Agent may determine in its discretion; and (k) otherwise deal with Borrower and any other party related to the Loan or any Collateral as Administrative Agent may determine in its sole and absolute discretion. Without limiting the generality of the foregoing, Guarantor's liability under this Guaranty shall continue even if Administrative Agent alters any Obligations in any way or if Administrative Agent's remedies or Guarantor's remedies or rights against Borrower are in any way impaired or suspended without Guarantor's consent. If Administrative Agent performs any action described in this paragraph, then Guarantor's liability shall continue in full force and effect even if Administrative Agent's actions impair, diminish or eliminate Guarantor's subrogation,

contribution, or reimbursement rights (if any) against Borrower or any other person, or otherwise adversely affect Guarantor or expand Guarantor's liability. Guarantor hereby consents to each and all of the foregoing acts, events and occurrences.

5. Nature of Guaranty. Subject to the terms of this Guaranty and subject to the Preserved Defenses, Guarantor's liability under this Guaranty is a guaranty of payment and performance of the Guarantied Obligations, and not a guaranty of collection or collectibility. Guarantor's liability under this Guaranty is not conditioned or contingent upon the genuineness, validity, regularity, or enforceability of any of the Loan Documents. Guarantor's liability under this Guaranty is a continuing, absolute, and unconditional obligation under any and all circumstances whatsoever, including the renewal, extension, compromise, refinance or restructure from time to time of the Guaranteed Obligations, subject only to the Preserved Defenses. Guarantor is fully obligated under this Guaranty even if Borrower had no liability at the time of execution of the Loan Documents or later ceases to be liable under any Loan Document, whether through Insolvency Proceedings or otherwise, subject only to the Preserved Defenses. Guarantor may not claim, and irrevocably covenants not to raise or assert, any defense, offset, claim, counterclaim, setoff, diminution, abatement, or right of recoupment against the Guarantied Obligations that would or might be available to Borrower, except the Preserved Defenses. If any Guarantied Obligation is or becomes void or unenforceable (because of inadequate consideration, lack of capacity, Insolvency Proceedings, or for any other reason except a Preserved Defense), then Guarantor's liability under this Guaranty shall continue in full force for all Guarantied Obligations as if they were and continued to be legally enforceable. Guarantor waives any defenses arising or purportedly arising from: (a) how Administrative Agent disburses the Loan to Borrower or otherwise; (b) Administrative Agent's waiver of the terms of any Loan Document; or (c) Administrative Agent's failure to require full compliance with the Loan Documents. Except to the extent (if any) that this Guaranty expressly provides otherwise, Guarantor's liability under this Guaranty shall continue until all Obligations have been paid in full and all other performance required under the Loan Documents has been rendered in full, subject to the Preserved Defenses. Guarantor's liability under this Guaranty shall not be limited or affected in any way by any impairment or any diminution or loss of value of any Collateral whether caused by (a) Hazardous Materials, (b) Administrative Agent's failure to perfect a security interest in any Collateral, (c) any disability or other defense(s) of Borrower or any other person obligated to pay the Obligations, or (d) Borrower's breach of any representation or warranty in any Loan Document. Nothing in this paragraph limits any Preserved Defense.

6. Waivers of Rights and Defenses. Guarantor waives any right to require Administrative Agent to (a) proceed against Borrower or any other person obligated on the Obligations, (b) proceed against or exhaust any Collateral, or (c) pursue any other right or remedy for Guarantor's benefit. Administrative Agent may proceed against Guarantor for the Guarantied Obligations without proceeding against Borrower, any other obligor, or any Collateral. Administrative Agent may unqualifiedly exercise in its sole discretion any or all of Administrative Agent's remedies against Borrower or any other person without impairing Administrative Agent's rights and remedies in enforcing this Guaranty, under which Guarantor's liabilities for the Guarantied Obligations shall remain independent and unconditional. Guarantor agrees and acknowledges that Administrative Agent's exercise of certain of such rights or

remedies may affect or eliminate Guarantor's right of subrogation or recovery against Borrower (if any) and that Guarantor may incur a partially or totally nonreimbursable liability in performing under this Guaranty. Guarantor has assumed the risk of any such loss of subrogation rights, even if caused by Administrative Agent's acts or omissions. If Administrative Agent's enforcement of rights and remedies, or the manner of such enforcement, limits or precludes Guarantor from exercising any right of subrogation that might otherwise exist, then such limitation or preclusion shall not in any way limit Administrative Agent's rights to enforce this Guaranty. Guarantor hereby waives any right to assert against Administrative Agent as a defense, counterclaim, setoff or crossclaim, any defense (legal or equitable), counterclaim, setoff or crossclaim which Guarantor may now or at any time hereafter have under applicable law, rule, arrangement or relationship against Borrower, Administrative Agent or any other party, other than Preserved Defenses.

7. Foreclosure; Application of Payments. Except as the Loan Documents otherwise provide, without limiting the generality of any other waivers in this Guaranty, Guarantor expressly waives any statutory or other right that Guarantor might otherwise have to: (i) limit Guarantor's liability after a nonjudicial foreclosure sale to the difference between the Guarantied Obligations and the fair market value of the property or interests sold at such nonjudicial foreclosure sale or to any other extent, (ii) otherwise limit Administrative Agent's right to recover a deficiency judgment after any foreclosure sale, or (iii) require Administrative Agent to exhaust its Collateral before Administrative Agent may obtain a personal judgment for any deficiency. Any proceeds of a foreclosure or similar sale may be applied first to Obligations (if any) that do not also constitute Guarantied Obligations. Guarantor acknowledges and agrees that any nonrecourse or exculpation provided for in any Loan Document, or any other provision of a Loan Document limiting Administrative Agent's recourse to specific Collateral or limiting Administrative Agent's right to enforce a deficiency judgment against Borrower, shall have absolutely no application to Guarantor's liability for the Guarantied Obligations. To the extent that Administrative Agent collects or receives any sums or payments from any source on account of the Obligations, Administrative Agent may, but need not, apply such amounts first to any Obligations not constituting Guarantied Obligations, regardless of how the payor characterizes any such payments and/or amounts. Nothing in this paragraph limits any Preserved Defenses.

8. Additional Waivers. Guarantor waives diligence and all demands, protests, presentments and notices of every kind or nature, including notices of protest, dishonor, nonpayment, acceptance of this Guaranty and the creation, renewal, extension, modification, or accrual of any Obligations. Guarantor waives the right to plead any and all statutes of limitations as a defense to Guarantor's liability under this Guaranty or the enforcement of this Guaranty. No failure or delay by Administrative Agent in exercising any power, right, or privilege under this Guaranty shall impair or waive any such power, right or privilege. Nothing in this paragraph limits any Preserved Defense and nothing herein shall constitute a waiver of any notice expressly required under any Loan Document.

9. Full Knowledge. Guarantor acknowledges, represents, and warrants that Guarantor has had a full and adequate opportunity to review the Loan Documents, the transaction contemplated by the Loan Documents and all underlying facts relating to such transaction. Guarantor represents and warrants that Guarantor fully understands: (a) the

remedies Administrative Agent may pursue against Borrower in the event of a default under the Loan Documents, (b) the value (if any) of any Collateral, and (c) Borrower's financial condition and ability to perform under the Loan Documents. Guarantor shall keep itself fully informed regarding all aspects of Borrower's financial condition and the performance of Borrower's obligations to Administrative Agent. Guarantor agrees that Administrative Agent has no duty, whether now or in the future, to disclose to Guarantor any information about Borrower or any Collateral. If at any time provided for in the Loan Documents, the Guarantor agrees that its bankruptcy, insolvency, default, or other actions or events relating to Guarantor may be events of default under the Loan Documents.

10. Consent to Jurisdiction. Any Proceeding to enforce this Guaranty may be brought in any state or federal court located in the State, as Administrative Agent may elect. By executing this Guaranty, Guarantor irrevocably accepts and submits to the nonexclusive personal jurisdiction of each of the aforesaid courts, generally and unconditionally with respect to any such Proceeding. Guarantor shall not assert any basis to transfer jurisdiction of any such proceeding to another court. Guarantor further agrees that a final judgment against Guarantor in any Proceeding shall be conclusive evidence of Guarantor's liability for the full amount of such judgment.

11. Merger; No Conditions; Amendments; Assignment. This Guaranty and documents referred to in this Guaranty contain the entire agreement among the parties relating to the matters set forth in this Guaranty. This Guaranty supersedes all prior agreements among the parties relating to such matters. No course of prior dealings among the parties, no usage of trade, and no parol or extrinsic evidence of any nature shall be used to supplement, modify, or vary any term of this Guaranty. This Guaranty is unconditional. There are no unsatisfied conditions to the full effectiveness of this Guaranty. No term or provision of this Guaranty may be changed, waived, revoked, or amended without Administrative Agent's prior written consent. If any provision of this Guaranty is unenforceable, then all other provisions shall remain fully effective. Neither this Guaranty nor any rights under this Guaranty may be assigned by Guarantor without the prior written consent of Administrative Agent.

12. Attorney's Fees and Costs. Guarantor shall reimburse Administrative Agent and the Lenders for all reasonable costs and attorney's fees they actually incur in the following, whether or not they prevail: (a) any Proceeding between Borrower or Guarantor and Administrative Agent or any Lender; (b) any Proceeding in which Administrative Agent or any Lender enforces or attempts to enforce this Guaranty or the Loan against Borrower or Guarantor; or (c) litigation between or among any of Borrower, Guarantor, and any other persons liable for the Obligations.

13. Further Assurances. Guarantor shall execute and deliver such further documents, and perform such further acts, as Administrative Agent may reasonably request to achieve the intent of the parties as expressed in this Guaranty, provided in each case that any such documentation is consistent with this Guaranty and with the Loan Documents.

14. Miscellaneous. Administrative Agent may assign this Guaranty together with any one or more of the Loan Documents, without in any way affecting Guarantor's liability. This Guaranty shall benefit Administrative Agent and its successors and assigns and shall bind

Guarantor and its heirs, executors, administrators, successors, and assigns. All notices given hereunder shall be given in accordance with the notice information and in the manner set forth in Section 9.7 of the First Lien Credit Agreement. A party may change its address by notice given in the same manner. This Guaranty shall be enforced and interpreted according to the laws of the State, disregarding its rules on conflicts of laws. The word "include" and its variants shall be interpreted in each case as if followed by the words "without limitation." This Guaranty is executed and delivered for the benefit of Administrative Agent and its heirs, successors, and assigns, and is not intended to benefit any third party. The invalidity or unenforceability of any particular provision of this Guaranty shall not affect the other provisions, and this Guaranty shall be construed in all respects as if any invalid or unenforceable provision were omitted.

15. Use of Designee. Administrative Agent may, at its option, exercise any of its rights and remedies under this Guaranty through its assignee, designee, nominee, or wholly-owned subsidiary (a "Designee"). Any Designee shall be entitled to all the rights, remedies, protections and indemnities of the Administrative Agent under the Loan Documents, as if each reference to Administrative Agent included a reference to such Designee.

16. WAIVER OF JURY TRIAL. ADMINISTRATIVE AGENT AND GUARANTOR EACH WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN ANY WAY IN RESOLVING ANY DISPUTE, WHETHER SOUNDING IN CONTRACT, TORT, OR OTHERWISE ARISING OUT OF, CONNECTED WITH, RELATED TO, OR INCIDENTAL TO THE RELATIONSHIP ESTABLISHED BETWEEN THEM IN CONNECTION WITH THE LOAN DOCUMENTS, OR THE INTERPRETATION OR DETERMINATION THEREOF, OR THE ENFORCEMENT OF ANY ADMINISTRATIVE AGENT'S REMEDIES. ANY SUCH DISPUTES SHALL BE RESOLVED IN A BENCH TRIAL WITHOUT A JURY.

17. Maximum Guarantied Amount. Notwithstanding anything to the contrary in this Guaranty, Guarantor's liability shall in no event exceed the maximum amount that Administrative Agent could, at the date of determination, claim from Guarantor without rendering Administrative Agent's claim against Guarantor voidable or avoidable under 11 U.S.C. § 548 or any applicable state fraudulent transfer or fraudulent conveyance law (whether statutory or common law) after taking into account, among other things, Guarantor's rights of contribution and indemnity from any other person.

18. Multiple Guarantors. Every reference to "Guarantor" shall refer to any one or more of the multiple person(s) signing this Guaranty, jointly and severally. Each person signing this Guaranty shall have all the liability that such person would have incurred if such person were the only person signing this Guaranty as Guarantor. The liability of each such person signing this Guaranty is joint and several, and is not conditioned upon the liability or performance of any other person signing this Guaranty. Each Guarantor is fully personally liable for all obligations under this Guaranty, whether or not any other Guarantor is so liable, and whether or not any other purported Guarantor has actually executed and delivered this Guaranty.

19. Financial Information. Guarantor shall, within ninety (90) days after the close of each fiscal year of Guarantor, deliver to Administrative Agent financial statements of Guarantor in form satisfactory to Administrative Agent. Guarantor shall, within thirty (30) days after

Administrative Agent's request from time to time, give Administrative Agent such other financial information about Guarantor as Administrative Agent shall reasonably request.

20. Confirmation Certificates. Guarantor shall, upon Administrative Agent's request from time to time, deliver to Administrative Agent or to any assignee of the Loan a certificate in form and substance reasonably satisfactory to Administrative Agent (a "Confirmation Certificate") that confirms: (a) the continued validity, effectiveness, and enforceability of this Guaranty, (b) the application of this Guaranty to specific Guarantied Obligations as Administrative Agent specifies; (c) that any specified amendment(s) of the Loan Documents do(es) not impair the continued validity, effectiveness, and enforceability of this Guaranty, (d) reaffirmation of Guarantor's representations and warranties in this Guaranty as of the date of such Confirmation Certificate; and (e) except as expressly stated in the Confirmation Certificate, Guarantor has no defense, offset, claim, counterclaim, or other limitation on its liability under this Guaranty in accordance with its terms. Any Confirmation Certificate shall bind Guarantor whether or not the addressee can demonstrate detrimental reliance. Administrative Agent need not obtain a Confirmation Certificate as a condition to the continued effectiveness of this Guaranty or of any waiver it contains.

21. Governing Law. This Guaranty (and any claims arising under this Guaranty or relating to or arising from the relationship between the parties, whether in contract, in tort, or otherwise) shall be governed solely by New York internal Law (disregarding such state's law on conflict of laws) notwithstanding the location of any Collateral. Guarantor acknowledges that any restrictions, limitations, and prohibitions set forth in New York Real Property Actions and Proceedings Law Sections 1301 and 1371 that would or might otherwise limit or establish conditions to Administrative Agent's recovery of a judgment against Guarantor if the Collateral were located in New York State shall have absolutely no application to Administrative Agent's enforcement of this Guaranty as against Guarantor, except to the extent that real property Collateral is located within the State of New York. Guarantor acknowledges that this Guaranty is an "instrument for the payment of money only," within the meaning of New York Civil Practice Law and Rules Section 3213.

22. Representations and Warranties. Guarantor acknowledges, represents, and warrants as follows, and acknowledges that Administrative Agent is relying upon the following acknowledgments, representations, and warranties in making the Loan:

a. No Conflict. The execution, delivery, and performance of this Guaranty will not violate any provision of any law, regulation, judgment, order, decree, determination, or award of any court, arbitrator or governmental authority, or of any mortgage, indenture, loan, or security agreement, lease, contract, or other agreement, instrument, or undertaking to which Guarantor is a party or that purports to bind Guarantor or any of Guarantor's property or assets.

b. No Third Party Consent Required. No consent of any person (including creditors or partners, members, stockholders, or other owners of Guarantor) is required in connection with Guarantor's execution of this Guaranty or performance of Guarantor's obligations under this Guaranty. Guarantor's execution of, and obligations under, this Guaranty are not contingent upon any consent, license, permit, approval, or authorization of, exemption

by, notice or report to, or registration, filing, or declaration with, any governmental authority, bureau, or agency, whether local, state, federal, or foreign.

c. Authority and Execution. Guarantor has full power, authority, and legal right to execute, deliver and perform its obligations under this Guaranty. Guarantor has taken all necessary corporate and legal action to authorize this Guaranty, which has been duly executed and delivered and is a legal, valid, and binding obligation of Guarantor, enforceable in accordance with its terms, except as the enforceability thereof may be limited by bankruptcy, insolvency or other laws of general application affecting the enforcement of creditor's rights or general equitable principals, whether applied in law or equity.

d. No Representations by Administrative Agent. Guarantor delivers this Guaranty based solely upon Guarantor's own independent investigation and based in no part upon any representation, statement, or assurance by Administrative Agent.

e. Status; Valid Title; Liens. Guarantor is duly organized, validly existing, and in good standing under the laws of a state of the United States. Guarantor has good and marketable title to all of its property and assets, real and personal. None of such property or assets are subject to any lien whatsoever except as disclosed to Administrative Agent in writing before Guarantor's execution of this Guaranty.

f. No Misstatements. No information, exhibit, report or certificate furnished by Borrower or Guarantor to Administrative Agent in connection with the Loan or any Loan Documents contains any material misstatement of fact or has omitted to state a material fact or any fact necessary to make the statements contained therein not materially misleading.

23. Reimbursement and Subrogation Rights. Except to the extent that Administrative Agent notifies Guarantor to the contrary in writing from time to time:

a. General Deferral of Reimbursement. Guarantor waives any right to be reimbursed by Borrower for any payment(s) Guarantor makes on account of the Guarantied Obligations, unless and until all Obligations have been paid in full and all periods within which such payments may be set aside or invalidated have expired. Guarantor acknowledges that Guarantor has received adequate consideration for execution of this Guaranty by virtue of Administrative Agent's making the Loan. Guarantor does not require or expect, and is not entitled to, any other right of reimbursement against Borrower as consideration for this Guaranty.

b. Deferral of Subrogation and Contribution. Guarantor shall have no right of subrogation against Borrower or Administrative Agent, no right of subrogation against any Collateral, and no right of contribution against any other person obligated to pay or perform any Obligations unless and until in Administrative Agent's reasonable determination: (i) such right does not violate (or otherwise produce any result adverse to Administrative Agent under) any applicable law, including any bankruptcy or insolvency law; (ii) all Obligations have been paid and performed in full; (iii) all periods within which such payment and performance may be set aside or invalidated have expired; and (iv) Administrative Agent has released, transferred, or disposed of all of its right, title, and interest in all Collateral (such deferral of Guarantor's subrogation and contribution rights, the "Subrogation Deferral").

c. Effect of Invalidation. To the extent that a court of competent jurisdiction determines that Guarantor's Subrogation Deferral is void or voidable for any reason, Guarantor agrees, notwithstanding any acts or omissions by Administrative Agent, that: (i) Guarantor's rights of subrogation against Borrower, Administrative Agent, or any Collateral shall at all times be junior and subordinate to Administrative Agent's rights against Borrower and such Collateral; and (ii) Guarantor's right of contribution against any other obligor under the Loan shall be junior and subordinate to Administrative Agent's rights against such other obligor.

d. Claims in Insolvency Proceeding. Guarantor shall not file any claim in any Insolvency Proceeding affecting Borrower unless Guarantor simultaneously assigns and transfers such claim to Administrative Agent, without consideration, pursuant to documentation fully satisfactory to Administrative Agent. Guarantor shall automatically be deemed to have assigned and transferred such claim to Administrative Agent whether or not Guarantor executes documentation to such effect. If such assignment and transfer is not legally permitted, then Guarantor shall vote (or refrain from voting) its claims in accordance with Administrative Agent's instructions. By executing this Guaranty, Guarantor authorizes Administrative Agent (and grants Administrative Agent a power of attorney coupled with an interest, and hence irrevocable) to execute and file such assignment and transfer documentation on Guarantor's behalf. Administrative Agent shall have the sole right to vote (or to direct Guarantor how to vote), receive distributions, and exercise all other rights with respect to any such claim. If and when the Guarantied Obligations have been paid in full Administrative Agent shall release to Guarantor any further payments received on account of any such claim.

24. Disgorgement Payments. Upon payment of all or any portion of the Guarantied Obligations (including from the proceeds of a foreclosure sale or as the result of Administrative Agent's credit bid at any foreclosure sale, or otherwise as a result of Administrative Agent's exercise of its rights and remedies under the Loan Documents or applicable law), or upon Borrower's delivery to Administrative Agent of a conveyance in lieu of foreclosure, Guarantor's obligations under this Guaranty shall continue and remain in full force and effect (and be reinstated, to the extent such obligations shall have previously terminated) if all or any part of such payment or conveyance is, through any Insolvency Proceeding or otherwise, avoided or recovered directly or indirectly from Administrative Agent, or if Administrative Agent is otherwise required to return, repay, or disgorge any such payment or conveyance, as a preference, fraudulent transfer, or otherwise (a "Disgorgement Payment" by Administrative Agent), regardless of (a) any notice of revocation given by Guarantor prior to such avoidance or recovery, or (b) full payment and performance of the Obligations. Guarantor's liability under this Guaranty shall continue until all periods have expired within which Administrative Agent could (on account of Insolvency Proceedings, whether or not then pending, affecting Borrower or any other person) be required to make any Disgorgement Payment.

25. Disgorgement Actions. If any party seeks to require Administrative Agent to make a Disgorgement Payment (a "Disgorgement Action"), then within ten (10) days after written notice from Administrative Agent Guarantor shall deposit with Administrative Agent funds in an amount equal to 110% of the Disgorgement Payment being sought (together with interest, the "Disgorgement Deposit"). Administrative Agent shall hold the Disgorgement Deposit in an interest-bearing account as cash collateral (under documents satisfactory to

Administrative Agent) for Guarantor's potential obligation to make a Disgorgement Payment. If Guarantor timely makes a Disgorgement Deposit, then so long as Guarantor performs all its obligations under this Guaranty, Administrative Agent shall, at Guarantor's option, either: (a) refund to Borrower's estate an amount equal to the Disgorgement Payment and apply the Disgorgement Deposit as a payment on account of the Guarantied Obligations and refund any excess to Guarantor; or (b) permit Guarantor to defend the Disgorgement Action at Guarantor's expense (including all legal costs) on Administrative Agent's behalf, all in a manner reasonably satisfactory to Administrative Agent, provided such defense does not in Administrative Agent's judgment cause Administrative Agent to incur any unreimbursed cost, expense, liability, or other detriment of any kind (including any adverse effect on any other actions Administrative Agent takes or intends to take in the Insolvency Proceeding). To the extent that Guarantor's defense ultimately succeeds beyond right of further appeal (so Administrative Agent is not obligated to make any Disgorgement Payment) and Guarantor has paid all Administrative Agent's costs incurred in the Disgorgement Action (including all legal costs), Administrative Agent shall return the Disgorgement Deposit.

26. Fundamental Changes. Guarantor shall not wind up, liquidate, or dissolve its affairs or enter into any transaction of merger or consolidation, or sell, lease, or otherwise dispose of (or agree to do any of the foregoing) all or substantially all of its property or assets, or change its state of formation or entity status, without Administrative Agent's prior written consent.

27. Certain Entities. If Borrower or Guarantor is a partnership, limited liability company, or other unincorporated association, then: (i) Guarantor's liability shall not be impaired by changes in the name or composition of such entity; and (ii) the withdrawal or removal of any partner(s) or member(s) of such entity shall not diminish Guarantor's liability or (if Guarantor is a partnership) the liability of any withdrawing general partner of Guarantor.

28. Termination of Guaranty. Guarantor's obligations under this Guaranty shall continue in full force and effect and this Guaranty shall not terminate until the Guaranteed Obligations are fully paid, performed and discharged (free and clear of any right of any person to set aside any such payment including, without limitation, any right to recover preferences voidable under Title 11 of the United States Code) and Administrative Agent gives Guarantor notice of that fact.

29. Representation by Counsel. Guarantor acknowledges that before executing this Guaranty: (a) Guarantor has had the opportunity to review it with an attorney of Guarantor's choice; (b) Administrative Agent has recommended to Guarantor that Guarantor obtain separate counsel, independent of Borrower's counsel, for this Guaranty; and (c) Guarantor has carefully read this Guaranty and understood the meaning and effect of its terms.

*[No Further Text on this Page.]*

**IN WITNESS WHEREOF**, Guarantor has executed this Guaranty as of the Closing Date.

**GINN-LA QUAIL WEST LTD., LLLP,**
a Georgia limited liability limited partnership

By: Ginn-Quail West GP, LLC,
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**GINN-LA LAUREL CREEK LTD., LLLP,**
a Georgia limited liability limited partnership

By: Ginn-Laurel Creek GP, LLC,
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**GINN-LA BULOW LTD., LLLP,**
a Georgia limited liability limited partnership

By: Ginn- Bulow GP, LLC,
a Georgia limited liability company, its General Partner

By: [signature]
Name: Robert F. Masters
Title: President

**GINN-LA ST. LUCIE LTD., LLLP,**
a Georgia limited liability limited partnership

By: Ginn- St. Lucie GP, LLC,
its general partner

By: [signature]
Name: Robert F. Masters
Title: President

**GINN-BULOW GP, LLC,**
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**GINN-ST. LUCIE GP, LLC,**
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**GINN-QUAIL WEST GP, LLC,**
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**GINN-LAUREL CREEK GP, LLC,**
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**THE TESORO CLUB, LLC ,**
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**TESORO GOLF CLUB CONDOMINIUM, LLC,**
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**TESORO BEACH CLUB CONDOMINIUM, LLC ,**
a Georgia limited liability company

By: [signature]
Name: Robert F. Masters
Title: President

**GINN QUAIL WEST BEACH, LLC,**
a Georgia limited liability company

By: Robert F Masters
Name: Robert F. Masters
Title: President

**HAMMOCK BEACH RIVER CLUB, LLC,**
a Georgia limited liability company

By: Robert F Masters
Name: Robert F. Masters
Title: President


Questions about your account, call
Colonial Connection: 877-502-2265

www.colonialbank.com

# Cash Management Sweep Account

ACCOUNT NUMBER 8044845199

STATEMENT PERIOD June 1, 2006 – June 30, 2006

## Deposits and Other Credits (continued)

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|
| 6/13 | INCOMING WIRE CREDIT<br>GINN LA WEST END LIMITED | 8,074,864.92 |

## Other Debits

| DATE | DESCRIPTION | AMOUNT |
|---|---|---|



# Cash Management Sweep Account

Questions about your account, call
Colonial Connection: 877-502-2265

www.colonialbank.com

| ACCOUNT NUMBER | 8044845199 |
| --- | --- |
| STATEMENT PERIOD | June 1, 2006 – June 30, 2006 |

## Other Debits (continued)

| DATE | DESCRIPTION | AMOUNT |
| --- | --- | --- |
| 6/14 | OUTGOING WIRE DEBIT LUBERT ADLER CAPITAL REAL ESTATE 8044845199 | 5,386,971.50 |
| 6/14 | OUTGOING WIRE DEBIT LUBERT ADLER REAL ESTATE PARALLEL 8044845199 | 2,519,275.72 |
| 6/15 | OUTGOING WIRE DEBIT LUBERT-ADLER REAL ESTATE FUND IV LP 8044845199 | 67,632,780.64 |

## Daily Balance Summary

# Exhibit G

# Account Activity

03/07/2006 12:49:21 GMT

Select Account: Bahamas-200599960-USD (CHEQUING ACCOUNT)

Get Activity

Current Period — Specified period

From Date (dd/mm/yyyy)

To Date (dd/mm/yyyy)

Select Format: Comma Separated(CSV)

Download

Account Activity for Current Period (Last 30 Days) Bahamas-200599960-USD (CHEQUING ACCOUNT) - (USD)

| Transaction Date | Instrument No. | Description | Debit Amount | Credit Amount | Running Bal[illegible] |
|---|---|---|---|---|---|
| 14/06/2006 | | GINN LA CS HOLDING COMPANY, LL | 14,504,864.86 | 0.00 | |
| | | | | 0.00 | |
| 13/06/2006 | | GINN LA WEST END LTD, LLLP | 67,381,751.71 | 0.00 | |

Some transactions performed after normal business hours may not show till next business day.

Previous Next Print

End of Page

# Account Activity

**03/07/2006 12:49:30 GMT**

**Select Account** Bahamas-200599960-USD (CHEQUING ACCOUNT) Get Activity

(•) **Current Period** ( ) **Specified period**

**From Date (dd/mm/yyyy)** **Select Format** Comma Separated(CSV) Download

**To Date (dd/mm/yyyy)**

**Account Activity for Current Period (Last 30 Days) Bahamas-200599960-USD (CHEQUING ACCOUNT) - (USD)**

| Transaction Date | Instrument No. | Description | Debit Amount | Credit Amount | Running Balance |
|---|---|---|---|---|---|
| 13/06/2006 | | GINN LA WEST END LTD, LLLP | 8,074,964.92 | 0.00 | |
| 13/06/2006 | | GINN-LA CONDUIT LENDER, INC. | 0.00 | 89,961,246.49 | |
| 08/06/2006 | | GINN-LA WEST END LTD., LLLP | 0.00 | 7,080,229.08 | |

Some transactions performed after normal business hours may not show till next business day. Previous Print

**End of Page**