# EXHIBIT 5

## MASTER RESTRUCTURING AGREEMENT
## (EXCERPTS)

EXECUTION VERSION

---

## MASTER RESTRUCTURING AGREEMENT

### DATED AS OF December 19, 2008

**Among**

**GINN-LA CS BORROWER, LLC**
and
**GINN-LA CONDUIT LENDER, INC.**
collectively, as the Borrowers,

**THE FULL RECOURSE BORROWER PARTIES,
LIMITED RECOURSE BORROWER PARTIES AND
OTHER GINN/LA PARTIES LISTED HEREIN**

**THE LENDERS,**

**and**

**CREDIT SUISSE, CAYMAN ISLANDS BRANCH**
as Administrative Agent and Collateral Agent

---

### IN CONNECTION WITH THE EXISTING
### $525,000,000 SENIOR FIRST LIEN CREDIT FACILITY

---

EXECUTION VERSION

# MASTER RESTRUCTURING AGREEMENT

This MASTER RESTRUCTURING AGREEMENT, dated as of December 19, 2008 (this "Agreement"), is made and entered into by and among GINN-LA CS BORROWER, LLC, a Delaware limited liability company ("CS Borrower") and GINN-LA CONDUIT LENDER, INC., a Delaware corporation ("Conduit Borrower" and together with CS Borrower, collectively, the "Borrowers"), each of the entities listed on Schedule 1 attached hereto and incorporated herein (such entities together with the Borrowers, the "Full Recourse Borrower Parties" and each, including the Borrowers, a "Full Recourse Borrower Party"), each of the entities listed on Schedule 2 attached hereto and incorporated herein (such entities, the "Limited Recourse Borrower Parties"; the Limited Recourse Borrower Parties together with the full Recourse Borrower Parties are hereinafter referred to as the "Borrower Parties," and each, a "Borrower Party"), each of the entities listed on Schedule 3 attached hereto and incorporated herein (such entities, the "Other Ginn/LA Parties"; the Other Ginn/LA Parties, together with the Borrower Parties, the "Ginn/LA Parties"), and CREDIT SUISSE, CAYMAN ISLANDS BRANCH, as administrative agent for the Lenders (as defined below) and as collateral agent for the Lenders (the "Agent").

WHEREAS, the Borrowers, the lenders that are parties thereto from time to time (the "Lenders") and the Agent entered into that certain First Lien Credit Agreement, dated as of June 8, 2006 (the "Original Credit Agreement"), as amended pursuant to that certain Waiver and Amendment to First Lien Credit Agreement, executed as of April 30, 2007, but effective as of April 15, 2007 (the "First Amendment"); that certain Second Waiver and Amendment to First Lien Credit Agreement, executed as of June 28, 2007, but effective as of July 20, 2007 (the "Second Amendment"); that certain Waiver to First Lien Credit Agreement, executed as of April 18, 2008, but effective as of April 14, 2008 (the "Waiver"); and that certain Third Amendment to First Lien Credit Agreement, executed as of September 8, 2008, but effective as of September 10, 2008 (the "Third Amendment," and together with the Original Credit Agreement, the First Amendment, the Second Amendment and the Waiver, as the same may be further amended, restated, extended, modified or otherwise supplemented from time to time, the "Credit Agreement").

WHEREAS, the Agent, the Borrowers and certain other Borrower Parties signatory thereto entered into that certain prenegotiation letter agreement, dated as of June 24, 2008 (the "Prenegotiation Agreement") to memorialize certain agreements among such parties.

WHEREAS, the Borrower Parties, the Agent and the Requisite Lenders signatories thereto entered into that certain Acknowledgement and Forbearance Agreement, dated as of June 30, 2008 (the "Original Forbearance Agreement"), as amended by that certain First Amendment to Acknowledgment and Forbearance Agreement, dated as of July 28, 2008 (the "First Amendment to Forbearance Agreement"), and that certain Second Amendment to Acknowledgment and Forbearance Agreement, dated as of September 8, 2008 (the "Second Amendment to Forbearance Agreement," and together with the Original Forbearance Agreement and the First Amendment to Forbearance Agreement, the "Forbearance Agreement") to memorialize certain agreements with respect to certain defaults by the Borrowers under the Credit Agreement.

WHEREAS, each of the Borrower Parties has made the covenants, representations and warranties made by it herein as a material inducement for Agent and the Requisite Lenders to enter into this Agreement.

WHEREAS, the Requisite Lenders who are signatories to this Agreement have approved this Agreement pursuant to Section 9.5 of the Credit Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the parties hereto agree as follows.

1.   Definitions.  A glossary of capitalized terms defined herein is attached hereto as Exhibit A.  Capitalized terms used herein and not defined shall have the meanings provided in the Credit Agreement.

2.   Reaffirmation of Loan Documents.

(a)    Agent, the Lenders and the Borrower Parties acknowledge and agree that this Agreement and the Forbearance Agreement are each a "Loan Document" for all purposes. Each Borrower Party hereby:  (a) reaffirms and acknowledges all of the terms and provisions of the Loan Documents to which it is a party and such Borrower Party's obligations under the Loan Documents to which it is a party and (b) represents and warrants to Agent that the Loan Documents to which it is a party are in full force and effect, enforceable in accordance with their terms, except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws of general application affecting the enforcement of creditors' rights or general equitable principles (whether applied in law or equity).  Each Full Recourse Borrower Party hereby reaffirms and acknowledges the obligations to pay, when due, all principal, interest and fees and on demand, all expenses, including, without limitation, reasonable, documented attorneys' fees and expenses of the Agent and each Lender and all reasonable, documented costs and expenses arising out of or relating to the hiring of third party consultants, financial advisors and other consultants retained by the Agent (i) incurred in connection with the exercise of Agent's and such Lender's duties under the Loan Documents and the preparation, negotiation, execution and delivery of this Agreement and amendments and waivers under the Loan Documents, (ii) incurred in the enforcement or attempted enforcement of this Agreement and any of the Loan Documents or in preserving any of Agent's or such Lender's rights and remedies, including, without limitation, all such fees and expenses incurred in connection with any modification, "workout" or other restructuring affecting the Loan Documents or any bankruptcy or similar proceeding involving, among others, the Borrower Parties or any of their affiliates, and (iii) as otherwise provided in the Credit Agreement and the other Loan Documents.  The Full Recourse Borrower Parties further acknowledge and agree that all such costs and expenses incurred but unreimbursed as of the date of this Agreement constitute Obligations under the Credit Agreement.

(b)    Notwithstanding any provision of the Credit Agreement, the Prenegotiation Agreement, the Forbearance Agreement or any of the Loan Documents to the contrary, and except as expressly provided in Section 10(d)(iii), each party to this Agreement shall be responsible for any and all expenses incurred by such party in connection with negotiations and documentation relating to this Agreement, including, without limitation, the

2

fees and expenses incurred by any advisor retained by the respective parties in connection with negotiations concerning this Agreement. The failure by any of the Borrower Parties or the Other Ginn/LA Parties to pay any of the costs and expenses described in the Credit Agreement, Prenegotiation Agreement, Forbearance Agreement or any other Loan Document that may otherwise be due and owing notwithstanding the parties' agreement, shall not constitute a Default or Event of Default hereunder or under the Credit Agreement, Prenegotiation Agreement, Forbearance Agreement or any other Loan Document. Notwithstanding the foregoing, the Borrower Parties acknowledge and agree that all such costs and expenses incurred by the Agent and the Lenders constitute Obligations under the Credit Agreement.

      3.  Waiver and Release.

      (a)    Waiver by Borrower Parties. The Borrower Parties hereby waive any and all defenses, affirmative defenses, counterclaims, claims, causes or action, setoffs or other rights that any of them may have in connection with the obligations of the Borrower Parties under the Loan Documents and the exercise of any remedies by the Agent and/or the Lenders as a result of any and all Defaults or Events of Default under the Credit Agreement and/or the other Loan Documents (the "Borrower Parties Waivers"); provided that the foregoing shall not limit the rights of the Borrower Parties to enforce the Restructuring Documents in accordance with their respective terms. The Borrower Parties shall not contest or raise any defenses, affirmative defenses, counterclaims, claims, causes or action, setoffs or other rights against or in connection with any action, proceeding, foreclosure enforcement action or other exercise of remedies by the Agent and/or the Lenders in connection with the Loan or the Loan Documents; provided that the foregoing shall not limit the rights of the Borrower Parties to enforce the Restructuring Documents in accordance with their respective terms. Notwithstanding the Borrower Parties Waivers, the Borrower Parties do not waive, and expressly reserve, any and all defenses any of them may have in connection with (i) that certain Subsidiary Guaranty dated June 8, 2006 with respect to rights and obligations of Ginn-LA Laurel Creek Ltd., LLP, Ginn-Laurel Creek GP, LLC and Tesoro Beach Club Condominium, LLC thereunder, (ii) that certain Security Agreement dated June 8, 2006 with respect to rights and obligations of Ginn-LA Laurel Creek Ltd., LLLP, Ginn-Laurel Creek GP, LLC and Tesoro Beach Club Condominium, LLC thereunder, and (iii) that certain Pledge Agreement dated June 8, 2006 with respect to the rights and obligations of CS Borrower and Ginn-Laurel Creek GP, LLC related to their interests in Ginn-LA Laurel Creek Ltd., LLLP and Ginn-Laurel Creek GP, LLC.

      (b)    Waiver by Other Ginn/LA Parties. The Other Ginn/LA Parties hereby waive any and all claims or causes or action that any of them may have in connection with the obligations of the Borrower Parties under the Loan Documents and the exercise of any remedies by the Agent and/or the Lenders as a result of any and all Defaults or Events of Default under the Credit Agreement; provided that the foregoing shall not limit the rights of the Other Ginn/LA Parties to enforce the Restructuring Documents in accordance with their respective terms. The Other Ginn/LA Parties shall not contest or raise any claims or causes or action against or in connection with any action, proceeding, foreclosure enforcement action or other exercise of remedies by the Agent and/or the Lenders in connection with the Loan or the Loan Documents; provided that the foregoing shall not limit the rights of the Other Ginn/LA Parties to enforce the Restructuring Documents in accordance with their respective terms.

(c)    Release by Ginn/LA Parties.  Each of the Ginn/LA Parties, for themselves and their respective heirs, executors, administrators, successors and assigns, hereby remises, releases and forever discharges each of Agent and the Lenders and their respective officers, directors, principals, shareholders, affiliates, agents, employees, legal representatives, successors and assigns from and against any and all actions, causes of action, suits, debts, covenants, contracts, damages, judgments, claims and demands whatsoever, whether at law, in equity or otherwise, including, without limitation, claims of Agent or lender liability arising up to and including the date hereof with respect to or arising out of the Credit Agreement and/or the other Loan Documents.

(d)    Release of Borrower Parties by Lenders.  Conditioned upon the occurrence of and effective as of the Effective Date, the Agent and the Lenders, for themselves and their respective heirs, executors, administrators, successors and assigns, hereby remise, release and forever discharge the Borrower Parties, their Affiliates, and each of their respective officers, directors, principals, shareholders, partners, members, affiliates, agents, employees, legal representatives, successors and assigns (the "Borrower Released Parties") from and against any and all actions, causes of action, suits, debts, covenants, contracts, damages, judgments, claims and demands whatsoever, whether at law, in equity or otherwise with respect to, arising out of or related to the Credit Agreement and/or Loan Documents (the "Borrower Parties Released Claims"); provided, however, that Borrower Parties Released Claims shall not include (and shall expressly exclude) any actions, causes of action, suits, debts, covenants, contracts, damages, judgments, claims and demands whatsoever, whether at law, in equity or otherwise with respect to or arising out of (A) any and all obligations of the Borrower Parties under this Agreement and all agreements contemplated hereby or (B) the Credit Agreement and/or the Loan Documents (i) in connection with the Lenders' rights to receive payment in full of all Obligations due thereunder (and none of the security interests created by the Loan Documents shall be released or terminated, or deemed to be released or terminated, on account of this paragraph unless and until such Obligations have been paid in full, except as otherwise expressly provided in this Agreement); or (ii) arising solely on account of actual fraud or gross negligence. Notwithstanding the foregoing, if, following commencement of the Tesoro and Quail West Bankruptcy Cases, any of the Borrower Parties and their respective Affiliates and any of their respective officers, directors, principals, shareholders, partners, members, affiliates, agents, employees, legal representatives, successors and assigns take any action seeking to dismiss or convert any of the Tesoro and Quail West Bankruptcy Cases to a case or cases under Chapter 11, then this release shall be null and void and of no further force or effect.  In addition, if any of the Borrower Parties and their respective Affiliates and any of their respective officers, directors, principals, shareholders, partners, members, affiliates, agents, employees, legal representatives, successors and assigns withdraw their consent to, or object to or take any action to dismiss or oppose the Equity Foreclosure Proceedings and/or a foreclosure of the Conduit Loan Documents, then this release shall be null and void and of no further force or effect.

(e)    Release of Other Ginn/LA Parties by Lenders.  Conditioned upon the occurrence of and effective as of the Effective Date, the Agent and the Lenders, for themselves and their respective heirs, executors, administrators, successors and assigns, releases the Other Ginn/LA Parties, their Affiliates, and each of their respective officers, directors, principals, shareholders, partners, members, affiliates, agents, employees, legal representatives, successors and assigns (the "Other Ginn/LA Released Parties") from and against any and all actions, causes

of action, suits, debts, covenants, contracts, damages, judgments, claims and demands whatsoever, whether at law, in equity or otherwise with respect to, arising out of or related to the Credit Agreement and/or the Loan Documents (the "Other Ginn/LA Parties Released Claims"); provided, however, that Other Ginn/LA Parties Released Claims shall not include (and shall expressly exclude) any actions, causes of action, suits, debts, covenants, contracts, damages, judgments, claims and demands whatsoever, whether at law, in equity or otherwise with respect to or arising out of (A) any and all obligations of the Other Ginn/LA Parties under this Agreement and all agreements contemplated hereby, including, without limitation, the Restated Sur Mer Development Agreements and the Sur Mer Guaranties or (B) the Credit Agreement and/or Loan Documents arising solely on account of actual fraud or gross negligence. Notwithstanding the foregoing, if, following commencement of the Tesoro and Quail West Bankruptcy Cases, any of the Other Ginn/LA Parties and their respective Affiliates and any of their respective officers, directors, principals, shareholders, partners, members, affiliates, agents, employees, legal representatives, successors and assigns take any action seeking to dismiss or convert any of the Tesoro and Quail West Bankruptcy Cases to a case or cases under Chapter 11, then this release shall be null and void and of no further force or effect. In addition, if any of the Other Ginn/LA Parties and their respective Affiliates and any of their respective officers, directors, principals, shareholders, partners, members, affiliates, agents, employees, legal representatives, successors and assigns withdraw their consent to, or object to or take any action to dismiss or oppose the Equity Foreclosure Proceedings and/or a foreclosure of the Conduit Loan Documents, then this release shall be null and void and of no further force or effect.

(f)    Waiver of Recovery Regarding Certain Bankruptcy Claims. In connection with the Agent's and the Lenders' release of the Borrower Parties Released Claims and the Other Ginn/LA Parties Released Claims as provided in Sections 3(d) and (e) above, in the event that the trustee of the Tesoro and/or Quail West bankruptcy estates is successful in pursuing any actual or threatened litigation against any of the Borrower Released Parties or the Other Ginn/LA Released Parties, the Agent and the Lenders, on behalf of themselves and their respective heirs, executors, administrators, successors and assigns, hereby waive any right to receive any of the proceeds thereof arising from settlement, judgment or otherwise.

(g)    Action Not a Default. The Agent, the Lenders and the Borrowers hereby agree that notwithstanding anything in the Credit Agreement or any other Loan Document, none of the actions required to be taken by the Ginn/LA Parties hereunder will constitute a Default or Event of Default or violate any provision of any Loan Document.

(h)    Limited Recourse Obligations. Except to the extent specifically provided herein, no provision of this Agreement, including without limitation Sections 2 and 3, shall be construed in any way to expand upon the limited nature of the obligations, if any, of the Limited Recourse Borrower Parties or the Other Ginn/LA Parties.

4.    No Lender Funding of Expenses. Notwithstanding anything to the contrary contained in the Forbearance Agreement, the Credit Agreement or any of the other Loan Documents, but without limiting any right of the Borrowers to receive a credit against the Laurelmor Release Payment pursuant to Section 11 hereof, Agent and the Lenders shall have no obligation to reimburse or otherwise provide funding to any of the Borrower Parties with respect

5

SCHEDULE 1

**FULL RECOURSE BORROWER PARTIES OTHER THAN THE BORROWERS**

Ginn-Quail West GP, LLC
Ginn-St. Lucie GP, LLC
Ginn-Laurel Creek GP, LLC
Ginn-LA Quail West Ltd., LLLP
Ginn-LA Laurel Creek Ltd., LLLP
Ginn-LA St. Lucie Ltd., LLLP
The Tesoro Club, LLC
Tesoro Golf Club Condominium, LLC
Tesoro Beach Club Condominium, LLC
Ginn Quail West Beach, LLC

## SCHEDULE 2

## LIMITED RECOURSE BORROWER PARTIES

Lubert-Adler Real Estate Fund III, L.P.
Lubert-Adler Real Estate Parallel Fund III, L.P.
Lubert-Adler Capital Real Estate Fund III, L.P.
Lubert-Adler Real Estate Fund IV, L.P.
Lubert-Adler Real Estate Parallel Fund IV, L.P.
Lubert-Adler Capital Real Estate Fund IV, L.P.
ERG Enterprises, LP
Ginn-LA CS Holding Company, LLC
Ginn-West End GP, LLC
Ginn-LA West End Ltd., LLLP
Ginn-LA West End, Limited

# EXHIBIT 6

## GINN DEFENDANTS' RESPONSES
## TO FIRST SET OF INTEROGATORIES

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA
#### West Palm Beach Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br>GINN-LA ST. LUCIE LTD., LLLP, *et al.*,<br><br>Debtors. | **CASE NO. 08-29769-PGH**<br>All Cases Jointly Administered<br><br>Chapter 7 |

---

In re:
GINN-LA QUAIL WEST LTD., LLLP, *et al.*,

                   Debtors.

(4 Cases Substantively Consolidated Under Lead Case No. 08-29769-PGH)

(3 Cases Substantively Consolidated Under Lead Case No. 08-29774-PGH)

---

DREW M. DILLWORTH, Chapter 7 Trustee,

         Plaintiff,

    vs.

EDWARD R. GINN III; ERG ENTERPRISES,
L.P.; LUBERT-ADLER MANAGEMENT CO.,
L.P.; LUBERT-ADLER REAL ESTATE FUND
III, L.P.; LUBERT-ADLER REAL ESTATE
PARALLEL FUND III, L.P.; LUBERT-ADLER
CAPITAL REAL ESTATE FUND III, L.P.;
LUBERT-ADLER REAL ESTATE FUND IV,
L.P.; LUBERT-ADLER REAL ESTATE
PARALLEL FUND IV, L.P.; LUBERT-ADLER
CAPITAL REAL ESTATE FUND IV, L.P.;
AND JOHN DOES 1-50,

         Defendants.

**ADV. PRO. NO. 10-02976-PGH**

AUG 1 3 2010

---

### GINN DEFENDANTS' RESPONSES TO
### PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, made applicable by Fed. R. Bankr. P. 7033, Defendants

Edward R. Ginn III and ERG Enterprises, L.P. (collectively, the "Ginn Defendants"), through

their undersigned attorneys, hereby respond to Plaintiff's First Set of Interrogatories

("Interrogatories").   The Ginn Defendants reserve the right to amend or supplement these responses in the future in accordance with Fed. R. Civ. P. 26(e)(1), as made applicable by Fed. R. Bankr. P. 7026.

## GENERAL OBJECTIONS

1.     The Ginn Defendants object to the Interrogatories to the extent that they seek information protected by the attorney-client, work-product, common interest, investigative, or any other privilege or exemption from discovery.

2.     The Ginn Defendants object to the Interrogatories to the extent that they request information that is protected by evidentiary privileges identified in the Federal Rules of Civil Procedure, the Bankruptcy Rules, and the Rules of Evidence.

3.     The Ginn Defendants object to the Interrogatories to the extent that they are vague, ambiguous, over broad, unduly burdensome, designed to harass the Ginn Defendants and cause unnecessary or undue expense, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

4.     The Ginn Defendants object to the Interrogatories to the extent that they seek documents or information that contain confidential financial, trade secret, proprietary, or sensitive business information, or documents or information protected from disclosure by law or any agreement or court order with respect to confidentiality or disclosure.

5.     The Ginn Defendants object to the Interrogatories to the extent that they seek documents or information outside the Ginn Defendants' possession, custody or control, and to the extent they seek documents or information from other defendants.

6.     The Ginn Defendants object to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to matters at issue in this case.

7.      The Ginn Defendants object to the Interrogatories to the extent that they purport to impose obligations or duties that exceed the requirements imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

8.      The Ginn Defendants object to the Interrogatories to the extent that they seek information for an unreasonable, irrelevant or unspecified period of time.

9.      The Ginn Defendants object to the Interrogatories as duplicative, overly broad and unduly burdensome to the extent that they seek production of information from the Ginn Defendants that is already possessed by or reasonably accessible to Plaintiff in its capacity as Chapter 7 trustee for the debtors, or that has been or will be produced by another party.  Subject to the General and specific objections asserted herein, the Ginn Defendants will produce responsive, non-privileged information not already possessed by or reasonably accessible to Plaintiff that will not be produced by another party.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      The Ginn Defendants object to the defined terms relating to the various parties in this litigation including but not limited to the defined term, "Ginn" because these terms are vague, ambiguous, overbroad and unduly burdensome to the extent that they are defined to include not only the named party but also "any affiliate thereof" and/or "any predecessor, successor or assign of any of them, and any director, officer, employee, agent, attorney or other representative thereof."

2.      The Ginn Defendants object to the definitions of the terms "Document" and "Communication" on the grounds that each definition is overly broad, unduly burdensome, and

3

encompass materials and/or information protected by the attorney work product, the attorney-client, or other applicable privilege.

3.      The Ginn Defendants object to all definitions and instructions to the extent they are both internally inconsistent and incompatible with the ordinary, common, or established meanings. Accordingly, in interpreting and construing the Interrogatories, the Ginn Defendants will attempt to give words their ordinary, common, and established meanings wherever possible, so that the responses and objections will not be subject to misinterpretation.

4.      The Ginn Defendants object to the definitions and instructions to the extent they purport to impose obligations or duties that exceed the requirements imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

**AS TO THE SPECIFIC INTERROGATORIES**

Subject to and without waiving the foregoing General Objections and Objections to Definitions and Instructions, the Ginn Defendants object and respond to the Interrogatories as follows:

1.      Describe the relationship among and between Edward R. Ginn III, ERG Enterprises, L.P., Lubert-Adler, and the Lubert-Adler Fund III & IV Entities, with respect to the Tesoro and Quail West Projects.

**RESPONSE:**

     **Subject to and without waiving the aforementioned General Objections, which are hereby incorporated by reference, the Ginn Defendants further object to this Interrogatory on the grounds that the undefined term "relationship" is vague, ambiguous, overbroad and unduly burdensome in the context of this Interrogatory; and the defined terms "Edward R. Ginn III," "ERG Enterprises, L.P.," "Lubert-Adler," and "Lubert-Adler Fund III & IV**

4

Entities" are vague, ambiguous, overbroad and unduly burdensome to the extent that they are defined to include "any affiliate thereof" and/or "any predecessor, successor or assign of any of them, and any director, officer, employee, agent, attorney or other representative thereof." The Ginn Defendants further object to this Interrogatory as overly broad and unduly burdensome. Subject to the objections asserted above, the Ginn Defendants respond as follows:

Edward R. Ginn III is a resident of Palm Coast, Flagler County, Florida and a developer of residential resort properties.

ERG Enterprises, L.P. is an investment limited partnership with its current principal place of business at 1 Hammock Beach Parkway, Palm Coast Florida. ERG Enterprises, L.P. indirectly owns investments in various joint ventures formed for the purpose of developing residential resort properties. ERG Management LLC is the General Partner of ERG Enterprises, L.P. with a 1% percentage interest and Edward R. Ginn III, as Trustee of the Edward R. Ginn III Revocable Trust, dated September 14, 2002, is the Limited Partner with a 99% percentage interest. Edward R. Ginn III is the manager of ERG Management LLC.

Lubert-Adler Fund III and/or Lubert-Adler Fund IV formed separate joint ventures with limited liability companies owned by ERG Enterprises, L.P. for the purpose of developing the Tesoro Project, the Quail West Project, The Gardens Project, the Laurelmor Project and the Ginn-Sur-Mer Project respectively (collectively the "Projects"). In 2006, in connection with the Credit Suisse loan transaction: (a) Ginn-LA CS Borrower, LLC was formed and Ginn-LA Quail West Ltd., LLLP, Ginn-LA St. Lucie Ltd., LLLP, Ginn-LA Laurel Creek Ltd., LLLP and Ginn-LA Bulow Ltd., LLLP became subsidiaries thereof; and (b) Ginn-LA Conduit Lender, Inc. was formed and Ginn-LA West End Ltd., LLLP became a subsidiary thereof.

The Tesoro Project was developed in part by Debtor Ginn-LA St. Lucie, Ltd., LLLP. Debtors The Tesoro Club, LLC and Tesoro Golf Club Condominium, LLC are wholly owned subsidiaries of Debtor Ginn-LA St. Lucie Ltd., LLLP. The Debtor Ginn-St. Lucie GP, LLC, which is wholly owned by Ginn-LA CS Borrower, LLC, is the general partner of Debtor Ginn-LA St. Lucie, Ltd., LLLP, with a 20% percentage interest. Ginn-LA CS Borrower, LLC owns all of the percentage interests in Debtor Ginn-LA St. Lucie, Ltd., LLLP, 80% directly and 20% indirectly through its interest in Debtor Ginn-St. Lucie GP, LLC.

Edward R. Ginn III is the manager of Ginn Tesoro Golf, LLC, a Georgia limited liability company formed to own the Palmer golf course and certain other amenities at the Tesoro Project. Ginn Tesoro Golf, LLC is a wholly owned subsidiary of ERG Enterprises, L.P.

The Quail West Project was developed in part by Debtor Ginn-LA Quail West Ltd., LLLP. It has two subsidiaries: Debtor Ginn-Quail West Beach, LLC and Quail West Foundation, Inc. Debtor Ginn-Quail West GP, LLC, which is wholly owned by Ginn-LA

CS Borrower, LLC, holds a 20% general partner interest in Debtor Ginn-LA Quail West Ltd., LLLP. Ginn-LA CS Borrower, LLC owns all of the percentage interests in Debtor Ginn-LA Quail West, Ltd., LLLP, 80% directly and 20% indirectly through its interest in Debtor Ginn-Quail West GP, LLC.

Edward R. Ginn III is the manager of Ginn-LA CS Borrower, LLC.

As of the June 8, 2006 Credit Suisse loan closing, in addition to owning all of the percentage interests in Ginn-LA St. Lucie, Ltd., LLLP and Ginn-LA Quail West, Ltd., LLLP, Ginn-LA CS Borrower, LLC owned all of the percentage interests in Ginn-LA Bulow Ltd., LLLP, a developer of The Gardens Project, and Ginn-LA Laurel Creek Ltd., LLLP, a developer of the Laurelmor Project.

Ginn-LA CS Borrower, LLC is a wholly owned subsidiary of Ginn-LA CS Holding Company, LLC, a Delaware limited liability company. The managing member of Ginn-LA CS Holding Company, LLC is ERG Enterprises, L.P.

ERG Enterprises, L.P. has a 20% percentage interest in Ginn-LA CS Holding Company, LLC. The other percentage interest holders of Ginn-LA CS Holding Company, LLC are as follows:

- Lubert-Adler Capital Real Estate Fund III, L.P. (3.87%)
- Lubert-Adler Real Estate Parallel Fund III, L.P. (0.59%)
- Lubert-Adler Real Estate Fund III, L.P. (27.56%)
- Lubert-Adler Real Estate Fund IV, L.P. (43.77%)
- Lubert-Adler Real Estate Parallel Fund IV, L.P. (1.34%)
- Lubert-Adler Capital Real Estate Fund IV, L.P. (2.87%).

The Ginn Sur Mer Project was developed in part by Ginn-LA West End Ltd., LLLP. Ginn-LA Conduit Lender, Inc. is a wholly owned subsidiary of Ginn-LA West End Ltd., LLLP. ERG Enterprises, L.P. indirectly through its interest in Ginn-West End GP, LLC, owns a 20% percentage interest in Ginn-LA West End Ltd., LLLP. The other percentage interest holders of Ginn-LA West End Ltd., LLLP are as follows:

- Lubert-Adler Real Estate Fund IV, L.P. (72.97%)
- Lubert-Adler Real Estate Parallel Fund IV, L.P. (2.24%)
- Lubert-Adler Capital Real Estate Fund IV, L.P. (4.79%).

Lubert-Adler Fund V and Lubert-Adler Fund VI are private equity funds that, directly and indirectly, provided the Projects with additional capital through purchase transactions and additional capital.

Lubert-Adler Management Co., L.P. provides investment management services to the Lubert-Adler Funds, but holds no interest in any of the foregoing entities, performed no development services in connection with the Projects, and received no transfers of any portion of the Credit Suisse loan proceeds.

2.      Identify all capital and other financial contributions made by Edward R. Ginn III, ERG

Enterprises, L.P., Lubert-Adler, or any Lubert-Adler Fund III or IV Entity, to any of the Tesoro

or Quail West Debtors, indicating the person/entity which made the contribution, the entity

which received the contribution, the amount and date of the contribution, how the contribution

was accounted for (*e.g.,* as satisfaction of debt, return of equity, etc.), and how the contribution

was evidenced (*e.g.,* note or other instrument, journal entry, etc.).

**RESPONSE:**

Subject to and without waiving the aforementioned General Objections, which are
hereby incorporated herein by reference, the Ginn Defendants further object to this
Interrogatory on the grounds that the undefined term "relationship" is vague, ambiguous,
overbroad and unduly burdensome in the context of this Interrogatory; and the defined
terms "Edward R. Ginn III," "ERG Enterprises, L.P.," "Lubert-Adler," and "Lubert-
Adler Fund III & IV Entities" are vague, ambiguous, overbroad and unduly burdensome
to the extent that they are defined to include "any affiliate thereof" and/or "any
predecessor, successor or assign of any of them, and any director, officer, employee, agent,
attorney or other representative thereof." The Ginn Defendants further object to this
Interrogatory as overly broad and unduly burdensome. The Ginn Defendants further
object to this Interrogatory as confusing as to the manner it asks how the contributions
were was accounted for. The Ginn Defendants further object to this Interrogatory because
the terms "capital or other financial contribution" are vague and ambiguous. The Ginn
Defendants interpret these terms to refer to only monetary cash contributions
notwithstanding that the Ginn Defendants have made non-monetary contributions directly
to and for the benefit of the Tesoro or Quail West Debtors including but not limited to
providing personal loan guaranties, performance of services, provision of know-how,
experience and reputation, and similar contributions.

Subject to the objections asserted above, the Ginn Defendants respond that Edward
R. Ginn III and ERG Enterprises, L.P. made no capital or other financial contributions in
the form of monetary cash contributions to any of the Tesoro or Quail West Debtors.

Prior to the June 8, 2006 Credit Suisse loan closing, the Lubert Adler Fund III
investment limited partnerships had funded 100% of the capital in Tesoro via capital
contributions made by the Fund III investment limited partnerships in the following
percentages:

- **Lubert-Adler Capital Real Estate Fund III, L.P.:**       **12.0882%**
- **Lubert-Adler Real Estate Parallel Fund III, L.P.:**       **1.8429%**
- **Lubert-Adler Real Estate Fund III, L.P.:**              **86.0689%**

Prior to the June 8, 2006 Credit Suisse loan closing, the Lubert Adler Fund III investment limited partnerships and the Lubert-Adler Fund IV investment limited partnerships had funded, on a 50/50 basis, 100% of the capital in Quail West via capital contributions and loans. The 50% contribution by the Fund III investment limited partnerships was made via the same percentage split as set forth in the prior paragraph. The 50% contribution by the Fund IV investment limited partnerships was made in the following percentages:

- Lubert-Adler Capital Real Estate Fund IV, L.P.: 5.9881%
- Lubert-Adler Real Estate Parallel Fund IV, L.P.: 2.8004%
- Lubert-Adler Real Estate Fund IV, L.P.:     91.2115%

In further response to this Interrogatory: (a) as to the contributions to Tesoro, the Ginn Defendants refer the Trustee to the spreadsheet attached to Lubert-Adler Defendants' Responses to Plaintiff's First Set of Interrogatories as Exhibit 1; and (b) as to the contributions and loans to Quail West, the Ginn Defendants refer the Trustee to the spreadsheet attached to Lubert-Adler Defendants' Responses to Plaintiff's First Set of Interrogatories hereto as Exhibit 2. The equity contributions are evidenced by journal entries. The debt contributions are evidenced by journal entries and promissory notes.

By way of further response, during the period June 30, 2008 until the December 23, 2008 bankruptcy filing, $24,010,118.63 in debt and equity funding was provided to the Ginn Development Corporation, LLC and Ginn-LA CS Holding Company LLC ($18,676,897 from LA Fund III; $1,356,396.63 from LA Fund IV and $3,976,825 from LA Fund VI) which funds were used to pay the operating costs of the CS borrowers. Of these funds, $3,219,672.23 was allocated to the Quail West Debtors, $4,039,255.94 was allocated to the Tesoro Debtors, $5,411,573.28 was allocated to the Laurelmor Project, $6,203,254.19 was allocated to the Ginn Sur Mer Project, and $5,407,335.71 was used to pay the operating costs of the CS borrowers, including the Quail West Debtors and the Tesoro Debtors, as well as the other project entities. These fundings are evidenced by journal entries and/or promissory notes.

By way of further response, subsequent to the closing of the Credit Suisse loans, Ginn-LA St. Lucie, Ltd., LLLP ("St. Lucie") contributed a piece of the Tesoro collateral known as the "Beach Club Tract" to Tesoro Beach Club Condominium, LLC, ("TBCC"), a wholly owned subsidiary of St. Lucie. On December 28, 2006, Ginn-LA Tesoro Non-CS Assets, Ltd. (a Lubert Adler Fund III partnership) acquired 100% of the member interest in TBCC for a purchase price of $15,000,000.

3.      Identify each potential lender which Ginn or Lubert-Adler contacted or were contacted by

concerning the possibility of obtaining loan financing for the Tesoro and Quail West Projects

during the period from October 2005 through December 2008, indicating, for each such lender,

when the contact was made, and the amount and terms of any proposed financing requested, offered, or discussed.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants object to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. By way of further response, subject to the objections asserted above, the Ginn Defendants respond that they are still investigating the response to this interrogatory and will supplement this response.

4.    Identify the Tesoro Debtors' assets and liabilities, and the dollar values thereof, as of:

(a) June 7, 2006;

(b) June 9, 2006; and

(c) December 31, 2006.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants object to this Interrogatory on the ground that it requests opinions and conclusions concerning the solvency of the Tesoro Debtors (i.e. the value of the Tesoro Debtors' assets and liabilities), which issue will be properly addressed by experts for the Ginn Defendants in this proceeding.

5.    Identify the Quail West Debtors' assets and liabilities, and the dollar values thereof, as of:

(a) June 7, 2006;

(b) June 9, 2006; and

(c) December 31, 2006.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants object to this Interrogatory on the ground that it requests opinions and conclusions concerning the solvency of the Quail West Debtors (i.e. the value of the Quail West Debtors' assets and liabilities), which issue will be properly addressed by experts for the Ginn Defendants in this proceeding.

6.      Identify all law firms, accounting firms, and other entities which represented and/or provided professional advice to any of the Tesoro or Quail West Debtors in connection with the negotiations leading to Credit Suisse Loan Agreements, and/or any amendment, modification, or waiver of any provision thereof, indicating the entity(ies) represented, when the representation took place, and the nature and scope of the representation or advice given.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants object to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence and to the extent it requests information protected by the common interest doctrine privilege or other privileges. Subject to the foregoing, the Ginn Defendants respond as follows:

Morris, Manning & Morris, LLP ("MMM") commenced representation of Ginn-LA CS Holding Company, LLC, Ginn-LA CS Borrower, LLC, Ginn-LA Conduit Lender, Inc. and their subsidiaries (which include the Tesoro and Quail West Debtors) in connection with the Credit Suisse credit facilities in March 2006. MMM served as counsel for them in connection with the negotiating and closing of the initial credit facilities and the subsequent modifications and restructuring thereof.

Baker & Hostetler, LLP acted as Florida counsel in connection with the initial Credit Suisse closing and thereafter in 2007 and 2008.

Kirkland & Ellis ("K&E") was retained as of May 1, 2008, by Ginn-LA CS Holding Company, LLC, Ginn-LA CS Borrower, LLC, Ginn-LA Conduit Lender, Inc. and their subsidiaries (which include the Tesoro and Quail West Debtors) in connection with certain restructuring issues relating to the Credit Suisse loan. K&E's representation of the debtor entities continued through their chapter 7 filings on December 23, 2008.

Berger Singerman, P.A. was retained on December 8, 2008, by Ginn-LA St. Lucie, Ginn-LA St. Lucie GP, The Tesoro Club, LLC, Tesoro Golf Condominium, Ginn-LA Quail West, Ginn-LA Quail West GP, and Ginn Quail West Beach (the "Client") in connection with restructuring matters. This engagement was supplemented on December 23, 2008, when the Client chose to file Chapter 7. As of December 23, 2008, Berger Singerman's representation was limited solely to the review of bankruptcy petitions, schedules and statements of financial affairs prepared by the Client and Kirkland & Ellis, filing of the bankruptcy cases and Berger Singerman's appearance at the Section 341 meetings.

7.      Identify all transfers of Credit Suisse Loan Proceeds, including any immediate or mediate transfer, indicating, for each transfer, the identity of the transferor and transferee, the amount and date of the transfer, how the transfer was accounted for, evidenced, and credited among the Projects, and the consideration or value – if any – given and received therefor.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants object to this Interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Ginn Defendants further object to this Interrogatory to the extent it seeks confidential information. Subject to the foregoing objections, the Ginn Defendants respond as follows:

Of the $510,000,000 loan proceeds, $399,000,000 was allocated to the Ginn-LA CS Borrower, LLC and $111,000,000 was allocated to the Ginn-LA Conduit Lender, Inc.

As set forth on the Disbursement Authorization dated June 8, 2006 from the Credit Suisse loan closing (LA 003241-LA003249), the $510,000,000.00 in loan proceeds were disbursed as follows:

The sum of $15,700,042.00 to Credit Suisse.

The sum of $ 875,000.00 to Latham & Watkins LLP.

The sum of $ 164,152,487.45  to Stewart Title Company.

The sum of $  71,778.64 to Higgs & Johnson.

The sum of $ 10,000.00 to di Santi Watson Capua & Wilson.

The sum of $ 67,109.15 to Carlton Fields.

The sum of $ 238,300,700.71 to Ginn-LA CS Borrower, LLC.

The sum of $ 89,961,281.49 to Ginn-LA Conduit Lender, Inc.

The sum of $ 775,000.00 to Morris, Manning & Martin.

The sum of $ 40,000.00 to Dupuch & Turnquest & Co.

The sum of $ 38,925.00 to Baker & Hostetler, LLP.

The sum of $ 7,675.00 to Dean Mosely & Smith.

In accordance with Schedule 1 of the Disbursement Authorization, Stewart Title distributed the $164,152,487.45 as follows:

| PAYEE | AMOUNT |
|---|---|
| Stewart Title (premiums, fees, expenses) | $ 909,308.09 |
| Holders of Existing Indebtedness | |
| • Quail West, Ltd. | $29,545,678.00 |
| • FBT Illinois (for Quail West) | $ 5,898,254.66 |
| • FBT Illinois (for Quail West) | $15,380,774.89 |
| • Wachovia (for Tesoro) | $ 6,650,256.66 |
| • R-G Crown (for Tesoro) | $24,421,744.89 |
| • Colonial Bank (The Gardens) | $12,829,871.00 |
| • WERL, Ltd. (Ginn Sur Mer) | $12,105,204.59 |
| • Lopp Family LP (Laurelmor) | $ 2,101,785.31 |
| • Mountain View Holdings, Inc., LLC (Laurelmor) | $ 3,599,928.00 |
| • Kaplan Holding & DFK, LP (Laurelmor) | $40,264,727.67 |
| • Kaplan Holdings (Laurelmor) | $ 5,493,027.19 |
| Intangible Taxes/Documentary Stamps | $ 4,904,510.00 |
| Recording Costs | $ 18,495.00 |
| Stewart Title National | $ 14,500.00 |
| First American UCC Services Agency LLC | $ 6,975.00 |
| National Corporate Research, Ltd. | $ 7,446.50 |

Closing costs of $23,446,764.00 were allocated among the Projects as follows:

| PROJECT | CLOSING COSTS |
|---|---|
| Laurelmor | $ 6,754,604.76 |
| The Gardens | $ 1,467,379.66 |
| Tesoro | $ 3,237,551.94 |
| Quail West | $ 2,303,714.66 |
| Ginn Sur Mer | $ 9,683,513.92 |

CS wired $238,300,700.71 to Ginn-LA CS Borrower, LLC's Account #8044845512 at Colonial Bank. Thereafter, Ginn-LA CS Borrower, LLC wired $237,550,700.71 of those funds to Ginn-LA CS Holding's Account #8044845520 at Colonial Bank., as follows: $37,550,700.71 on June 12, 2006 and $200,000,000 on June 13, 2006.

CS wired $89,961,281.49 to Ginn-LA Conduit Lender, Inc.'s Account #8044845538 at Colonial Bank. Thereafter, on June 12, 2006, Ginn-LA Conduit Lender, Inc. wired those funds to Ginn-LA West End Limited's Account # 20059960 at First Caribbean International Bank. Of those funds: (a) on June 13, 2006, Ginn-LA West End Limited wired $75,539,027.86 to Ginn-LA West End Ltd. LLLP's Account #8044845199 at Colonial Bank; and (b) on June 14, 2006, Ginn-LA West End Limited wired $14,504,764.86 to Ginn-LA CS Holding's Account #8044845520 at Colonial Bank.

Of the funds transferred to the Ginn-LA CS Holding Account and the Ginn-LA West End Ltd. Account, $323,263,982.20 was distributed to the Lubert-Adler Fund III investment limited partnerships, the Lubert-Adler Fund IV investment limited partnerships, Edward R. Ginn III, as Trustee of the Edward R. Ginn III Revocable Trust, dated September 14, 2002, and ERG Management, LLC and were allocated among the Projects as follows:

| PROJECT | LOAN PROCEEDS |
|---|---|
| Laurelmor | $66,594,629.97, allocated as follows:<br>• LA Accrued Interest:   $ 3,340,144.56<br>• LA Loan Repayment:  $ 51,105,603.89<br>• LA Preferred Return:   $   973,204.19<br>• LA Equity:                    $ 11,175,677.33 |
|  | The Laurelmor LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund IV, L.P.:    5.9881%<br>• Lubert-Adler Real Estate Parallel Fund IV, L.P.:   2.8004%<br>• Lubert-Adler Real Estate Fund IV, L.P.:          91.2115% |
| The Gardens | $32,302,126.24, allocated as follows:<br>• LA Accrued Interest:   $ 2,918,102.88<br>• LA Loan Repayment:  $ 25,576,449.47<br>• LA Preferred Return:   $   410,190.47<br>• LA Equity:                    $ 3,397,383.42 |
|  | The Gardens LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund III, L.P.:    12.0882%<br>• Lubert-Adler Real Estate Parallel Fund III, L.P.:    1.8429%<br>• Lubert-Adler Real Estate Fund III, L.P.:           86.0689% |
| Tesoro | $109,453,300.09, allocated as follows:<br>• LA Preferred Return:    $ 6,384,354.18<br>• LA Equity:                     $ 76,298,706.81<br>• LA Profit:                      $21,413,194.24<br>• Ginn Promote:              $ 5,357,044.86 |
|  | The Tesoro LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund III, L.P.:    12.0882%<br>• Lubert-Adler Real Estate Parallel Fund III, L.P.:    1.8429%<br>• Lubert-Adler Real Estate Fund III, L.P.:           86.0689% |
| Quail West | $39,374,898.05 allocated as follows:<br>• LA Accrued Interest:   $ 1,394,436.65<br>• LA Loan Repayment:  $ 19,675,813.02 |

|  | • LA Preferred Return:  $  909,513.44<br>• LA Equity:  $ 8,611,730.28<br>• LA Profit:  $ 6,997,723.04<br>• Ginn Promote:  $ 1,785,681.62 |
|  | The Quail West LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund III, L.P.:  6.0441%<br>• Lubert-Adler Real Estate Parallel Fund III, L.P.:  0.9215%<br>• Lubert-Adler Real Estate Fund III, L.P.:  43.0344%<br>• Lubert-Adler Capital Real Estate Fund IV, L.P.:  2.9941%<br>• Lubert-Adler Real Estate Parallel Fund IV, L.P.  1.4002%<br>• Lubert-Adler Real Estate Fund IV, L.P.:  45.6057% |
| Ginn Sur Mer | $75,539,027.86, allocated as follows:<br>• LA Preferred Return:  $ 4,298,201.28<br>• LA Equity:  $ 71,240,826.58 |
|  | The Ginn Sur Mer LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund IV, L.P.:  5.9881%<br>• Lubert-Adler Real Estate Parallel Fund IV, L.P.  2.8004%<br>• Lubert-Adler Real Estate Fund IV, L.P.:  91.2115% |

Of the amounts allocated above to the Ginn Promote, $7,069,319.22 was wired on June 14, 2006 to SunTrust Account #1000046305008 in the name of Edward R. Ginn III, as Trustee of the Edward R. Ginn III Revocable Trust, dated September 14, 2002, and $71,407.26 was wired on July 15, 2006 to SunTrust Account No. 1000046303631 in the name of ERG Management, LLC.

The sum of $4,998,000.00 of the CS loan proceeds was used for project overhead and post-closing costs.

By way of further response and subject to the objections asserted above, the Ginn Defendants respond that they are still investigating the response to this interrogatory. Based on the reasonable investigation conducted to date, it appears that further response to this Interrogatory concerning disbursements that may be considered immediate or mediate transfers for purposes of the claims asserted in this proceeding will be the subject of opinions and conclusions of the Ginn Defendants' expert(s). The Ginn Defendants will produce any such expert opinions and conclusions in accordance with the applicable rules and case management deadlines.

8.     Regarding the transfers to Ginn and Lubert-Adler entities of Credit Suisse Loan Proceeds, and the guaranties and liens issued in connection with the loan transaction, please identify the consideration or value, if any, received by the Tesoro Debtors in exchange for:

> (a) the portion of the loan proceeds distribution credited to the Tesoro Debtors;
>
> (b) the guaranties they issued in connection with the loan transaction; and
>
> (c) the liens they issued in connection with the loan transaction.

**RESPONSE:**

**In addition to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants object to this Interrogatory as being confusing. The Ginn Defendants further object to this Interrogatory because the use of the term "Ginn" is vague, ambiguous, and overly broad. Subject to the objections asserted above, the Ginn Defendants respond as follows:**

**The transfers identified and described in response to the foregoing interrogatory (No. 7) were made pursuant to the terms of the Second Amended and Restated Agreement of Limited Partnership of Ginn-LA St. Lucie Ltd., LLLP which provided for distributions in the following order of priority:**

> **1.  To the limited partners in repayment of their loans to Debtor Ginn-LA St. Lucie Ltd., LLLP, including interest thereon;**
>
> **2.  To the limited partners, in proportion to their respective preferred return account balances;**
>
> **3.  To the partners in proportion to the balance of their unreturned capital contributions; and**
>
> **4.  The balance to the partners in proportion to their respective percentage interests (i.e., 20% to the general partner and 80% to the limited partners).**

**By way of further response, the value received by the Tesoro Debtors in connection with the loan transaction were the benefits of a long term loan package consisting of term loans and a line of credit with a risk mitigation vehicle through cross-collateralization and a diversified asset base from the other Projects. Proceeds of the term loans were used to fund the refinancing of project level debt of the Tesoro Project as well as the other four Projects and to fund the other items set forth at length in the Response to Interrogatory 7. Proceeds of the Line of Credit were used to fund the ongoing operating expenses and development costs of the Tesoro Debtors as well as those of the other four Projects. By way of further response, the Ginn Defendants object to this Interrogatory to the extent that it**

requests opinions and conclusions concerning, among other things, valuation of consideration, which issues will be properly addressed by experts for the Ginn Defendants in this proceeding.

9.      Regarding the transfers to Ginn and Lubert-Adler entities of Credit Suisse Loan Proceeds, and the guaranties and liens issued in connection with the loan transaction, please identify the consideration or value, if any, received by the Quail West Debtors in exchange for:

> (a) the portion of the loan proceeds distribution credited to the Quail West Debtors;
>
> (b) the guaranties they issued in connection with the loan transaction; and
>
> (c) the liens they issued in connection with the loan transaction.

**RESPONSE:**

In addition to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants object to this Interrogatory as being confusing. The Ginn Defendants further object to this Interrogatory because the use of the term "Ginn" is vague, ambiguous, and overly broad. Subject to the objections asserted above, the Ginn Defendants respond as follows:

The transfers identified and described in response to the foregoing interrogatory (No. 7) were made pursuant to the terms of the Amended and Restated Agreement of Limited Partnership of Debtor Ginn-LA Quail West Ltd., LLLP which provided for distributions in the following order of priority:

> 1. **To the limited partners in repayment of their loans to Debtor Ginn-LA Quail West Ltd., LLLP, including interest thereon;**
>
> 2. **To the limited partners, in proportion to their respective preferred return account balances;**
>
> 3. **To the partners in proportion to the balance of their unreturned capital contributions; and**
>
> 4. **The balance to the partners in proportion to their respective percentage interests (i.e., 20% to the general partner and 80% to the limited partners).**

By way of further response, the value received by the Quail West Debtors in connection with the loan transaction were the benefits of a long term loan package consisting of term loans and a line of credit with a risk mitigation vehicle through cross-collateralization and a diversified asset base from the other Projects. Proceeds of the term loans were used to fund the refinancing of project level debt of the Quail West Project as

well as the other four Projects and to fund the other items set forth at length in the Response to Interrogatory 7. Proceeds of the Line of Credit were used to fund the ongoing operating expenses and development costs of the Quail West Debtors as well as those of the other four Projects. By way of further response, the Ginn Defendants object to this Interrogatory to the extent that it requests opinions and conclusions concerning, among other things, valuation of consideration, which issues will be properly addressed by experts for the Ginn Defendants in this proceeding.

10.    State the name and address of each Lubert-Adler Fund III & IV Investor, as well as:

   (a) the amount(s) and date(s) of the investor's investment(s);

   (b) the Fund entity(ies) in which the investor holds a partnership or other ownership or investment interest, and the nature and scope of said interest(s);

   (c) the amount of, date of, and reason for any distribution made to the investor in connection with its investment(s), including any distribution that was effectively rolled into that or another investment.

**RESPONSE:**

   In addition to the foregoing General Objections which are incorporated herein by reference, the Ginn Defendants also object to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Ginn Defendants further object to this Interrogatory to the extent it requests information protected by the attorney-client, attorney work product or other applicable privilege. Subject to these objections, the Ginn Defendants respond that they lack the knowledge or information responsive to this Interrogatory.

Dated: August 9th, 2010

Respectfully submitted,

SMITH MOORE LEATHERWOOD LLP
Counsel to Edward R. Ginn III and ERG
Enterprises, L.P.

525 N. Tryon Street, Suite 1400
Charlotte, NC 28202
Telephone: (704) 384-2600
Facsimile: (704) 384-2902

By: *s/ Lynn F. Chandler*
Lynn F. Chandler
(Florida Bar No. 946761)
Email: lynn.chandler@smithmoorelaw.com

- AND -

KOZYAK TROPIN &
THROCKMORTON, P.A.
Counsel to Edward R. Ginn III and ERG
Enterprises, L.P.

2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
Telephone: (305) 377-0655
Facsimile: (305) 372-3508

By: *s/ Charles W. Throckmorton*
Charles W. Throckmorton
(Florida Bar No. 286192)
Email: cwt@kttlaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Regular U.S. Mail, postage prepaid, and via Electronic Mail, upon Eugene E. Stearns, Esq., Harold D. Moorefield, Jr., Esq., Matthew W. Buttrick, Esq., and Andrew E. Stearns, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Attorneys for the Trustee, Museum Tower, 150 West Flagler Street, Suite 2200, Miami, FL, 33130, and William A. Harvey, Esq. and Rona J. Rosen, Esq., Klehr Harrison Harvey Branzburg LLP, Attorneys for the Lubert-Adler Defendants, 1835 Market Street, Suite 1400, Philadelphia, PA, 19103, on this the 9th day of August, 2010.

By: *s/ Lynn F. Chandler*
LYNN F. CHANDLER

**VERIFICATION**

I, Edward R. Ginn, III, individually and as Manager of ERG Management, LLC, the general partner of ERG Enterprises, L.P., declare under penalty of perjury that I have read the foregoing Ginn Defendants' Responses To Plaintiff's First Set Of Interrogatories ("Responses"), and that the information contained in the Responses is true and correct to the best of my knowledge, information and belief. I also state that I am authorized to sign this verification on behalf of the Ginn Defendants as defined in the Responses.

Edward R. Ginn III
Dated: August 9, 2010

# EXHIBIT 7

**LUBERT-ADLER DEFENDANTS' RESPONSES
TO FIRST SET OF INTEROGATORIES**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br>GINN-LA ST. LUCIE LTD., LLLP, *et al*.,<br><br>Debtors. | **CASE NO. 08-29769-PGH**<br>All Cases Jointly Administered<br><br>Chapter 7 |

| | |
|---|---|
| | (4 Cases Substantively Consolidated Under Lead Case No. 08-29769-PGH) |
| In re:<br>GINN-LA QUAIL WEST LTD., LLLP, *et al.*,<br><br>Debtors. | (3 Cases Substantively Consolidated Under Lead Case No. 08-29774-PGH) |

| | |
|---|---|
| DREW M. DILLWORTH, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD R. GINN III; ERG ENTERPRISES, L.P.; LUBERT-ADLER MANAGEMENT CO., L.P.; LUBERT-ADLER REAL ESTATE FUND III, L.P.; LUBERT-ADLER REAL ESTATE PARALLEL FUND III, L.P.; LUBERT-ADLER CAPITAL REAL ESTATE FUND III, L.P.; LUBERT-ADLER REAL ESTATE FUND IV, L.P.; LUBERT-ADLER REAL ESTATE PARALLEL FUND IV, L.P.; LUBERT-ADLER CAPITAL REAL ESTATE FUND IV, L.P.; AND JOHN DOES 1-50,<br><br>Defendants. | **ADV. PRO. NO. 10-02976-PGH** |

## THE LUBERT-ADLER DEFENDANTS' RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, made applicable by Fed. R. Bankr. P. 7033, Defendants

Lubert-Adler Management Co., L.P., Lubert-Adler Real Estate Fund III, L.P., Lubert-Adler Real

Estate Parallel Fund III, L.P., Lubert-Adler Capital Real Estate Fund III, L.P., Lubert-Adler Real

Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. (collectively, the "Lubert-Adler Defendants"), through their undersigned attorneys, hereby respond to Plaintiff's First Set of Interrogatories ("Interrogatories"). The Lubert-Adler Defendants reserve the right to amend or supplement these responses in the future in accordance with Fed. R. Civ. P. 26(e)(1), as made applicable by Fed. R. Bankr. P. 7026(e)(1).

## GENERAL OBJECTIONS

1.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they seek information protected by the attorney-client, work-product, common interest, investigative, or any other privilege or exemption from discovery.

2.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they request information that is protected by evidentiary privileges identified in the Federal Rules of Civil Procedure, the Bankruptcy Rules, and the Rules of Evidence.

3.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they are vague, ambiguous, over broad, unduly burdensome, designed to harass the Lubert-Adler Defendants and cause unnecessary expense, and/or are not reasonably calculated to lead to the discovery of admissible evidence.

4.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they seek documents or information that contain confidential financial, trade secret, proprietary, or sensitive business information, or documents or information protected from disclosure by law or any agreement or court order with respect to confidentiality or disclosure.

5.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they seek documents or information that are outside the Lubert-Adler Defendants' possession, custody or control, and to the extent they seek documents or information from other defendants.

6.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they contain express or implied assumptions of fact or law with respect to matters at issue in this case.

7.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they purport to impose obligations or duties that exceed the requirements imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

8.      The Lubert-Adler Defendants object to the Interrogatories to the extent that they seek information for an unreasonable, irrelevant or unspecified period of time.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

1.      The Lubert-Adler Defendants object to the definitions of the defined terms "Edward R. Ginn III," "ERG Enterprises, L.P.," "Lubert-Adler," and "Lubert-Adler Fund III & IV Entities" on the grounds that they are vague, ambiguous, overbroad and unduly burdensome to the extent that they are defined to include "any affiliate thereof" and/or "any predecessor, successor or assign of any of them, and any director, officer, employee, agent, attorney or other representative thereof."

2.      The Lubert-Adler Defendants object to the definitions of the terms "Document" and "Communication" on the grounds that each definition is overly broad, unduly burdensome, and encompass materials and/or information protected by the attorney work product, the attorney-client, or other applicable privilege.

3.      The Lubert-Adler Defendants object to all definitions and instructions to the extent they are both internally inconsistent and incompatible with the ordinary, common, or established meanings.  Accordingly, in interpreting and construing the Interrogatories, the Lubert-Adler Defendants will attempt to give words their ordinary, common, and established meanings wherever possible, so that the responses and objections will not be subject to misinterpretation.

4.      The Lubert-Adler Defendants object to the definitions and instructions to the extent they purport to impose obligations or duties that exceed the requirements imposed by the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

### AS TO THE SPECIFIC INTERROGATORIES

Subject to and without waiving the foregoing General Objections and Objections to Definitions and Instructions, the Lubert-Adler Defendants object and respond to the Interrogatories as follows:

1.      Describe the relationship among and between Edward R. Ginn III, ERG Enterprises, L.P., Lubert-Adler, and the Lubert-Adler Fund III & IV Entities, with respect to the Tesoro and Quail West Projects.

**RESPONSE:**

Subject to and without waiving the aforementioned General Objections, which are hereby incorporated by reference, the Lubert-Adler Defendants further object to this Interrogatory on the grounds that the undefined term "relationship" is vague, ambiguous, overbroad and unduly burdensome in the context of this Interrogatory; and the defined terms "Edward R. Ginn III," "ERG Enterprises, L.P.," "Lubert-Adler," and "Lubert-Adler Fund III & IV Entities" are vague, ambiguous, overbroad and unduly burdensome to the extent that they are defined to include "any affiliate thereof" and/or "any predecessor, successor or assign of any of them, and any director, officer, employee, agent, attorney or other representative thereof." The Lubert-Adler Defendants further object to this Interrogatory as overly broad and unduly burdensome.  Subject to the objections asserted above, the Lubert-Adler Defendants respond as follows:

Edward R. Ginn III is a developer of residential resort properties.

Lubert-Adler Fund III is a private equity fund comprised of the following three investment limited partnerships:

- Lubert-Adler Capital Real Estate Fund III, L.P.
- Lubert-Adler Real Estate Parallel Fund III, L.P.
- Lubert-Adler Real Estate Fund III, L.P.

Lubert-Adler Fund IV is a private equity fund comprised of the following three investment limited partnerships:

- Lubert-Adler Capital Real Estate Fund IV, L.P.
- Lubert-Adler Real Estate Parallel Fund IV, L.P.
- Lubert-Adler Real Estate Fund IV, L.P.

Lubert-Adler Fund III and/or Lubert-Adler Fund IV formed separate joint ventures with affiliates of Edward R. Ginn III for the purpose of developing the Tesoro Project, the Quail West Project, The Gardens Project, the Laurelmor Project and the Ginn-Sur-Mer Project respectively (collectively the "Projects"). In 2006, in connection with the Credit Suisse loan transaction: (a) Ginn-LA CS Borrower, LLC was formed and Ginn-LA Quail West Ltd., LLLP, Ginn-LA St. Lucie Ltd., LLLP, Ginn-LA Laurel Creek Ltd., LLLP and Ginn-LA Bulow Ltd., LLLP became subsidiaries thereof; and (b) Ginn-LA Conduit Lender, Inc. was formed and Ginn-LA West End Ltd., LLLP became a subsidiary thereof.

The Tesoro Project was developed in part by Debtor Ginn-LA St. Lucie, Ltd., LLLP. Debtors The Tesoro Club, LLC and Tesoro Golf Club Condominium, LLC are wholly owned subsidiaries of Debtor Ginn-LA St. Lucie Ltd., LLLP. The Debtor Ginn-St. Lucie GP, LLC, which is wholly owned by Ginn-LA CS Borrower, LLC, is the general partner of Debtor Ginn-LA St. Lucie, Ltd., LLLP, with a 20% percentage interest. Ginn-LA CS Borrower, LLC owns all of the percentage interests in Debtor Ginn-LA St. Lucie, Ltd., LLLP, 80% directly and 20% indirectly through its interest in Debtor Ginn-St. Lucie GP, LLC.

Edward R. Ginn III is the manager of Ginn Tesoro Golf, LLC, a Georgia limited liability company formed to own the Palmer golf course and certain other amenities at the Tesoro Project. Ginn Tesoro Golf, LLC is a wholly owned subsidiary of ERG Enterprises, L.P.

The Quail West Project was developed in part by Debtor Ginn-LA Quail West Ltd., LLLP. It has two subsidiaries: Debtor Ginn-Quail West Beach, LLC and Quail West Foundation, Inc. Debtor Ginn-Quail West GP, LLC, which is wholly owned by Ginn-LA CS Borrower, LLC, holds a 20% general partner interest in Debtor Ginn-LA Quail West Ltd., LLLP. Ginn-LA CS Borrower, LLC owns all of the percentage interests in Debtor Ginn-LA Quail West, Ltd., LLLP, 80% directly and 20% indirectly through its interest in Debtor Ginn-Quail West GP, LLC.

Edward R. Ginn III is the manager of Ginn-LA CS Borrower, LLC.

As of the June 8, 2006 Credit Suisse loan closing, in addition to owning all of the percentage interests in Ginn-LA St. Lucie, Ltd., LLLP and Ginn-LA Quail West, Ltd., LLLP, Ginn-LA CS Borrower, LLC owned all of the percentage interests in Ginn-LA Bulow Ltd., LLLP, a developer of The Gardens Project, and Ginn-LA Laurel Creek Ltd., LLLP, a developer of the Laurelmor Project.

Ginn-LA CS Borrower, LLC is a wholly owned subsidiary of Ginn-LA CS Holding Company, LLC, a Delaware limited liability company. The managing member of Ginn-LA CS Holding Company, LLC is ERG Enterprises, L.P. ERG Management LLC is the General Partner of ERG Enterprises, L.P. with a 1% percentage interest and the Edward R. Ginn III Revocable Trust dated 9/14/02 is the Limited Partner with a 99% percentage interest. Edward R. Ginn III is the manager of ERG Management LLC.

ERG Enterprises, L.P. has a 20% percentage interest in Ginn-LA CS Holding Company, LLC. The other percentage interest holders of Ginn-LA CS Holding Company, LLC are as follows:

- Lubert-Adler Capital Real Estate Fund III, L.P. (3.87%)
- Lubert-Adler Real Estate Parallel Fund III, L.P. (0.59%)
- Lubert-Adler Real Estate Fund III, L.P. (27.56%)
- Lubert-Adler Real Estate Fund IV, L.P. (43.77%)
- Lubert-Adler Real Estate Parallel Fund IV, L.P. (1.34%)
- Lubert-Adler Capital Real Estate Fund IV, L.P. (2.87%).

The Ginn Sur Mer Project was developed in part by Ginn-LA West End Ltd., LLLP. Ginn-LA Conduit Lender, Inc. is a wholly owned subsidiary of Ginn-LA West End Ltd., LLLP. ERG Enterprises, L.P. indirectly through its interest in Ginn-West End GP, LLC, owns a 20% percentage interest in Ginn-LA West End Ltd., LLLP.  The other percentage interest holders of Ginn-LA West End Ltd., LLLP are as follows:

- Lubert-Adler Real Estate Fund IV, L.P. (72.97%)
- Lubert-Adler Real Estate Parallel Fund IV, L.P. (2.24%)
- Lubert-Adler Capital Real Estate Fund IV, L.P. (4.79%).

Lubert-Adler Fund V and Lubert-Adler Fund VI are private equity funds that, directly and indirectly, provided the Projects with additional capital through purchase transactions and additional capital.

Lubert-Adler Management Co., L.P. provides investment management services to the Lubert-Adler Funds, but holds no interest in any of the foregoing entities, performed no development services in connection with the Projects, and received no transfers of any portion of the Credit Suisse loan proceeds.

2.      Identify all capital and other financial contributions made by Edward R. Ginn III, ERG

Enterprises, L.P., Lubert-Adler, or any Lubert-Adler Fund III or IV Entity, to any of the Tesoro

or Quail West Debtors, indicating the person/entity which made the contribution, the entity

which received the contribution, the amount and date of the contribution, how the contribution

was accounted for (*e.g.,* as satisfaction of debt, return of equity, etc.), and how the contribution

was evidenced (*e.g.,* note or other instrument, journal entry, etc.).

**RESPONSE:**

Subject to and without waiving the aforementioned General Objections, which are hereby incorporated herein by reference, the Lubert-Adler Defendants further object to this Interrogatory on the grounds that the undefined term "relationship" is vague, ambiguous, overbroad and unduly burdensome in the context of this Interrogatory; and the defined terms "Edward R. Ginn III," "ERG Enterprises, L.P.," "Lubert-Adler," and "Lubert-Adler Fund III & IV Entities" are vague, ambiguous, overbroad and unduly burdensome to the extent that they are defined to include "any affiliate thereof" and/or "any predecessor, successor or assign of any of them, and any director, officer, employee, agent, attorney or other representative thereof." The Lubert-Adler Defendants further object to this Interrogatory as overly broad and unduly burdensome. The Lubert-Adler Defendants further object to this Interrogatory as confusing as to the manner it asks how the contributions were was accounted for. Subject to the objections asserted above, the Lubert-Adler Defendants respond as follows:

Edward R. Ginn III and ERG Enterprises, L.P. made no capital or other financial contributions to any of the Tesoro or Quail West Debtors.

Prior to the June 8, 2006 Credit Suisse loan closing, the Lubert Adler Fund III investment limited partnerships had funded 100% of the capital in Tesoro via capital contributions made by the Fund III investment limited partnerships in the following percentages:

- Lubert-Adler Capital Real Estate Fund III, L.P.:      12.0882%
- Lubert-Adler Real Estate Parallel Fund III, L.P.:       1.8429%
- Lubert-Adler Real Estate Fund III, L.P.:                86.0689%

Prior to the June 8, 2006 Credit Suisse loan closing, the Lubert Adler Fund III investment limited partnerships and the Lubert-Adler Fund IV investment limited partnerships had funded, on a 50/50 basis, 100% of the capital in Quail West via capital contributions and loans. The 50% contribution by the Fund III investment limited partnerships was made via the same percentage split as set forth in the prior paragraph. The 50% contribution by the Fund IV investment limited partnerships was made in the following percentages:

- Lubert-Adler Capital Real Estate Fund IV, L.P.:      5.9881%

- Lubert-Adler Real Estate Parallel Fund IV, L.P.:      2.8004%
- Lubert-Adler Real Estate Fund IV, L.P.:              91.2115%

In further response to this Interrogatory: (a) as to the contributions to Tesoro, the Lubert-Adler Defendants refer the Trustee to the spreadsheet attached hereto as Exhibit 1; and (b) as to the contributions and loans to Quail West, the Lubert-Adler Defendants refer the Trustee to the spreadsheet attached hereto as Exhibit 2.  The equity contributions are evidenced by journal entries. The debt contributions are evidenced by journal entries and promissory notes.

By way of further response, during the period June 30, 2008 until the December 23, 2008 bankruptcy filing, $24,010,118.63 in debt and equity funding was provided to the Ginn Development Corporation, LLC and Ginn-LA CS Holding Company LLC ($18,676,897 from LA Fund III; $1,356,396.63 from LA Fund IV and $3,976,825 from LA Fund VI) which funds were used to pay the operating costs of the CS borrowers. Of these funds, $3,219,672.23 was allocated to the Quail West Debtors, $4,039,255.94 was allocated to the Tesoro Debtors, $5,411,573.28 was allocated to the Laurelmor Project, $6,203,254.19 was allocated to the Ginn Sur Mer Project, and $5,407,335.71 was used to pay the operating costs of the CS borrowers, including the Quail West Debtors and the Tesoro Debtors, as well as the other project entities. These fundings are evidenced by journal entries and/or promissory notes.

By way of further response, subsequent to the closing of the Credit Suisse loans, Ginn-LA St. Lucie, Ltd., LLLP ("St. Lucie") contributed a piece of the Tesoro collateral known as the "Beach Club Tract" to Tesoro Beach Club Condominium, LLC, ("TBCC"), a wholly owned subsidiary of St. Lucie. On December 28, 2006, Ginn-LA Tesoro Non-CS Assets, Ltd. (a Lubert Adler Fund III partnership) acquired 100% of the member interest in TBCC for a purchase price of $15,000,000.

3.      Identify each potential lender which Ginn or Lubert-Adler contacted or were contacted by concerning the possibility of obtaining loan financing for the Tesoro and Quail West Projects during the period from October 2005 through December 2008, indicating, for each such lender, when the contact was made, and the amount and terms of any proposed financing requested, offered, or discussed.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.  By way of further response, subject to the objections asserted above, the Lubert-Adler Defendants

respond that they are still investigating the response to this interrogatory and will supplement this response.

4.    Identify the Tesoro Debtors' assets and liabilities, and the dollar values thereof, as of:

(a)    June 7, 2006;

(b)    June 9, 2006; and

(c)    December 31, 2006.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory on the ground that it requests opinions and conclusions concerning the solvency of the Tesoro Debtors (i.e. the value of the Tesoro Debtors' assets and liabilities), which issue will be properly addressed by experts for the Lubert-Adler Defendants in this proceeding.

5.    Identify the Quail West Debtors' assets and liabilities, and the dollar values thereof, as of:

(a)    June 7, 2006;

(b)    June 9, 2006; and

(c)    December 31, 2006.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory on the ground that it requests opinions and conclusions concerning the solvency of the Quail West Debtors (i.e. the value of the Quail West Debtors' assets and liabilities), which issue will be properly addressed by experts for the Lubert-Adler Defendants in this proceeding.

6.    Identify all law firms, accounting firms, and other entities which represented and/or provided professional advice to any of the Tesoro or Quail West Debtors in connection with the negotiations leading to Credit Suisse Loan Agreements, and/or any amendment, modification, or waiver of any provision thereof, indicating the entity(ies) represented, when the representation took place, and the nature and scope of the representation or advice given.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence and to the extent it requests information protected by the common interest doctrine privilege or other privileges. Subject to the foregoing, the Lubert-Adler Defendants respond as follows:

Morris, Manning & Morris, LLP ("MMM") commenced representation of Ginn-LA CS Holding Company, LLC, Ginn-LA CS Borrower, LLC, Ginn-LA Conduit Lender, Inc. and their subsidiaries (which include the Tesoro and Quail West Debtors) in connection with the Credit Suisse credit facilities in March 2006. MMM served as counsel for them in connection with the negotiating and closing of the initial credit facilities and the subsequent modifications and restructuring thereof.

Baker & Hostetler, LLP acted as Florida counsel in connection with the initial Credit Suisse closing and thereafter in 2007 and 2008.

Kirkland & Ellis ("K&E") was retained as of May 1, 2008, by Ginn-LA CS Holding Company, LLC, Ginn-LA CS Borrower, LLC, Ginn-LA Conduit Lender, Inc. and their subsidiaries (which include the Tesoro and Quail West Debtors) in connection with certain restructuring issues relating to the Credit Suisse loan. K&E's representation of the debtor entities continued through their chapter 7 filings on December 23, 2008.

Berger Singerman, P.A. was retained on December 8, 2008, by Ginn-LA St. Lucie, Ginn-LA St. Lucie GP, The Tesoro Club, LLC, Tesoro Golf Condominium, Ginn-LA Quail West, Ginn-LA Quail West GP, and Ginn Quail West Beach (the "Client") in connection with restructuring matters. This engagement was supplemented on December 23, 2008, when the Client chose to file Chapter 7. As of December 23, 2008, Berger Singerman's representation was limited solely to the review of bankruptcy petitions, schedules and statements of financial affairs prepared by the Client and Kirkland & Ellis, filing of the bankruptcy cases and Berger Singerman's appearance at the Section 341 meetings.

7.    Identify all transfers of Credit Suisse Loan Proceeds, including any immediate or mediate transfer, indicating, for each transfer, the identity of the transferor and transferee, the amount and date of the transfer, how the transfer was accounted for, evidenced, and credited among the Projects, and the consideration or value – if any – given and received therefor.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory as overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. The Lubert-Adler Defendants further object to this Interrogatory to the extent it seeks confidential information. Subject to the foregoing objections, the Lubert-Adler Defendants respond as follows:

Of the $510,000,000 loan proceeds, $399,000,000 was allocated to the Ginn-LA CS Borrower, LLC and $111,000,000 was allocated to the Ginn-LA Conduit Lender, Inc.

As set forth on the Disbursement Authorization dated June 8, 2006 from the Credit Suisse loan closing (LA 003241-LA003249), the $510,000,000.00 in loan proceeds were disbursed as follows:

The sum of $15,700,042.00 to Credit Suisse.

The sum of $ 875,000.00 to Latham & Watkins LLP.

The sum of $ 164,152,487.45  to Stewart Title Company.

The sum of $  71,778.64 to Higgs & Johnson.

The sum of $ 10,000.00 to di Santi Watson Capua & Wilson.

The sum of $ 67,109.15  to Carlton Fields.

The sum of $ 238,300,700.71 to Ginn-LA CS Borrower, LLC.

The sum of $ 89,961,281.49 to Ginn-LA Conduit Lender, Inc.

The sum of $ 775,000.00 to Morris, Manning & Martin.

The sum of $ 40,000.00 to Dupuch & Turnquest & Co.

The sum of $ 38,925.00 to Baker & Hostetler, LLP.

The sum of $ 7,675.00 to Dean Mosely & Smith.

In accordance with Schedule 1 of the Disbursement Authorization,  Stewart Title distributed the $164,152,487.45 as follows:

| PAYEE | AMOUNT |
| --- | --- |
| Stewart Title (premiums, fees, expenses) | $   909,308.09 |
| Holders of Existing Indebtedness | |
| • Quail West, Ltd. | $29,545,678.00 |
| • FBT Illinois (for Quail West) | $ 5,898,254.66 |
| • FBT Illinois (for Quail West) | $15,380,774.89 |

| | |
|---|---|
| • Wachovia (for Tesoro) | $ 6,650,256.66 |
| • R-G Crown (for Tesoro) | $24,421,744.89 |
| • Colonial Bank (The Gardens) | $12,829,871.00 |
| • WERL, Ltd. (Ginn Sur Mer) | $12,105,204.59 |
| • Lopp Family LP (Laurelmor) | $ 2,101,785.31 |
| • Mountain View Holdings, Inc., LLC (Laurelmor) | $ 3,599,928.00 |
| • Kaplan Holding & DFK, LP (Laurelmor) | $40,264,727.67 |
| • Kaplan Holdings (Laurelmor) | $ 5,493,027.19 |
| Intangible Taxes/Documentary Stamps | $ 4,904,510.00 |
| Recording Costs | $     18,495.00 |
| Stewart Title National | $     14,500.00 |
| First American UCC Services Agency LLC | $       6,975.00 |
| National Corporate Research, Ltd. | $       7,446.50 |

Closing costs of $23,446,764.00 were allocated among the Projects as follows:

| PROJECT | CLOSING COSTS |
|---|---|
| Laurelmor | $ 6,754,604.76 |
| The Gardens | $ 1,467,379.66 |
| Tesoro | $ 3,237,551.94 |
| Quail West | $ 2,303,714.66 |
| Ginn Sur Mer | $ 9,683,513.92 |

CS wired the $238,300,700.71 to Ginn-LA CS Borrower, LLC's Account #8044845512 at Colonial Bank. Thereafter, Ginn-LA CS Borrower, LLC wired $237,550,700.71 of those funds to Ginn-LA CS Holding's Account #8044845520 at Colonial Bank., as follows: $37,550,700.71 on June 12, 2006 and $200,000,000 on June 13, 2006.

CS wired the $89,961,281.49 to Ginn-LA Conduit Lender, Inc.'s Account #8044845538 at Colonial Bank. Thereafter, on June 12, 2006, Ginn-LA Conduit Lender, Inc. wired those funds to Ginn-LA West End Limited's Account # 20059960 at First Caribbean International Bank. Of those funds: (a) on June 13, 2006, Ginn-LA West End Limited wired $75,539,027.86 to Ginn-LA West End Ltd. LLLP's Account #8044845199 at Colonial Bank; and (b) on June 14, 2006, Ginn-LA West End Limited wired $14,504,764.86 to Ginn-LA CS Holding's Account #8044845520 at Colonial Bank.

Of the funds transferred to the Ginn-LA CS Holding Account and the Ginn-LA West End Ltd. Account, $323,263,982.20 was distributed in June, 2006 to the Lubert-Adler Fund III investment limited partnerships, the Lubert-Adler Fund IV investment limited partnerships and Edward R. Ginn III and were allocated among the Projects as follows:

| PROJECT | LOAN PROCEEDS |
|---|---|
| Laurelmor | $66,594,629.97, allocated as follows:<br>• LA Accrued Interest: $ 3,340,144.56<br>• LA Loan Repayment: $ 51,105,603.89<br>• LA Preferred Return: $ 973,204.19<br>• LA Equity: $ 11,175,677.33 |
| | The Laurelmor LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund IV, L.P.: 5.9881%<br>• Lubert-Adler Real Estate Parallel Fund IV, L.P. 2.8004%<br>• Lubert-Adler Real Estate Fund IV, L.P.: 91.2115% |
| The Gardens | $32,302,126.24, allocated as follows:<br>• LA Accrued Interest: $ 2,918,102.88<br>• LA Loan Repayment: $ 25,576,449.47<br>• LA Preferred Return: $ 410,190.47<br>• LA Equity: $ 3,397,383.42 |
| | The Gardens LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund III, L.P.: 12.0882%<br>• Lubert-Adler Real Estate Parallel Fund III, L.P.: 1.8429%<br>• Lubert-Adler Real Estate Fund III, L.P.: 86.0689% |
| Tesoro | $109,453,300.09, allocated as follows:<br>• LA Preferred Return: $ 6,384,354.18<br>• LA Equity: $ 76,298,706.81<br>• LA Profit: $21,413,194.24<br>• Ginn Promote: $ 5,357,044.86 |
| | The Tesoro LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund III, L.P.: 12.0882%<br>• Lubert-Adler Real Estate Parallel Fund III, L.P.: 1.8429%<br>• Lubert-Adler Real Estate Fund III, L.P.: 86.0689% |
| Quail West | $39,374,898.05 allocated as follows:<br>• LA Accrued Interest: $ 1,394,436.65<br>• LA Loan Repayment: $ 19,675,813.02<br>• LA Preferred Return: $ 909,513.44<br>• LA Equity: $ 8,611,730.28<br>• LA Profit: $ 6,997,723.04 |

| | |
|---|---|
| | • Ginn Promote:          $ 1,785,681.62 |
| | The Quail West LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund III, L.P.:      6.0441%<br>• Lubert-Adler Real Estate Parallel Fund III, L.P.:    0.9215%<br>• Lubert-Adler Real Estate Fund III, L.P.:              43.0344%<br>• Lubert-Adler Capital Real Estate Fund IV, L.P.:      2.9941%<br>• Lubert-Adler Real Estate Parallel Fund IV, L.P.     1.4002%<br>• Lubert-Adler Real Estate Fund IV, L.P.:             45.6057% |
| Ginn Sur Mer | $75,539,027.86, allocated as follows:<br>• LA Preferred Return:   $  4,298,201.28<br>• LA Equity:                   $ 71,240,826.58 |
| | The Ginn Sur Mer LA distributions were divided among the Lubert-Adler investment limited partnerships in the following percentages:<br>• Lubert-Adler Capital Real Estate Fund IV, L.P.:      5.9881%<br>• Lubert-Adler Real Estate Parallel Fund IV, L.P.     2.8004%<br>• Lubert-Adler Real Estate Fund IV, L.P.:             91.2115% |

The sum of $4,998,000.00 of the CS loan proceeds was used for project overhead and post-closing costs.

By way of further response, the Lubert Adler Defendants object to the production of information relating to transfers by the Lubert-Adler Fund III investment limited partnerships and the Lubert-Adler Fund IV investment limited partnerships to their investors because such information is confidential.

8.    Regarding the transfers to Ginn and Lubert-Adler entities of Credit Suisse Loan Proceeds, and the guaranties and liens issued in connection with the loan transaction, please identify the consideration or value, if any, received by the Tesoro Debtors in exchange for:

(a)    the portion of the loan proceeds distribution credited to the Tesoro Debtors;

(b)    the guaranties they issued in connection with the loan transaction; and

(c)    the liens they issued in connection with the loan transaction.

**RESPONSE:**

In addition to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory as being confusing. Subject to the objections asserted above, the Lubert-Adler Defendants respond as follows:

The transfers to the LA Fund III investment limited partnerships and Ginn were made pursuant to the terms of the Second Amended and Restated Agreement of Limited Partnership of Ginn-LA St. Lucie Ltd., LLLP which provided for distributions in the following order of priority:

      1.      To the limited partners in repayment of their loans to Debtor Ginn-LA St. Lucie Ltd., LLLP, including interest thereon;

      2.      To the limited partners, in proportion to their respective preferred return account balances;

      3.      To the partners in proportion to the balance of their unreturned capital contributions; and

      4.      The balance to the partners in proportion to their respective percentage interests (i.e., 20% to the general partner and 80% to the limited partners).

9.      Regarding the transfers to Ginn and Lubert-Adler entities of Credit Suisse Loan Proceeds, and the guaranties and liens issued in connection with the loan transaction, please identify the consideration or value, if any, received by the Quail West Debtors in exchange for:

      (a)      the portion of the loan proceeds distribution credited to the Quail West Debtors;

      (b)      the guaranties they issued in connection with the loan transaction; and

      (c)      the liens they issued in connection with the loan transaction.

**RESPONSE:**

In addition to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory as being confusing. Subject to the objections asserted above, the Lubert-Adler Defendants respond as follows:

The transfers to the LA Fund III investment limited partnerships, Fund IV investment limited partnerships and Ginn were made pursuant to the terms of the Amended and Restated Agreement of Limited Partnership of Debtor Ginn-LA Quail West Ltd., LLLP which provided for distributions in the following order of priority:

1.    To the limited partners in repayment of their loans to Debtor Ginn-LA Quail West Ltd., LLLP, including interest thereon;

2.    To the limited partners, in proportion to their respective preferred return account balances;

3.    To the partners in proportion to the balance of their unreturned capital contributions; and

4.    The balance to the partners in proportion to their respective percentage interests (i.e., 20% to the general partner and 80% to the limited partners).

10.    State the name and address of each Lubert-Adler Fund III & IV Investor, as well as:

(a)    the amount(s) and date(s) of the investor's investment(s);

(b)    the Fund entity(ies) in which the investor holds a partnership or other ownership or investment interest, and the nature and scope of said interest(s);

(c)    the amount of, date of, and reason for any distribution made to the investor in connection with its investment(s), including any distribution that was effectively rolled into that or another investment.

**RESPONSE:**

Subject to the foregoing General Objections which are incorporated herein by reference, the Lubert-Adler Defendants object to this Interrogatory because it seeks confidential non-public information.  The Lubert-Adler Defendants also object to this Interrogatory because it is overly broad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence.   The Lubert-Adler Defendants further object to this Interrogatory to the extent it

requests information protected by the attorney-client, attorney work product or other applicable privilege.

Dated: July 6, 2010                              Respectfully submitted,

                                                 BERGER SINGERMAN, P.A.
                                                 Counsel to Lubert-Adler Management Co.,
                                                 L.P., Lubert-Adler Real Estate Fund III,
                                                 L.P., Lubert-Adler Real Estate Parallel Fund
                                                 III, L.P., Lubert-Adler Capital Real Estate
                                                 Fund III, L.P., Lubert-Adler Real Estate
                                                 Fund IV, L.P., Lubert-Adler Real Estate
                                                 Parallel Fund IV, L.P., and Lubert-Adler
                                                 Capital Real Estate Fund IV, L.P.

                                                 200 South Biscayne Boulevard, Suite 1000
                                                 Miami, Florida  33131
                                                 (305) 755-9500
                                                 Fax: (305) 714-4340
                                                 and
                                                 2650 North Military Trail, Ste. 240
                                                 Boca Raton, FL  33431
                                                 (561) 241-9500
                                                 Fax:  (561) 998-0028

                                                 By: */s/ Paul Steven Singerman*
                                                      Paul Steven Singerman
                                                      Fla. Bar No. 378860
                                                      singerman@bergersingerman.com
                                                      Paul Avron
                                                      Fla. Bar No. 0050814
                                                      pavron@bergersingerman.com

                                                 - AND -

                                                 KLEHR HARRISON HARVEY
                                                 BRANZBURG LLP
                                                 William A. Harvey
                                                 Rona J. Rosen
                                                 1835 Market Street
                                                 Philadelphia, PA  191103
                                                 (215) 568-6060
                                                 Fax: (215) 568-6603

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Regular U.S. Mail, postage prepaid, and via Electronic Mail, upon Eugene E. Stearns, Esq., Harold D. Moorefield, Jr., Esq., Matthew W. Buttrick, Esq. and Andrew E. Stearns, Esq., Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A., Attorneys for the Trustee, Museum Tower, Suite 2200, 150 West Flagler Street, Suite 2200, Miami, FL 33130 and William A. Harvey, Esq. and Rona J. Rosen, Esq., Klehr Harrison Harvey Branzburg LLP, Attorneys for the Lubert-Adler Defendants, 1835 Market Street, Suite 1400, Philadelphia, PA 19103 on this $\underline{6^{th}}$ day of July, 2010.

By: <u>*/s/ Paul Steven Singerman*</u>
Paul Steven Singerman

VERIFICATION

I, Stuart Margulies, a Vice President of Lubert-Adler Group IV, LLC, the general partner of Lubert-Adler Group IV L.P., the general partner of Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. and of Lubert-Adler Group III, LLC, the general partner of Lubert-Adler Group III L.P., the general partner of Lubert-Adler Real Estate Fund III, L.P., Lubert-Adler Real Estate Parallel Fund III, L.P., and Lubert-Adler Capital Real Estate Fund III, L.P., declare under penalty of perjury that I have read the foregoing Lubert-Adler Defendants' Responses To Plaintiff's First Set Of Interrogatories ("Responses"), and that the information contained in the Responses is true and correct to the best of my knowledge, information and belief. I also state that I am authorized to sign this verification on behalf of the Lubert-Adler Defendants as defined in the Responses.

Stuart Margulies
Dated: July 5, 2010

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division
www.flsb.uscourts.gov

| | |
|---|---|
| In re:<br>GINN-LA ST. LUCIE LTD., LLLP, *et al.*,<br><br>Debtors. | **CASE NO. 08-29769-PGH**<br>All Cases Jointly Administered<br><br>Chapter 7 |
| In re:<br>GINN-LA QUAIL WEST LTD., LLLP, *et al.*,<br><br>Debtors. | (4 Cases Substantively Consolidated Under<br>Lead Case No. 08-29769-PGH)<br><br>(3 Cases Substantively Consolidated Under<br>Lead Case No. 08-29774-PGH) |
| DREW M. DILLWORTH, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>EDWARD R. GINN III, et al,<br><br>Defendants. | **ADV. PRO. NO. 10-02976-PGH** |

## THE LUBERT-ADLER DEFENDANTS' SUPPLEMENTAL RESPONSE TO INTERROGATORIES #8 and #9 OF PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed. R. Civ. P. 33, made applicable by Fed. R. Bankr. P. 7033, Defendants Lubert-Adler Management Co., L.P., Lubert-Adler Real Estate Fund III, L.P., Lubert-Adler Real Estate Parallel Fund III, L.P., Lubert-Adler Capital Real Estate Fund III, L.P., Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. (collectively, the "Lubert-Adler Defendants") hereby supplement their prior responses to Interrogatories #8 and #9 of Plaintiff's First Set of Interrogatories.

PHIL1 1182304-1

## GENERAL OBJECTIONS

The Lubert-Adler Defendants incorporate herein by reference as though fully set forth at length the General Objections set forth in their Responses to Plaintiff's First Set of Interrogatories.

## OBJECTIONS TO DEFINITIONS AND INSTRUCTIONS

The Lubert-Adler Defendants incorporate herein by reference as though fully set forth at length the Objections To Definitions and Instructions set forth in their Responses to Plaintiff's First Set of Interrogatories.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY #8

Subject to and without waiving the General Objections, Objections to Definitions and Instructions, and other objections contained in their prior response to Interrogatory #8, the Lubert-Adler Defendants hereby provide the following supplemental response:

By way of further response, the value received by the Tesoro Debtors in connection with the loan transaction were the benefits of a long term loan package consisting of term loans and a line of credit with a risk mitigation vehicle through cross-collateralization and a diversified asset base from the other Projects. Proceeds of the term loans were used to fund the refinancing of project level debt of the Tesoro Project as well as the other four Projects and to fund the other items set forth at length in the Response to Interrogatory 7. Proceeds of the line of credit were used to fund the ongoing operating expenses and development costs of the Tesoro Debtors as well as those of the other four Projects. By way of further response, the Lubert-Adler Defendants object to this Interrogatory to the extent that it requests opinions and conclusions concerning, among other things, valuation of consideration, which issues will be properly addressed by experts for the Lubert-Adler Defendants in this proceeding.

## SUPPLEMENTAL RESPONSE TO INTERROGATORY #9

Subject to and without waiving the General Objections, Objections to Definitions and Instructions, and other objections contained in their prior response to Interrogatory #9, the Lubert-Adler Defendants hereby provide the following supplemental response:

By way of further response, the value received by the Quail West Debtors in connection with the loan transaction were the benefits of a long term loan package consisting of term loans and a line of credit with a risk mitigation vehicle through cross-collateralization and a diversified asset base from the other Projects. Proceeds of the term loans were used to fund the refinancing

2

of project level debt of the Quail West Project as well as the other four Projects and to fund the other items set forth at length in the Response to Interrogatory 7. Proceeds of the line of credit were used to fund the ongoing operating expenses and development costs of the Quail West Debtors as well as those of the other four Projects. By way of further response, the Lubert-Adler Defendants object to this Interrogatory to the extent that it requests opinions and conclusions concerning, among other things, valuation of consideration, which issues will be properly addressed by experts for the Lubert-Adler Defendants in this proceeding.

Dated: August 9, 2010

Respectfully submitted,

BERGER SINGERMAN, P.A.
Counsel to Lubert-Adler Management Co.,
L.P., Lubert-Adler Real Estate Fund III,
L.P., Lubert-Adler Real Estate Parallel Fund
III, L.P., Lubert-Adler Capital Real Estate
Fund III, L.P., Lubert-Adler Real Estate
Fund IV, L.P., Lubert-Adler Real Estate
Parallel Fund IV, L.P., and Lubert-Adler
Capital Real Estate Fund IV, L.P.

200 South Biscayne Boulevard
Suite 1000
Miami, Florida 33131
(305) 755-9500
Fax: (305) 714-4340

By: s/ Paul Steven Singerman
Paul Steven Singerman
Fla. Bar No. 378860
singerman@bergersingerman.com

- AND -

KLEHR HARRISON HARVEY
BRANZBURG LLP

William A. Harvey
Rona J. Rosen
1835 Market Street
Philadelphia, PA 191103
(215) 568-6060
Fax: (215) 568-6603

PHIL1 1182304-1

3

## VERIFICATION

I, Stuart Margulies, a Vice President of Lubert-Adler Group IV, LLC, the general partner of Lubert-Adler Group IV L.P., the general partner of Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. and of Lubert-Adler Group III, LLC, the general partner of Lubert-Adler Group III L.P., the general partner of Lubert-Adler Real Estate Fund III, L.P., Lubert-Adler Real Estate Parallel Fund III, L.P., and Lubert-Adler Capital Real Estate Fund III, L.P., declare under penalty of perjury that I have read the foregoing Lubert-Adler Defendants' Supplemental Responses To Interrogatories #8 and #9 of Plaintiff's First Set Of Interrogatories (the Supplemental Response"), and that the information contained in the Supplemental Response is true and correct to the best of my knowledge, information and belief. I also state that I am authorized to sign this verification on behalf of the Lubert-Adler Defendants as defined in the Supplemental Responses.

_____
Stuart Margulies
Dated: August 6, 2010

4

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was served to all parties on the attached service list via U.S. Mail this 9th day of August, 2010.

BERGER SINGERMAN, P.A.
*Counsel to Lubert-Adler Management Co.,*
*L.P., Lubert-Adler Real Estate Fund III,*
*L.P., Lubert-Adler Real Estate Parallel*
*Fund III, L.P., Lubert-Adler Capital Real*
*Estate Fund III, L.P., Lubert-Adler Real*
*Estate Fund IV, L.P., Lubert-Adler Real*
*Estate Parallel Fund IV, L.P., and Lubert-*
*Adler Capital Real Estate Fund IV, L.P.*

200 South Biscayne Boulevard
Suite 1000
Miami, Florida 33131
(305) 755-9500
Fax: (305) 714-4340

By: *s/ Paul Steven Singerman*
Paul Steven Singerman
Fla. Bar No. 378860
singerman@bergersingerman.com

- AND -

KLEHR HARRISON HARVEY
BRANZBURG LLP

William A. Harvey
Rona J. Rosen
1835 Market Street
Philadelphia, PA 191103
(215) 568-6060
Fax: (215) 568-6603

## SERVICE LIST
Case No. 10-02976
Dillworth v. Ginn et al

Eugene E. Stearns
Harold D. Moorefield, Jr.
Matthew W. Buttrick
Andrew E. Stearns
STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street, Suite 2200
Miami, FL 33130
*Counsel to Trustee Dillworth*

Lynn F. Chandler
SMITH MOORE LEATHERWOOD LLP
525 North Tryon Street
Suite 1400
Charlotte, North Carolina 28202
*Counsel to the Ginn Entities*

Scott L. Baena
Jay M. Sakalo
BILZEN SUMBERG BAENA PRICE&
AXELORD, LLP
200 South Biscayne Boulevard, Suite 2500
Miami, Florida 33131-5340
*Counsel to The President And Fellows
Of Harvard College*

D. Ross Martin
Peter L. Welsh
Keith H. Wofford
Alison McLaughlin
ROPES & GRAY
One International Place
Boston, MA 02110-2624
*Counsel to The President And Fellows
Of Harvard College*

William A. Harvey
Rona J. Rosen, Esq.
KLEHR HARRISON HARVEY
BRANZBURG LLP
1835 Market Street, Suite 1400
Philadelphia, PA 19103
*Counsel to the Lubert-Adler Entities*

Charles W. Throckmorton
KOZYAK TROPIN & THROCKMORTON,
P.A.
2525 Ponce de Leon, 9th Floor
Miami, Florida 33134
*Counsel to the Ginn Entities*

Stephen B. Busey
James A. Bolling
SMITH HULSEY & BUSEY
225 Water Street, Suite 1800
Jacksonville, FL 32202
*Counsel to The Ohio Police And
Fire Pension Fund*

# EXHIBIT 8

## MORRIS, MANNING & MARTIN, LLP
## MEMORANDUM

**MORRIS, MANNING & MARTIN, LLP**
ATTORNEYS AT LAW

# MEMORANDUM

**TO:**      Greg Green, C.P.A.
            Tom Buttny, C.P.A.

**FROM:**    Morris, Manning & Martin, LLP

**RE:**      Credit Suisse Refinancing: Tax Aspects of Transaction Structure

**DATE:**    August 28, 2006; Revised March 2, 2007

---

This memorandum summarizes the federal income tax aspects of the transaction structure for the Credit Suisse refinancing.  A diagram of the transaction structure is attached.

## Technical Termination of Project Partnerships: I.R.C. § 708.

With respect to the U.S. side of the transaction, Lubert-Adler Funds III and IV and ERG Enterprises, LP ("ERG Enterprises") contributed their respective interests in four project partnerships, i.e., Ginn-LA Quail West Ltd., LLLP, Ginn-LA Laurel Creek Ltd., LLLP, Ginn-LA Bulow Ltd., LLP, and Ginn-LA St. Lucie Ltd., LLLP,  for an interest in Ginn-LA CS Holding Company, LLC ("CS Holding Co.").  Generally, the contribution of an interest in a partnership to a second partnership in exchange for an interest in the second partnership constitutes an exchange for purposes of I.R.C. § 708, <u>see, e.g.</u>, Private Letter Ruling 8229034, so that if 50 percent or more of the interests in the first partnership are contributed, the first partnership terminates.  I.R.C. § 708(b)(1)(B).  However, the following exception to this general rule applies when two or more partnerships combine in a merger or consolidation:

> [T]he resulting partnership shall be considered a continuation of the merging or consolidating partnership the members of which own an interest of more than 50 percent in the capital and profits of the resulting partnership.  If the resulting partnership can, under the preceding sentence, be considered a continuation of more than one of the merging or consolidating partnerships, it shall . . . be considered the continuation solely of that partnership which is credited with the contribution of assets having the greatest fair market value (net of liabilities) to the resulting partnership.

Treas. Reg. § 1.708-1(c)(1).

1528360 v04

Atlanta
404.233.7000

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
Fax: 404.365.9532

With offices in

Washington, D.C.
Charlotte, North Carolina
Princeton, New Jersey
Raleigh-Durham, North Carolina

MMMTQW01_036133

Memorandum
March 8, 2007
Page 2

For purposes of this rule, the IRS has broadly interpreted the terms "merger" and "consolidation" to include "any form of transaction whereby the businesses of two or more partnerships are combined in a single partnership, regardless of the form of the transaction and regardless of whether it happens to be called a 'merger' or 'consolidation' under state law." McKee, Nelson, and Whitmire, <u>Federal Taxation of Partnerships and Partners</u>, ¶ 12.06[1]. In particular, the IRS has held that the contribution of all the interests in several partnerships to a new partnership constitutes a merger. Private Letter Ruling 7210270270A; <u>see also</u>, Private Letter Ruling 7107280880A.

As a result, we believe that the contribution of the four project partnerships to CS Holding Co. constitutes a merger or consolidation, so Treas. Reg. § 1.708-1(c)(1) will apply. Pursuant to the regulation, because the partners in each of the four project partnerships owned 50 percent or more of the capital and profits interest of CS Holding Co. after the contributions, CS Holding Co. will be deemed to be a continuation of the project partnership with the greatest net asset value at the time of the contributions. We cannot determine with absolute certainty from the information in our files which project partnership will be deemed to continue under these rules. It appears Ginn-LA Laurel Creek Ltd., LLLP will be deemed to continue, but we would ask you to confirm this conclusion based upon the appraisals that were done for each of the project partnerships prior to the Credit Suisse refinancing.

Further, the employer identification number of CS Holding Co. (and consequently its taxpayer identification number) will be the employer identification number of the continuing partnership. Treas. Reg. § 1.708-1(c)(2). Additionally, on the date of the contributions, the three project partnerships that are not deemed to continue under the rule discussed above terminated and became disregarded entities. <u>See</u> I.R.C. § 708(b)(1)(A); Rev. Rul. 99-6; Mckee, <u>supra</u>, ¶ 3.08[6][a]. These terminations should, however, have no significant adverse tax consequences because the project partnerships generally do not own depreciable property. Nevertheless, as a result of the terminations, two short-year tax returns probably should be filed for each of the terminating partnerships: one for 1-1-06 and another for the period 1-2-06 through 12-31-06.

## Taxation of Entities on the Principal Co-Borrower Side of the Transaction

After the transaction, the only entity below the Lubert-Adler Funds III and IV and ERG Enterprises on the Principal Co-Borrower side (see the attached diagram) that must file a tax return is CS Holding Co. For tax purposes, Ginn-LA CS Borrower, LLC ("CS Borrower") and the four project partnerships are now disregarded entities. Nonetheless, the operating agreement of CS Holding Co. requires that for purposes of allocating profits and losses to the investors and for purposes of determining distributions, each of the project partnerships must continue to maintain separate financial records.

## Potential Disguised Sale: I.R.C. § 707(a)(2)(B); Treas. Reg. §§ 1.707-5(b); -5(c).

1528360 v04

MMMTQW01_036134

Memorandum
March 8, 2007
Page 3

     The Credit Suisse refinancing proceeds were used to repay existing debt and to make distributions to Lubert-Adler Funds III and IV and ERG Enterprises.  The 100% owned and disregarded subsidiary of CS Holding Co., CS Borrower, distributed a portion of the loan proceeds to CS Holding Co., which in turn distributed the proceeds to the Lubert-Adler Funds and ERG Enterprises.  To the extent these distributions can be traced to the loan proceeds and do not exceed each partner's allocable share of the loan, the distributions should not trigger the disguised sale rules, and CS Holding Co. should not have to separately disclose the distributions to the IRS.  See Treas. Reg. § 1.707-5(b)(1); Private Letter Ruling 9350035.  To determine whether the distributions can be traced to the loan proceeds, apply the tracing rules contained in Treas. Reg. § 1.163-8T.  Additionally, to determine each partner's allocable share of the loan, apply Treas. Reg. § 1.707-5(b)(2) as illustrated by example 10 of Treas. Reg. § 1.707-5(f).

     On the other hand, to the extent the distributions cannot be traced to the loan proceeds or to the extent they exceed each partner's allocable share of the loan, the distributions trigger the disguised sale rules.  Because the distributions occurred within two years of the contribution of the project partnerships to CS Holding Co., the distributions create a rebuttable presumption that the contributions of the partnerships constituted a disguised sale.  This means that CS Holding Co. must separately disclose the distributions.

     Despite the presumption, the following facts provide strong evidence to support the conclusion that no disguised sale occurred.  First, taking into account the direct and indirect ownership interests of the Lubert-Adler Funds and ERG Enterprises, the transaction did not alter the partners' proportionate ownership in the assets of the project partnerships.  Second, if CS Holding Co. and CS Borrower had not been created, Credit Suisse had extended the loan directly to each of the project partnerships, and the project partnerships had distributed the loan proceeds directly to the Lubert-Adler Funds and ERG Enterprises, then no disguised sale would have occurred.  The fact that the loan proceeds were channeled through CS Holding Co. and CS Borrower should not change this result.

**Use of Conduit Lender to Avoid Unrelated Business Taxable Income and Unrelated Debt Financed Income: I.R.C. §§ 512; 514.**

     Direct ownership of the Grand Bahamas assets by Lubert-Adler Fund IV ("Fund IV") would have triggered unrelated business taxable income (UBTI) for any tax-exempt organizations invested in Fund IV.  Similarly, if Credit Suisse had loaned money directly to Fund IV or to the project partnership, Ginn-LA West End Ltd., LLLP, and Fund IV or the project partnership had contributed the loan proceeds to a corporation that owned the Grand Bahamas assets, dividends paid by the corporation would have triggered unrelated debt financed income (UDFI) for the tax-exempt investors.  To avoid these problems, the loan proceeds were channeled through Ginn-LA Conduit Lender, Inc. to Ginn-LA West End, Limited, the Bahamian corporation.  This arrangement prevents tax-exempt investors from realizing UBTI or UDFI.

1528360 v04

Memorandum
March 8, 2007
Page 4

### Spinout of Tesoro and Quail West Assets: I.R.C. §§ 721; 722; 723; 731; 732; 733.

Prior to the closing of the Credit Suisse refinancing, Ginn-LA St. Lucie Ltd., LLLP, the Tesoro project partnership, spun out the Ballyhoo property. Likewise, prior to closing, Ginn-LA St. Lucie, Ltd., LLLP and Ginn-LA Quail West Ltd., LLLP spun out certain purchase money notes and mortgages attributable to lot sales. St. Lucie and Quail West distributed these assets to the Lubert-Adler Funds and ERG Enterprises, both of which then contributed the assets to newly-formed partnerships.

Generally speaking, the distribution of unencumbered property other than cash does not trigger gain for the distributing partnership or the distributee partner. Also, the distributee partner takes a transferred basis in the distributed property equal to the distributing partnership's basis, except that the partner's basis in the property is limited to the partner's outside basis in the distributing partnership. Further, the distribution reduces the distributee partner's outside basis in the distributing partnership by the partnership's basis in the property distributed.

Additionally, the contribution of property in exchange for a partnership interest does not trigger gain for the contributing partner or the partnership. The partnership takes a transferred basis in the contributed property equal to the contributing partner's basis. Finally, the contributing partner takes an exchanged basis in the partnership interest received equal to its basis in the contributed property. Therefore, under an analysis, the newly-formed partnerships generally should have the same basis in the Ballyhoo property and in the purchase money notes and mortgages as St. Lucie and Quail West had in such assets prior to the spin out.

In applying these general rules, an important issue is the initial basis of the spun-out notes. We believe based on the following analysis that in the hands of St. Lucie and Quail West, the notes had a basis equal to face value. If, as in this case, a seller (i.e., St. Lucie and Quail West) receives a note in exchange for property and the installment method does not apply, then, assuming the note bears adequate interest, the seller's amount realized on the sale includes the issue price of the note as determined under I.R.C. §§ 1273 and 1274. Treas. Reg. §§ 1.1001-1(g)(1); -1(g)(3). If the note bears adequate interest, its issue price, and therefore the seller's amount realized, is the note's face value. See I.R.C. §§ 1273(b)(4); 1274(a)(1). Since the seller's amount realized includes the face value of the note, then the seller's basis in the note also should equal its face value. See Philadelphia Park Amusement Co. v. United States, 126 F. Supp. 184, 188-89 (Ct. Cl. 1954) (holding that the basis of property received in a taxable transaction must equal the amount realized attributable to such property so that the basis of the property received equals the basis of the property given up plus gain recognized); Rev. Rul. 55-757. Additionally, we believe that deferral of the gain realized by the seller on the sale pursuant to the percentage-of-completion method does not change this result. Even though gain on the sale may be deferred, the seller must have basis in the note equal to its face value. Otherwise, the seller would be taxed twice on the cash proceeds from the sale: once under I.R.C. § 1001 as modified by the percentage-of-

1528360 v04

MMMTQW01_036136

Memorandum
March 8, 2007
Page 5

completion method and once under I.R.C. §§ 1001 and 1271(a) when the buyer pays off the
note.

### Deductibility of Fees Paid in Connection with the Refinancing

Generally, borrowing expenses, including legal and accounting fees incurred in
connection with obtaining a loan, are capital expenditures.  As such, they cannot be deducted
currently but instead must be amortized over the life of the loan.  See, e.g., Austin Co. v.
Comm'r, 71 T.C. 955, 964-65 (1979).  We have not conducted extensive research to
determine if any arguments exist to support the deduction of these fees.  If, however, you
would like us to do so, please let us know.

### Deemed Repatriation of Dividends: I.R.C. §§ 951; 956.

A pledge by a U.S. entity of 100% of the stock of a related controlled foreign
corporation is treated as an investment in U.S. property that triggers a constructive
repatriation of dividends by the foreign corporation to its shareholders.  Ginn-LA West End,
Limited (a Bahamian corporation) is a controlled foreign corporation.  Its ultimate parent,
Ginn-LA West End Ltd., LLLP guaranteed the loan to Conduit Lender and pledged 100% of
the stock of Ginn-LA West End, Limited as security for the guaranty.  As a result, to the
extent of the debt guaranteed, the profits of Ginn-LA West End, Limited are deemed
repatriated through Ginn-LA International Business Company, Ltd. (a Bermuda IBC) to
Ginn-LA West End Ltd., LLLP.  See I.R.C. § 956(d) and Treas. Reg. § 1.956-2(c)(2).  This
result is similar to what would have occurred if partnerships had been used in the transaction
instead of the Bermuda and Bahamian corporations.

### Distribution of Refinancing Proceeds by Ginn-LA West End, Limited

[It is our understanding that KPMG has agreed to analyze this issue.]

1528360 v04