

**ORDERED in the Southern District of Florida on December 10, 2010.**

Paul G. Hyman, Chief Judge
United States Bankruptcy Court

_____

```
           UNITED STATES BANKRUPTCY COURT
            SOUTHERN DISTRICT OF FLORIDA
               West Palm Beach Division
```

| | |
|---|---|
| In re:<br>GINN-LA ST. LUCIE LTD.,<br>LLLP, *et al.*,<br>    Debtors.<br>_____/ | Case No.: 08-29769-BKC-PGH<br>All Cases Jointly Administered<br><br>Chapter 7 |
| In re:<br>GINN-LA QUAIL WEST LTD.,<br>LLLP, *et al.*,<br>    Debtors.<br>_____/ | |
| Drew M. Dillworth, Trustee,<br>    Plaintiff,<br><br>       vs.<br><br>Edward R. Ginn III, *et al.*,<br>    Defendants.<br>_____/ | Adv. Proc. No.: 10-2976-PGH |

**ORDER GRANTING WITHOUT PREJUDICE LUBERT-ADLER'S AND THE INVESTOR DEFENDANTS' MOTIONS TO DISMISS TRUSTEE'S SECOND AMENDED COMPLAINT AND GRANTING TRUSTEE 20 DAYS LEAVE TO AMEND COMPLAINT**

**THIS MATTER** came before the Court upon Lubert-Adler

Defendants'[1] *Motion, Including Memorandum Of Law, Pursuant to Rule 7012(b)(6) of the Federal Rules Of Bankruptcy Procedure to Dismiss the Trustee's Second Amended Complaint for the Avoidance and Recovery of Fraudulent Transfers* ("Lubert-Adler Motion to Dismiss") (D.E. #76), and the Investor Defendants'[2] *Motion to Dismiss* ("Investor Defendants' Motion to Dismiss") (D.E. #95)(collectively with the Lubert-Adler Motion to Dismiss, the "Motions to Dismiss"). Edward R. Ginn III, Edward R. Ginn III Revocable Trust Dated Sept. 14, 2002, ERG Management, LLC, and ERG Enterprises, L.P. (collectively, the "Ginn Parties") joined in Lubert-Adler's Motion to Dismiss (D.E. #78). Ira M. Lubert ("Mr. Lubert") and Dean S. Adler ("Mr. Adler") joined in the Investor Defendants' Motion to Dismiss (D.E. #103).[3]

## BACKGROUND

Drew M. Dillworth's (the "Trustee") *Second Amended Complaint For Avoidance and Recovery of Fraudulent Transfers* (the

---

[1] The Lubert-Adler Motion to Dismiss identifies the "Lubert-Adler Defendants" referenced herein as follows: 1) Lubert-Adler Management Co., L.P.; 2) Lubert-Adler Real Estate Fund III, L.P.; 3) Lubert-Adler Real Estate Parallel Fund III, L.P.;4) Lubert- Adler Capital Real Estate Fund III; 5) Lubert-Adler Real Estate Fund IV, L.P.; 6) Lubert-Adler Real Estate Parallel Fund IV, L.P.; 7)Lubert-Adler Capital Real Estate Fund IV, L.P.; 8) Lubert-Adler Group III, L.P.; and 9) Lubert- Adler Group IV, L.P.

[2] The Investor Defendants Motion to Dismiss identifies the "Investor Defendants" referenced herein as the 356 limited partners in the Lubert-Adler Real Estate Fund III, L.P., Lubert-Adler Real Estate Parallel Fund III, L.P., Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P., and Lubert-Adler Capital Real Estate Fund IV, L.P. all of whom are listed in Smith Hulsey & Busey's Notice of Appearance filed on October 15, 2010 (D.E. #93).

[3] The moving parties shall be collectively referred to as the "Movants".

"Complaint") (D.E. #39) asserts claims for the avoidance and recovery of alleged fraudulent transfers against more than 300 defendants.[4] A $ 675,000,000.00 loan transaction consummated on June 8, 2006 is central to the Complaint. The loans, administered by Credit Suisse, Cayman Islands Branch, were guaranteed by the Debtors. The Debtors' guarantees were secured by liens on substantially all of the Debtors' assets, however the Debtors did not receive any of the Credit Suisse loan proceeds (the "Credit Suisse Transaction").

The Complaint seeks to avoid, pursuant to 11 U.S.C. § 544(b) and applicable state law, the transfer of the Debtors' interest in "$148 million of Credit Suisse loan proceeds . . . as well as the guaranties and liens issued in connection with the loan transaction", and to recover, pursuant to § 550(a), "the value of the property interests transferred from the entities to whom and for whose benefit said property interests were transferred". The Complaint's § 544 avoidance counts assert claims under Florida

---

[4]The Complaint divides the defendants into the following groups: 1) the "Ginn Defendants" which includes Edward R. Ginn III, the Edward R. Ginn III Revocable Trust dated September 14, 2002, ERG Management, LLC, and ERG Enterprises, L.P.; 2) the "Lubert-Adler Defendants" which includes Ira M. Lubert, Dean S. Adler, Lubert-Adler Management Co., Inc.,Lubert-Adler Group III, L.P., the Lubert-Adler Fund III Entities, Lubert-Adler Group IV, L.P., and the Lubert-Adler Fund IV Entities (as further defined in the Complaint); 3) the "Lubert-Adler Fund III Investors" (as further defined in the Complaint); and 4) the "Lubert-Adler Fund IV Investors" (as further defined in the Complaint). The Court notes that while the Complaint includes Mr. Lubert and Mr. Adler in the "Lubert-Adler Defendants" group, Mr. Lubert and Mr. Adler are not moving parties in the Lubert-Adler Motion to Dismiss. Mr. Lubert and Mr. Adler joined in the Investor Defendants' Motion to Dismiss.

law.[5] The Complaint alleges that each of the individuals and entities named as Defendants was either an initial transferee or entity for whose benefit a transfer was made within the meaning of 11 U.S.C. § 550(a)(1); or, alternatively, an immediate or mediate transferee within the meaning of 11 U.S.C. § 550(a)(2).

The Motions to Dismiss argue that the Complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, the Motions to Dismiss maintain that the Debtors were merely guarantors rather than borrowers in the Credit Suisse Transaction, and that no property of the Debtors was transferred. Based upon these assertions the Motions to Dismiss conclude that the Trustee's Complaint is legally insufficient to state a fraudulent transfer claim.  The Lubert-Adler Motion to Dismiss also argues that the law of the case doctrine bars any challenge to the validity of the Debtor liens which the Trustee ratified and confirmed in connection with this Court's approval of the Debtors' post-petition financing and the sale of the Debtors' assets free and clear of liens.

---

[5] The Complaint asserted claims under both New York and Florida law. The Motions to Dismiss argue that Counts I, II, VI, and VII ("New York Counts") should be dismissed because the Complaint improperly asserts parallel claims under Florida and New York law. The parties have since stipulated that Florida law is the proper law to apply under § 544(b). Accordingly, the Trustee shall not include the New York Counts in any amended complaint subsequently filed.

-4-

**CONCLUSIONS OF LAW**

*I.    The Motion to Dismiss Standard*

"The purpose of a motion to dismiss is to test the sufficiency of a complaint, not to resolve disputed facts or decide the merits of the case." *Mervyn's LLC, v. Lubert-Adler Group IV, LLC (In re Meryn's Holdings, LLC)*, 426 B.R. 488, 494 (Bankr. D. Del. 2010) (citations omitted). "In ruling on a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff, and all well-pleaded facts alleged by the plaintiff are accepted as true." *Mann v. Kendall Props. & Invs., LLC (In re AS Mgmt. Servs., Inc.)*, 2007 WL 2377082, at *2 (Bankr. S.D. Fla. Aug. 16, 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*citing Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007)).

In determining a motion to dismiss, if the court considers materials outside of or not attached to the complaint, the "court generally must convert a motion to dismiss into a Rule 56 motion for summary judgment." [6] *Daewoo Motor America, Inc. v. General*

---

[6] As explained by the Second Circuit, the rule addresses the problem that arises when a court reviews statements extraneous to a complaint, that being the lack of notice that the extraneous material may be so considered. *Cortec Ind., Inc., v. Sum Holdings, L.P.,* 949 F.2d 42, 47-48 (2d Cir. 1991). "[I]t is for that reason - requiring notice so that the party against whom the motion to dismiss is made may respond - that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a rule 12(b)(6) motion

*Motors Corp.*, 459 F.3d 1249, 1266 n.11 (11th Cir. 2006) (discussing outside pleadings under the prior version of Fed. R. Civ. P 12(b), the substance of which is now contained in Rule 12(d) "Result of Presenting Matters Outside the Pleadings"). Notwithstanding, the Eleventh Circuit has determined that courts may consider documents "attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (*citing Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)). "In this context, 'undisputed' means that the authenticity of the document is not challenged." *Id*.

The Eleventh Circuit has also determined that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, a court may consider the document if it meets the centrality requirement imposed in *Horsley. Id.* (*citing Horsely, Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999)). The Complaint in this matter expressly references the Credit Suisse Transactions's First Lien Credit Agreement and Second Lien Credit Agreement (collectively, the "Credit Agreements"). The Credit Agreements were attached to the Lubert-Adler Motion to Dismiss. In addition, the First Lien Subsidiary Guarantee was attached to the Lubert-Adler Motion to

---

into one under Rule 56 is largely dissipated." *Id*. at 48.

Dismiss, and the Second Lien Subsidiary Guarantee[7] was attached to the Trustee's Response to the Motions to Dismiss ("Response") (D.E. #140). Excerpts from the Master Restructuring Agreement were also attached to the Trustee's Response. No party has disputed the authenticity of these loan documents, and the Credit Suisse Transaction is central to the Complaint. Therefore, the Court may consider the above-referenced Credit Suisse Transaction loan documents without turning the Motions to Dismiss into motions for summary judgment.[8] In determining this matter, the Court also takes judicial notice of its own orders in the Debtors' main bankruptcy cases.

## II.  *Sufficiency of the Complaint*

The Complaint seeks to avoid the transfer of the Debtors' interest in "$148 million of Credit Suisse loan proceeds . . . as well as the guaranties and liens issued in connection with the loan transaction" pursuant to § 544(b) and applicable Florida fraudulent transfer law. Noting that the Trustee can avoid a fraudulent transfer only if the transfer was of property of the Debtors, the Movants argue that the transfer which the Trustee seeks to avoid - $148,000,000 of Credit Suisse loan proceeds - was never property of the Debtors. The Movants assert that the Debtors were not borrowers

---

[7] The First Lien Subsidiary Guarantee and the Second Lien Subsidiary Guarantee shall be collectively referred to as the "Subsidiary Guarantees".

[8] In their papers, the Trustee, the Lubert-Adler Defendants, and the Investor Defendants agree that in considering the legal sufficiency of the Complaint, the Court may look beyond the four corners of the pleading and consider matters of public record and other documents central to the claims asserted such as the Credit Suisse Transaction loan documents.

in the Credit Suisse Transaction despite the Complaint's characterization of the Debtors (and other project entities) "serving as 'Full Recourse Borrowers' (*i.e.,* co-borrowers)". The Movants note that the Debtors are neither identified as "Borrowers" in the Credit Agreements, nor are they signatories to the Credit Agreements. The Movants assert that the Debtors never had control of the Credit Suisse loan proceeds and were instead merely "Subsidiary Guarantors" each having signed Subsidiary Guarantees in favor of Credit Suisse as Administrative and Collateral Agent. Based upon these predicates, the Movants urge that the Complaint be dismissed because the Trustee cannot avoid direct transfers of non-debtor property to non-debtor borrowers.

Substantially similar legal arguments, as those advanced by the Movants, were rejected by Judge Olson in *In re TOUSA, Inc.,* 422 B.R. 783, 873 (Bankr. S.D. Fla. 2009). In *TOUSA*, as here, the defendants relied on *Nordberg v. Sanchez (In re Chase & Sanborn Corp.)*, 813 F.2d 1177 (11th Cir.1987), to argue that the conveying subsidiary debtors had no property interest in loan proceeds because they did not "control" the property. *Id.* The *TOUSA* court, having found *Sanchez* to be inapposite on the facts (as they are here), rejected the *TOUSA* defendants attempt to infer from the narrow holding of *Sanchez,* a broad principle that "control" is an essential element of any property interest. *Id.* at 873. Citing several examples of interests in property that do not encompass control of the disposition of property, Judge Olson noted that the

-8-

broad "control" test urged by the defendants would "negate the paradigmatic example of a fraudulent transfer, in which the owner of an insolvent corporation transfers corporate funds to a personal account for his personal use." *Id.* at 874. Judge Olson also found the "control" requirement to be at variance with the statutory definition of "transfer." *Id.* Florida fraudulent transfer law defines the term "transfer" to mean:

> every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

Fla. Stat. § 726.102(12).

Thus, whether a debtor acts directly or indirectly, voluntarily or involuntarily, a debtor may have an interest in property "even if the debtor has no power to prevent some other party from transferring the property." *TOUSA*, 422 B.R. at 874. Furthermore, the strict "control" test urged by the Movants in this case belies the Eleventh Circuit's characterization of the test as a "very flexible, pragmatic one." *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.*), 848 F.2d 1196, 1199 (11th Cir. 1988).

The Movants attempt to distinguish *TOUSA* on the facts because the *TOUSA* subsidiary debtors were named borrowers under the pertinent loan documents. Notwithstanding, the Trustee argues that the Court should deny the instant Motions to Dismiss because the Complaint alleges the Debtors were "serving as" full recourse co-borrowers in the Credit Suisse Transaction, and each co-borrower

-9-

has a property interest in co-borrowed funds. *See TOUSA,* 422 B.R. at 872-873; *Bash v. Sun Trust Banks, Inc. (In re Ohio Bus. Machines, Inc.)*, 356 B.R. 786 (table), 2007 WL 177941 (6th Cir. BAP 2007). However, the Complaint fails to allege how the Debtors were "serving as" full recourse co-borrowers in the Credit Suisse Transaction rather than as guarantors. The Movants correctly note that the Debtors are not identified as Borrowers under the Credit Agreements. Thus, on their face, the Credit Agreements contradict the Complaint's allegation that the Debtors "served as" co-borrowers in the Credit Suisse Transaction. The Trustee's Response attempts to refute the Movants' assertion - that the Debtors are mere guarantors under the operative loan documents[9] - as unabashedly elevating form over substance. The Trustee argued that Credit Suisse would not have made a loan to the "technical" borrowers, one of whom is the shell parent company of the Debtors, without the Debtors having primary liability for repayment of the loans. Thus, the Trustee's Response advances a theory that appears to be consistent with Fla. Stat. §726.102 (12)'s definition of a transfer, in which the Debtors were substantively borrowers - not mere guarantors - with primary liability for repayment of the

---

[9] Both sides acknowledge that the Debtors are identified as "Full Recourse Borrower Parties" in the Master Restructuring Agreement ("MRA") executed on December 19, 2008. Both parties agree that the MRA did not recharacterize the liabilities and position of the parties from the initial loan agreements. Nov, 18, 2010 H'rg. Tr.60:4-7,113:4-9 (D.E. #151). However, this is where the agreement ends. Movants argue that the loan documents show the Debtors were not "Borrower Parties" until December 2008 when the MRA was executed. The Trustee maintains that the MRA gives effect to the reality of the original transaction.

Credit Suisse loan, even if they were not defined as "Borrowers" under the Credit Agreements. However, this theory is not alleged in the Complaint. "When considering a motion to dismiss, '[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *In re Mervyn's*, 426 B.R. at 494 (*citing Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir.1988)).

The Trustee's Response alternatively argues that the Court may collapse the Credit Suisse Transaction to reflect the economic realities of the transaction. Some courts have "collapsed" transactions in order to evaluate an allegedly fraudulent conveyance in context to arrive at the substance of the transaction. *See e.g. Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993) ("[A]n allegedly fraudulent conveyance must be evaluated in context; '[w]here a transfer is only a step in a general plan, the plan 'must be viewed as a whole with all its composite implications.'") (citation omitted); *United States v. Tabor Ct. Realty Corp.*, 803 F.2d 1288, 1302-03 (3d Cir. 1986); Boyer, 587 F.3d at 793; *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 635-36 (2d Cir. 1995); *In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 74 (Bankr. N.D. Ill. 2002) ("Courts will eschew appeals to form which obscure the substance of a transaction."); *In re Mervyn's*, 426 B.R. 488, 497; *Boyer v. Crown Stock Dist., Inc.*, 587 F.3d 787, 793 (7th Cir. 2009)("[F]raudulent conveyance doctrine . . . is a flexible principle that looks to substance, rather than form"); *In re Best*

*Prod. Co.*, 157 B.R. 222, 229 (Bankr. S.D.N.Y. 1993) ("In reality, collapsing transactions is little more than an effort on the part of the court to focus not on the formal structure of a transaction, but rather on the knowledge or intent of the parties involved in the transaction."). In most, but not all cases, the concept of collapsing transactions arises in conjunction with fraudulent transfer actions in failed leveraged buyouts. *Best Prod.*, 157 B.R. at 229 (a non-LBO case finding common threads between LBO "collapsing" cases and whether a loan from creditor to subsidiary, and sublease from subsidiary to parent, was truly a lease or a secured loan to the parent corporation). Although the Court is unaware of any Eleventh Circuit case formally acknowledging the propriety of collapsing transactions to determine their economic reality, the Eleventh Circuit has stated that consistent with the equitable concepts underlying bankruptcy law, the court must "look beyond the particular transfers in question to the entire circumstance of the transactions" in determining whether the debtor possessed property recoverable in a fraudulent transfer action. *In re Chase & Sanborn Corp.*, 848 F.2d 1196, 1199 (11th Cir. 1988).

The Trustee argued that the Court should collapse the Credit Suisse Transaction to allow the Trustee to avoid and recover the allegedly fraudulent transfer of the Debtor's interest in the Credit Suisse proceeds, as well as the liens and guarantees issued in connection with the transaction. The Complaint itself alleges that the Credit Suisse Transaction was a complex, multi-tiered,

-12-

syndicated loan transaction in which Credit Suisse loaned $675,000,000 to newly formed shell entities, Ginn-LA CS Borrower, LLC, and Ginn-LA Conduit Lender, Inc., with the Debtors and other Project Entities serving as "Full Recourse Borrowers". Ginn-LA CS Borrower, LLC became the immediate parent of the Debtors. Subsequent to filing the Complaint, the Trustee argued that Credit Suisse would not have lent $675,000,000 to the newly created shell entity borrowers without the Debtors and the other project entities having primary liability for repayment of the loans. However, as previously noted, a complaint may not be amended by a brief in opposition to a motion to dismiss. *Mervyn's*, 426 B.R. at 494. If the Trustee wishes to pursue a theory of fraudulent transfer that requires collapsing the transaction to determine its economic reality, the theory must be pled in the Complaint. Therefore, the Court will dismiss the Complaint with leave to amend.

### *III. Law of the Case*

The law of the case doctrine requires a court to follow what has been decided explicitly, as well as by necessary implication, in an earlier proceeding. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1550 n.3 (11th Cir.1990). "The doctrine's reach is not as expansive as the rule of res judicata: the doctrine of 'law of the case' is limited insofar as it applies only to issues that were decided in the former proceeding but not to questions which might have been decided but were not." *Sabre, Inc., v. Lyn-Lea Travel Corp.*, 2003 WL 21339291 at *6 (N.D. Tex. 2003) (citation omitted).

The Movants' final argument is that the law of the case doctrine bars any challenge to the validity of the liens which the Trustee ratified and confirmed in connection with this Court's approval of the Debtors' post-petition financing and sale of the Debtors' assets free and clear of liens. The Lubert-Adler Motion to Dismiss contains references to this Court's orders on cash collateral, and sale of the Tesoro and Quail West properties free and clear of liens to show, that upon the request of the Trustee, the Court ratified the validity of the First Lien and released any claims respecting the First Lien. The Court notes that the releases and waivers were granted only to Credit Suisse and the First Lien Lenders who provided post-petition financing to the Debtors, no claims were released with respect to any third parties. The Court obviously questions why the Trustee agreed to release Credit Suisse and the First Lien Lenders, but that issue is not before the Court. As the Court understands the Trustee's argument, the validity of Credit Suisse's lien is of no consequence to the Trustee's theory of recovery against the third party defendants. The Trustee stated at the hearing that Credit Suisse gave value by loaning money, it was the Debtors' insiders who allegedly took that money while providing no value to the Debtors. Once again, any subsequent amendment to the Complaint should clearly allege the facts upon which the Trustee bases his argument.

**CONCLUSION**

The Complaint fails to adequately allege the facts and theories advanced by the Trustee at the hearing and in his Response concerning collapsing the transaction, and the Trustee's contention that the Debtors were borrowers rather than mere guarantors. Because a Complaint cannot be amended by a brief in opposition to a motion to dismiss, the Court will grant the Motions to Dismiss without prejudice to the Trustee amending the Complaint within 20 days of entry of this Order.

**ORDER**

The Court, having heard the argument of counsel, reviewed the Complaint, the submissions of the parties, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Lubert-Adler Motion to Dismiss is **GRANTED WITHOUT PREJUDICE.**

2. The Investor Defendants' Motion to Dismiss is **GRANTED WITHOUT PREJUDICE.**

3. The Trustee is granted leave to amend the Second Amended Complaint within 20 days of entry of this Order.

4. Defendants shall file a responsive pleading within 20 days of a Third Amended Complaint filed by the Trustee.

# # #

Copies furnished to:

Mr. Moorefield, Esq.
Mr. Singerman, Esq.
Mr Busey, Esq.

The Trustee is directed to serve a copy of this order on any interested parties who do not receive electronic service.