# EXHIBIT C

## SUBSIDIARY GUARANTY

### (First Lien)

This **GUARANTY** (the "Guaranty") is made and entered into as of June 8, 2006 (the "Closing Date") by each person signing this Guaranty, each having an address as stated below its signature of this Guaranty (each, a "Guarantor"), for the benefit of CREDIT SUISSE, CAYMAN ISLANDS BRANCH, in its capacity as Administrative Agent and Collateral Agent for the Lenders, as more fully described in the First Lien Credit Agreement, as defined below (the "Administrative Agent"). This Guaranty is made with reference to the following facts (with some capitalized terms being defined below):

A. The Lenders, acting by and through Administrative Agent, are making certain loans (the "Loan") in the amount of $525,000,000, to Ginn-LA CS Borrower, LLC, a Delaware limited liability company and Ginn-LA Conduit Lender, Inc., a Delaware corporation (collectively, the "Borrower").

B. The Loan is to be evidenced by a note, to the extent requested by the Lenders, dated as of the Closing Date executed by Borrower (as it may be modified, extended, renewed, or replaced, the "Note"), and is more fully described in the First Lien Credit Agreement dated as of the Closing Date entered into between Administrative Agent (as Administrative Agent and Collateral Agent for the Lenders, as defined in the First Lien Credit Agreement), Credit Suisse Securities (USA) LLC, as paying agent, fronting bank, sole lead arranger and sole bookrunner and Borrower (the "First Lien Credit Agreement").

C. As security for the Loan, Guarantor is executing and delivering to Administrative Agent for the Lenders a First Lien Mortgage or Collateral Assignment of Mortgage and Note with respect to the real property commonly known as Grand Bahama (West End) (the "Mortgage") encumbering the real property commonly known as Quail West, Laurelmor, Tesoro, Tesoro Beach Club and Hammock Beach River Club (the "Real Property Collateral").

D. Guarantor acknowledges that Administrative Agent has examined, among other things, Borrower's creditworthiness and ability to pay and perform the Obligations and has requested, as a condition of making the Loan, that Guarantor guaranty some or all Obligations, as provided for below.

E. Guarantor, a wholly-owned subsidiary of Borrower, will benefit if the Lenders, acting through Administrative Agent, make the Loan; and desires that the Lenders, acting through Administrative Agent, make the Loan to Borrower.

F. The Lenders would not make, and would not be obligated to make, the Loan to Borrower unless Guarantor executed this Guaranty. This Guaranty is therefore delivered to Lenders, acting through Administrative Agent, to induce the Lenders to make the Loan.

NOW, THEREFORE, in consideration of the foregoing recitals, and for $10 and other good, adequate, and valuable consideration, the receipt of which Guarantor acknowledges, Guarantor agrees:

1. Definitions. For purposes of this Guaranty, the following terms shall be defined as set forth below. In addition, any capitalized term defined in the First Lien Credit Agreement but not defined in this Guaranty shall have the same meaning in this Guaranty as in the First Lien Credit Agreement.

   a. "Borrower" means: (a) Borrower as defined above, acting on its own behalf; (b) any estate created by the commencement of an Insolvency Proceeding affecting Borrower; (c) any trustee, liquidator, sequestrator or receiver of Borrower or Borrower's property; and (d) any similar person appointed in any Insolvency Proceeding of Borrower.

   b. "Guarantied Obligations" means all Obligations.

   c. "Insolvency Proceeding" means any Proceeding under any present or future state or federal law on bankruptcy, reorganization, insolvency or relief of debtors, appointment of a trustee (or custodian or receiver), assignment for the benefit of creditors, readjustment, liquidation, dissolution, or the rights of creditors generally, including the federal bankruptcy code and laws on fraudulent conveyances and fraudulent transfers.

   d. "Loan Documents" shall have the meaning given such term in the First Lien Credit Agreement. If the Loan Documents, as so defined, are modified pursuant to any Insolvency Proceeding, even if Administrative Agent consented to such modification, then such modification shall not affect the definition of "Loan Documents" under this Guaranty, unless Administrative Agent elects otherwise in its sole discretion.

   e. "Preserved Defenses" means only any defenses that Borrower could, under the express terms of the Loan Documents, properly assert against the Obligations based upon only: (a) actual payment and performance in compliance with the Loan Documents; or (b) Administrative Agent's acts and omissions.

   f. "Proceeding" means any action, suit, nonjudicial foreclosure, arbitration hearing or proceeding arising out of, or relating to the interpretation or enforcement of, this Guaranty or the Loan Documents, including: (a) an Insolvency Proceeding; and (b) any proceeding in which Administrative Agent endeavors to realize upon any Collateral or enforce any Loan Document(s) against Borrower, Guarantor, or any other obligor.

   g. "State" means the State of New York.

2. Guarantied Obligations. Guarantor unconditionally, absolutely and irrevocably guarantees Borrower's prompt and complete payment, observance, fulfillment and performance of all Guarantied Obligations. Guarantor shall be personally liable for, and personally obligated to perform, all Guarantied Obligations. All assets of Guarantor shall be subject to recourse if Guarantor fails to pay and perform any Guarantied Obligation. Guarantor shall personally pay and perform all Guarantied Obligations, as if Guarantor had itself assumed and agreed to

2