# EXHIBIT D

Case 10-02976-PGH    Doc 198-4    Filed 02/21/11    Page 1 of 6

EXECUTION VERSION

## ACKNOWLEDGMENT AND FORBEARANCE AGREEMENT

This ACKNOWLEDGMENT AND FORBEARANCE AGREEMENT, dated as of June 30, 2008 (this "Agreement"), is made and entered into by and among GINN-LA CS BORROWER, LLC, a Delaware limited liability company ("CS Borrower") and GINN-LA CONDUIT LENDER, INC., a Delaware corporation ("Conduit Borrower" and together with CS Borrower, collectively, the "Borrowers") and CREDIT SUISSE, CAYMAN ISLANDS BRANCH, as administrative agent for the Lenders (as defined below) and as collateral agent for the Lenders (the "Agent").

WHEREAS, the Borrowers, the lenders that are parties thereto from time to time (the "Lenders") and the Agent entered into that certain First Lien Credit Agreement, dated as of June 8, 2006 (the "Original Credit Agreement"), as amended pursuant to that certain Waiver and Amendment to First Lien Credit Agreement, executed as of April 30, 2007, but effective as of April 15, 2007 (the "First Amendment"); that certain Second Waiver and Amendment to First Lien Credit Agreement, executed as of June 28, 2007, but effective as of July 20, 2007 (the "Second Amendment"); and that certain Waiver to First Lien Credit Agreement, executed as of April 18, 2008, but effective as of April 14, 2008 (the "Waiver", and together with the Original Credit Agreement, the First Amendment and the Second Amendment, as amended, restated, extended, modified or otherwise supplemented from time to time, the "Credit Agreement"). Capitalized terms used herein and not defined shall have the meanings provided in the Credit Agreement.

WHEREAS, the Borrowers have informed Agent that they will not make the payment of interest and principal due under the Loans on June 30, 2008.

WHEREAS, such failure will constitute an Event of Default under the Credit Agreement.

WHEREAS, the Borrowers have informed Agent that they will not make a payment under a Hedge Agreement with Credit Suisse in the amount of $550,502.61 due on June 30, 2008.

WHEREAS, such failure will constitute an Event of Default under the Credit Agreement.

WHEREAS, the Borrowers have informed Agent that they will not make the payment of interest due under the Second Lien Credit Agreement which will cause an Event of Default under the Credit Agreement.

WHEREAS, the Borrowers have informed the Agent that the events set forth on Schedule 5 have occurred and constitute Events of Default under the Credit Agreement and the other Loan Documents.

WHEREAS, the Borrowers and the Agent are entering into this Agreement to memorialize certain agreements with respect to the foregoing Event of Defaults (collectively, the "Specified Events of Default").

WHEREAS, the Persons listed on Schedule 1 attached hereto and incorporated herein (such Persons together with the Borrowers, the "Full Recourse Borrower Parties" and each, including the Borrowers, a "Full Recourse Borrower Party") and the persons listed on Schedule 2 attached hereto and incorporated herein (such Persons, the "Limited Recourse Borrower Parties"; the Limited Recourse Borrower Parties together with the full Recourse Borrower Parties are hereafter referred to as the "Borrower Parties", and each, including the Full Recourse Borrower Parties, a "Borrower Party") are executing this Agreement to acknowledge this Agreement, to join this Agreement and to reaffirm their obligations under the documents listed on Schedule 3 attached hereto and incorporated herein (the "Loan Documents"), all as provided in this Agreement.

WHEREAS, the Requisite Lenders who are signatories to this Agreement have approved this Agreement pursuant to Section 9.5 of the Credit Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and other good and valuable consideration, the parties hereto agree as follows.

1. Reaffirmation of Loan Documents. Each Borrower Party hereby: (a) reaffirms and acknowledges all of the terms and provisions of the Loan Documents to which they are a party and such Borrower Party's obligations under the Loan Documents to which they are a party and (b) represents and warrants to Agent that the Loan Documents to which they are a party are in full force and effect, enforceable in accordance with their terms, except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws of general application affecting the enforcement of creditors' rights or general equitable principles (whether applied in law or equity). Each Full Recourse Borrower Party hereby reaffirms and acknowledges the obligations to pay, when due, all principal, interest and fees and on demand, all expenses, including, without limitation, reasonable, documented attorneys' fees and expenses of the Agent and each Lender and all reasonable, documented costs and expenses arising out of or relating to the hiring of third party consultants, financial advisors and other consultants retained by the Agent (i) incurred in connection with the exercise of Agent's and such Lender's duties under the Loan Documents and the preparation, negotiation, execution and delivery of this Agreement and amendments and waivers under the Loan Documents, (ii) incurred in the enforcement or attempted enforcement of this Agreement and any of the Loan Documents or in preserving any of Agent's or such Lender's rights and remedies, including, without limitation, all such fees and expenses incurred in connection with any modification, "workout" or other restructuring affecting the Loan Documents or any bankruptcy or similar proceeding involving, among others, the Borrower Parties or any of their affiliates, (iii) in negotiating and implementing this Agreement and any related documents and/or prenegotiation agreement and (iv) as otherwise provided in the Credit Agreement and other Loan Documents.

2. Acknowledgment. The Borrowers hereby acknowledge and agree that: (a) the outstanding principal amount of the Loans as of the date hereof is $518,700,000.00 in the aggregate; (b) a payment of interest, principal and fees on the Loans in the amount of $8,293,926.46 and a payment in the amount of $550,502.61 on a Hedge Agreement with Credit Suisse are due and payable on June 30, 2008 (the "June 30th Payments"); (c) the Hedge Agreement described in clause (b) above has terminated and the amount due and payable under such Hedge Agreement is $550,502.61; (d) Borrowers will not make the June 30th Payments on

2

June 30, 2008 (the "Payment Default"); (e) the Payment Default shall constitute an Event of Default under the Credit Agreement at 12:00 a.m. on July 1, 2008, without further notice from the Agent; (f) each of the Specified Events of Default are immediate Events of Default without any requirement for further notice or grace period; and (f) after June 30, 2008 (i) all Loans shall be converted to Base Rate Loans and (ii) the outstanding principal amount of all Loans and, to the extent permitted by applicable law, any interest payments thereon and any fees and other amounts due and payable under the Credit Agreement, shall bear interest payable upon demand at a rate equal to 2% per annum in excess of the interest rates otherwise payable under the Credit Agreement for Base Rate Loans (the "Default Interest"), and such interest shall accrue during the Forbearance Period (as hereafter defined), provided that the Agent and Lenders agree that they shall not make any demand for payment of the Default Interest during the Forbearance Period and that such Default Interest shall accrue.

3. Waiver and Release.

(a)  To the extent the Agent and the Lenders are in compliance with the terms of this Agreement, the Borrower Parties hereby waive any and all defenses, affirmative defenses, counterclaims, claims, causes or action, setoffs or other right that any of them may have in connection with the obligations of the Borrower Parties under the Loan Documents and the exercise of any remedies by the Agent and/or the Lenders as a result of any and all Defaults or Events of Default under the Credit Agreement, including, without limitation, the Specified Events of Default. The Borrower Parties shall not contest any action, proceeding or foreclosure or raise any defenses, affirmative defenses, counterclaims, claims, causes or action, setoffs or other right that the Agent and/or the Lenders may have in connection with any such enforcement action or exercise of remedies.

(b)  Each of the Borrower Parties, for themselves and their respective heirs, executors, administrators, successors and assigns, hereby remises, releases and forever discharges each of Agent and the Lenders and their respective officers, directors, principals, shareholders, affiliates, agents, employees, legal representatives, successors and assigns from and against any and all actions, causes of action, suits, debts, covenants, contracts, damages, judgments, claims and demands whatsoever, whether at law, in equity or otherwise, including, without limitation, claims of lender liability arising up to and including the date hereof with respect to or arising out of the Credit Agreement and/or the other Loan Documents.

4.  Covenants of Borrower During Forbearance Period. As a material inducement for Agent and the Requisite Lenders to enter into this Agreement, the Borrowers hereby covenant and agree that during the Forbearance Period, notwithstanding anything to the contrary contained in the Credit Agreement:

(a)  The Borrowers shall incur and fund only those expenses shown on, and in strict accordance with, the approved line item budget for the Forbearance Period attached hereto as Exhibit A (the "Approved Budget"), subject to variance from the Approved Budget in amounts not to exceed ten percent (10%) of the budgeted amount for any line item and $250,000 for all variances in the aggregate, or such other variances approved by the Agent in its sole and absolute discretion, provided that no such variance will be permitted for any increased fees, overhead or other payments to the Borrower Parties or their affiliates. Such expenses may be

3

647079.08-New York Server 3A - MSW

LA011392

its choice in connection with the negotiation, drafting, meaning and legal significance of this Agreement and that it is satisfied with its legal counsel and the advice received from it.

13. <u>Governing Law</u>. This Agreement and all obligations of the parties hereunder shall be governed by, and be construed and interpreted in accordance with, the internal laws of the State of New York without regard to choice of law rules.

14. <u>Waiver of Trial by Jury</u>. Each Borrower Party hereby waives trial by jury in any action, proceeding or counterclaim brought by any of them or against any of them on any matters whatsoever arising out of or in any way connected with this Agreement.

15. <u>Judicial Interpretation</u>. Should any provision of this Agreement require judicial interpretation, it is agreed that the parties have mutually negotiated and drafted this Agreement, and that a court interpreting or construing the same shall not apply a presumption that the terms hereof shall be more strictly construed against any party by reason of the rule of construction that a document is to be construed more strictly against the party who itself or through its agent prepared the same.

16. <u>Miscellaneous</u>. This Agreement constitutes the entire agreement of the parties concerning the subject matter hereof and all prior or contemporaneous understandings, oral representations or agreements had among the parties with respect to the subject matter hereof are merged in, and are contained in, this Agreement. Paragraph headings used in this Agreement are for convenience only and shall not be used to interpret limit or amplify any term of this Agreement.

17. <u>Amendments</u>. This Agreement may only be amended by a written agreement signed by the Borrower, the Agent and the Requisite Lenders.

18. <u>Loan Documents</u>. The Loan Documents shall remain unmodified and in full force and effect except to the extent expressly set forth herein.

19. <u>Counterparts</u>. This Agreement may be executed in several counterparts, each of which shall, for all purposes, be deemed an original and all of such counterparts, taken together, shall constitute one and the same Agreement, even though all of the parties hereto may not have executed the same counterpart of this Agreement. Facsimile signatures for any party hereto shall be binding as an original.

20. <u>Acknowledgment and Reaffirmation by Borrower Parties</u>. The Persons listed on <u>Schedule 1</u> and <u>Schedule 2</u> attached hereto are executing this Agreement to acknowledge this Agreement, to join this Agreement and to reaffirm their obligations, if any, under the Loan Documents, provided that the execution and delivery of this Agreement by such Persons shall not be construed in any way to expand the limited nature of the obligations, if any, of such Persons under the Loan Documents.

[REMAINDER OF PAGE INTENTIONALLY BLANK]

LA011397

IN WITNESS WHEREOF, the parties hereto have caused this agreement to be executed and delivered on the date first written above.

**BORROWERS:**

GINN-LA CS BORROWER, LLC

By: *[signature]*
Name: John P. Klumph
Title: Executive Vice President

GINN-LA CONDUIT LENDER, INC.

By: *[signature]*
Name: John P. Klumph
Title: Executive Vice President

[SIGNATURES CONTINUE ON FOLLOWING PAGE]

647079.08-New York Server 3A - MSW

LA011399