# EXHIBIT "5"

This Document Prepared By And Return To:
Jamie Hisiger, Esq.
Latham & Watkins LLP
885 Third Avenue
New York, New York 10022-4834
Phone: 212) 906-1200
Fax: (212) 751-4864

# FIRST LIEN MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES
## AND FIXTURE FILING

THIS FIRST LIEN MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING (this "Mortgage"), made and entered into as of _June 8_____, 2006, by GINN-LA ST. LUCIE LTD., LLLP, a Georgia limited liability limited partnership ("Tesoro Mortgagor"), GINN-LA QUAIL WEST LTD., LLLP, a Georgia limited liability limited partnership ("Quail West Mortgagor"), GINN QUAIL WEST BEACH, LLC, a Georgia limited liability company ("Quail West Beach Mortgagor"), HAMMOCK BEACH RIVER CLUB, LLC, a Georgia limited liability company ("Bulow Mortgagor"), THE TESORO CLUB, LLC, a Georgia limited liability company ("Tesoro Club Mortgagor"), each of whose address is 215 Celebration Place, Suite 200, Celebration, Florida 34747 (collectively, the "Mortgagor"), in favor of CREDIT SUISSE, CAYMAN ISLANDS BRANCH whose address is Eleven Madison Avenue, New York, New York, 10010, Attn: Julia Kingsbury, as the Collateral Agent for the Lenders, as hereinafter defined ("Mortgagee").

THIS MORTGAGE AND THE SECOND MORTGAGE, AS DEFINED HEREIN, SECURE THE OBLIGATIONS UNDER THOSE CERTAIN SUBSIDIARY GUARANTIES, AS DEFINED IN THE FIRST LIEN CREDIT AGREEMENT AND THE SECOND LIEN CREDIT AGREEMENT RESPECTIVELY, WHICH HAVE BEEN EXECUTED AND DELIVERED OUTSIDE THE STATE OF FLORIDA. THE FLORIDA REAL PROPERTY ENCUMBERED BY THIS MORTGAGE IS LOCATED IN ST. LUCIE COUNTY, COLLIER COUNTY, LEE COUNTY, AND FLAGLER COUNTY AND FLORIDA DOCUMENTARY STAMP TAXES ARE BEING PAID UPON THE RECORDATION OF THIS MORTGAGE IN FLAGLER COUNTY, SUCH THAT NO DOCUMENTARY STAMP TAXES WILL BE PAID UPON THE RECORDATION OF THIS MORTGAGE IN ST. LUCIE COUNTY, COLLIER COUNTY, OR LEE COUNTY. RECOVERY UNDER THIS MORTGAGE AND THE SECOND MORTGAGE SHALL BE LIMITED TO THE AGGREGATE PRINCIPAL AMOUNT OF $449,000,000 AND FLORIDA DOCUMENTARY STAMP TAXES IN THE AMOUNT OF $1,571,500 ARE BEING PAID UPON RECORDATION OF THIS MORTGAGE IN FLAGLER COUNTY. THIS MORTGAGE IS EXEMPT FROM FLORIDA NON-RECURRING INTANGIBLE PERSONAL PROPERTY TAXES BECAUSE IT SECURES A CONTINGENT OBLIGATION.

FL-First Lien Mortgage

NY\1152312.5

## RECITALS

A.        Ginn-LA CS Borrower, LLC, a Delaware limited liability company, and Ginn-LA Conduit Lender, Inc., a Delaware corporation (collectively, the "Borrower") have entered into to that certain First Lien Credit Agreement, dated as of the date hereof (as may be amended, supplemented, extended, restated or otherwise modified from time to time, the "<u>First Lien Credit Agreement</u>"), among the Borrower, Credit Suisse, Cayman Islands Branch as the Administrative Agent and Collateral Agent, Credit Suisse Securities (USA) LLC, as Paying Agent, Fronting Bank, Sole Lead Arranger and Sole Bookrunner, and each Lender from time to time a party thereto (the "<u>Lenders</u>").  Unless otherwise defined, capitalized terms are used in this Mortgage as they are defined in the First Lien Credit Agreement.  Pursuant to the terms of the First Lien Credit Agreement, the Lenders have made loans available to the Borrower in the principal amount of $525,000,000.

B.        Tesoro Mortgagor is the 100% fee simple owner of certain portions of real property commonly known as of the date hereof as "Tesoro" and "Tesoro Beach Club" (collectively, the "<u>Tesoro Fee Property</u>").  Quail West Mortgagor is the 100% fee simple owner of certain portions of real property commonly known as of the date hereof as "Quail West".  Quail West Beach Mortgagor is the 100% fee simple owner of certain portions of real property commonly known as of the date hereof as "Villa Positano" and "Bonita Beach".  Bulow Creek Mortgagor is the 100% fee simple owner of certain portions of real property commonly known as of the date hereof as "Hammock Beach River Club".  Each of these portions of real property are more particularly described on <u>Exhibit A</u> attached hereto (collectively, the "<u>Fee Property</u>").  In addition, pursuant to that certain Lease dated December 31, 2005, (as may be further amended, supplemented, extended, restated or otherwise modified from time to time, the "<u>Golf Subject Lease</u>"), Tesoro Club Mortgagor is the tenant and holder of leasehold title to the golf course real property at Tesoro, more particularly described on <u>Exhibit B</u> attached hereto, (the "<u>Golf Leased Property</u>").  Also, pursuant to that certain Lease dated February 5, 2003, (as may be further amended, supplemented, extended, restated or otherwise modified from time to time, the "<u>Pond Subject Lease</u>", together with the Golf Subject Lease, the "<u>Subject Leases</u>"), Tesoro Mortgagor is the tenant and holder of leasehold title in and to A-2 Pond at Tesoro, more particularly described on <u>Exhibit C</u> attached hereto (the "<u>Pond Leased Property</u>", together with the Golf Leased Property, the "<u>Leased Property</u>").  The Leased Property, together with the Fee Property, is hereinafter referred to as the "<u>Property</u>".

C.        In connection with the First Lien Credit Agreement and as a condition to the Mortgagee executing the same, Mortgagor and certain other subsidiaries of Borrower have executed and delivered to Mortgagee, for the benefit of the Lenders, a Subsidiary Guaranty, pursuant to which Mortgagor guaranteed the payment of loans and the other obligations of Borrower under the First Lien Credit Agreement and the Loan Documents;

D.        The First Lien Credit Agreement requires that the obligations of the Borrower under the First Lien Credit Agreement, the Hedge Agreements (as defined in the First Lien

2

FL-First Lien Mortgage

Credit Agreement and only if such Hedge Agreement was entered into with a Lender or a Lender's affiliate) and the other Loan Documents (as defined in the First Lien Credit Agreement) be secured by liens and security interests covering, among other things, Mortgagor's interest in the Fee Property and the Leased Property. In connection therewith, Mortgagor is executing and delivering this Mortgage in accordance with the First Lien Credit Agreement.

E.      Borrower and Mortgagor are engaged in related businesses, and Mortgagor will derive substantial direct and indirect benefit from the extension of credit under the First Lien Credit Agreement.

## AGREEMENT

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Mortgagor hereby agree as follows:

All of the following property constitutes and is collectively called herein the "Collateral":

All of MORTGAGOR'S RIGHT, TITLE AND INTEREST in the Property whether now owned or hereafter acquired;

TOGETHER WITH all right, title and interest of each Mortgagor in and to the following, whether now owned or hereafter acquired:  (a) all improvements (including, without limitation, any hotel, guest residences, homes or condominiums owned by the Mortgagor, golf courses, restaurants, all infrastructure improvements and public improvements) now or hereafter attached to or placed, erected, constructed or developed on the Property or otherwise affixed thereto in such manner that such items are not deemed to be personal property under the laws of the State of Florida (collectively, the "Improvements"); (b) the leasehold estates in the Leased Property, together with any greater or additional estate therein as hereafter may be acquired by Tesoro Mortgagor and Tesoro Club Mortgagor, as well as the fee estate in the Fee Property, together with any greater or additional estate therein as hereafter may be acquired by Mortgagor (the "Land"); (c) all assignments, modifications, extensions and renewals of the Subject Leases and all credits, deposits, options, privileges and rights of Tesoro Mortgagor and Tesoro Club Mortgagor as tenants under the Subject Leases, including, but not limited to, rights of first refusal, if any, and the right, if any, to renew or extend the Subject Leases for a succeeding term or terms; (d) any and all fixtures, furnishings, equipment, machinery, furniture, and other items of tangible personal property now or hereafter located on the Property or in the Improvements or used in connection with the development, construction, use, occupancy, operation and maintenance of all or any part of the Property or the Improvements, including construction equipment, machinery, signs, artwork, furnishings, specialized fixtures, furnishings and equipment relating to Mortgagor's ownership and operation of the Property and Mortgagor's development of the Property, and all renewals of or replacements or substitutions for any of the foregoing, whether or not the same are or shall be attached to the Property or Improvements; (e) all water and water rights, timber, crops, and mineral interests pertaining to the Property; (f) all

3

NY\1152312.5                                                                    FL-First Lien Mortgage

building materials and equipment now or hereafter delivered to and intended to be installed in or on the Property or the Improvements; and all plans and specifications for the Improvements; (g) any contracts relating to the Property, the Improvements or the furniture, fixtures and equipment (the "FF&E") (including all construction related agreements, license agreements, service agreements, maintenance agreements, management agreements and other agreements relating to the development of the Property); (h) all deposits, bank accounts, financial assets, funds, instruments, investment property, notes or chattel paper arising from or by virtue of any transactions related to the Property, the Improvements or the FF&E; (i) to the extent assignable, all community facilities districts or any similar public financing vehicles which relate to the Property or the Improvements (or future Improvements) and any reimbursement rights of Mortgagor relating thereto; (j) to the extent assignable, any documents, contract rights, accounts, commitments, construction contracts, architectural agreements, and general intangibles (including trademarks, trade names and symbols) arising from or by virtue of any transactions related to the Property, the Improvements or FF&E; (k) to the extent assignable, all entitlements, permits, approvals (including, without limitation, approved preliminary and final subdivision plats), licenses (including liquor licenses), franchises, certificates and all other rights, privileges and entitlements (collectively, the "Permits") obtained now or in the future in connection with the Property, the Improvements and the FF&E; (l) all proceeds arising from or by virtue of the sale, lease or other disposition of the Property, the Improvements or the FF&E; (m) all proceeds (including premium refunds) of each policy of insurance relating to the Property, the Improvements or the FF&E; (n) all proceeds from the taking or condemnation of any of the Property, the Improvements, the FF&E or any rights appurtenant thereto by right of eminent domain or by private or other purchase in lieu thereof, including change of grade of streets, curb cuts or other rights of access, for any public or quasi-public use under any law; (o) all streets, roads, public places, easements and rights-of-way, existing or proposed, public or private, adjacent to or used in connection with, belonging or pertaining to the Property; (p) all of the leases, rents, royalties, bonuses, issues, profits, revenues or other benefits of the Property, the Improvements or the FF&E, including cash or securities deposited pursuant to leases to secure performance by the lessees of their obligations thereunder; (q) all fees, charges, accounts and/or other payments for the use or occupancy of any portion of the Improvements; (r) all rights, hereditaments and appurtenances pertaining to the foregoing; (s) all patents, trademarks, tradenames, copyrights and other intellectual property rights and privileges obtained or hereafter acquired in connection with the Property, the Improvements and the FF&E and, with respect to trademark and service mark applications that are so called "intent-to-use" applications, together with the entire business or portion thereof to which such applications pertain as required by 15 U.S.C. Section 1060; and (t) other interests of every kind and character that Mortgagor now has or at any time hereafter acquires in and to the Property, Improvements, and FF&E described herein and in and to all other real property, personal property and other property that is used or useful in connection therewith, including rights of ingress and egress and all reversionary rights or interests of Mortgagor with respect to such property.

Notwithstanding anything herein to the contrary, in no event shall the security interest granted hereunder attach to (i) any lease, license, contract right, property right or agreement to

4

which Mortgagor is a party or any of its rights or interests thereunder if and for so long as the grant of such security interest shall constitute or result in (A) the abandonment, invalidation or unenforceability of any right, title or interest of Mortgagor therein or (B) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract, property rights or agreement (other than to the extent that any such term would be rendered ineffective pursuant to Sections 9-406, 9-407, 9-408 or 9-409 of the UCC (or any successor provision or provisions) of any relevant jurisdiction or any other applicable law or principles of equity); provided, however, that such security interest shall attach immediately at such time as the condition causing such abandonment, invalidation, unenforceability, breach, termination, other restriction or assignment shall be remedied and, to the extent severable, shall attach immediately to any portion of such lease, license, contract, property rights or agreement that does not result in any of the consequences specified in (A) or (B) of this clause (i) including any proceeds of such lease, license, contract, property rights or agreement; or (ii) any Permit, if and for so long as the grant of such security interest shall constitute or result in (A) the abandonment, invalidation or unenforceability of any right, title or interest of Mortgagor therein, (B) a violation of, or termination pursuant to, the terms of such Permit, or (C) a violation of any applicable law; provided, however, that such security interest shall attach immediately at such time as the condition causing such abandonment, invalidation, unenforceability, violation, termination, other restriction or assignment shall be remedied and, to the extent severable, shall attach immediately to any portion of such Permit that does not result in any of the consequences specified in (A) or (B) of this clause (ii).

**Mortgagor, to secure the Secured Obligations (as defined below), does hereby:**

A.    Grant, bargain, sell, assign, convey and mortgage a security interest in, and confirm unto Mortgagee, WITH POWER OF SALE, all of Mortgagor's rights, title and interests in and to the Collateral that constitutes real property under the laws of the State of Florida (the "RP Collateral"), TO HAVE AND TO HOLD the RP Collateral, together with the rights, privileges and appurtenances thereto belonging, unto Mortgagee and its substitutes or successors, forever to satisfy payment of the indebtedness as hereinafter set forth.

B.    Grant a security interest to Mortgagee in those portions of the Collateral that either are fixtures or are not RP Collateral under the laws of the State of Florida, including the UCC Collateral (as defined in Article 3 below), but subject to the rights of Mortgagee under the assignment made in the immediately following paragraph; and

C.    Absolutely and unconditionally assign and transfer to Mortgagee all of the Leases and the Rents (each as defined in Article 2 below) and other benefits derived from the Leases, whether now existing or hereafter created, all subject to the terms and conditions of the revocable license in favor of Mortgagor granted in Article 2 below:

IN FURTHERANCE OF THE FOREGOING GRANTS (INCLUDING GRANTS OF SECURITY INTERESTS), BARGAINS, SALES, ASSIGNMENTS, TRANSFERS, MORTGAGES AND CONVEYANCES, AND TO PROTECT THE COLLATERAL AND THE

5

FL-First Lien Mortgage

SECURITY GRANTED BY THIS MORTGAGE, MORTGAGOR HEREBY WARRANTS, REPRESENTS, COVENANTS AND AGREES AS FOLLOWS:

## ARTICLE 1.

## SECURED OBLIGATIONS

1.1    First Lien Credit Agreement.  This Mortgage is given for the purpose of securing (a) the payment of all of the Guarantied Obligations (as such term is defined in the Subsidiary Guaranty) of Mortgagor under the Subsidiary Guaranty; and (b) payment of all other obligations and liabilities of Mortgagor to Mortgagee and the Lenders, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with the First Lien Credit Agreement, this Mortgage, the Security Agreement, the Subsidiary Guaranty, any other Loan Document, the Letters of Credit, any Hedge Agreement or any other document made, delivered or given in connection herewith or therewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses (including all fees, charges and disbursements of counsel to the Mortgagee that are required to be paid by Mortgagor pursuant to the Subsidiary Guaranty or any other Loan Document) or otherwise (all such indebtedness and obligations collectively, for purposes of this Mortgage, the "Secured Obligations").  Mortgagor shall pay and perform the Secured Obligations at the times and places and in the manner specified in the Subsidiary Guaranty, this Mortgage and the other Loan Documents, in each case subject to any applicable grace or cure periods.  Notwithstanding anything herein to the contrary, the maximum principal amount that may be recovered hereunder is limited to the difference between (a) $449,000,000 minus (b) the amount that has been recovered by Mortgagee pursuant to that certain Second Lien Mortgage, Security Agreement, Assignment of Rents and Leases and Fixture Filing executed on or about the date hereof by Mortgagor in favor of Mortgagee ("Second Mortgage").

1.2    Term of Mortgage.  This Mortgage shall be effective for the period from the date of this Mortgage through the date upon which all Secured Obligations have been paid or performed in full (as the case may be) (other than indemnity obligations that survive the termination of the Loan Documents and the Hedge Agreements).  Upon the payment and performance in full of the Secured Obligations, Mortgagee shall promptly execute a full satisfaction of this Mortgage in form appropriate for recording and deliver such satisfaction to Mortgagor.

## ARTICLE 2.

## ASSIGNMENT OF RENTS AND LEASES

2.1    Assignment of Rents, Profits, etc.  As further security for the Secured Obligations, all of Mortgagor's right, title and interest in the rents, royalties, bonuses, issues, profits, revenue and income derived from the Collateral or arising from the use or enjoyment of any portion thereof or from any lease or agreement pertaining thereto, and liquidated damages following

FL-First Lien Mortgage

default under such leases and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by damage to any part of the Collateral, together with any and all rights that Mortgagor may have against any tenant under such leases or any subtenants or occupants of any part of the Collateral (hereinafter called the "Rents"), are hereby absolutely and unconditionally assigned to Mortgagee, to be applied by Mortgagee in payment of the Secured Obligations.

2.2    Assignment of Leases.    As further security for the Secured Obligations, Mortgagor hereby assigns to Mortgagee all of Mortgagor's right, title and interest as lessor in and to all existing and future leases respecting the Property or Improvements, including subleases thereof, and any and all extensions, renewals, modifications and replacements thereof, upon any part of the Collateral (the "Leases"). Mortgagor hereby further assigns to Mortgagee all guaranties of tenants' performance under the Leases.

2.3    License. Notwithstanding the foregoing provisions and subject to the terms of the Subsidiary Guaranty and the First Lien Credit Agreement, so long as no Event of Default (defined below in Article 5) shall exist and be continuing hereunder, Mortgagor shall have the right and license to collect, use and enjoy the Rents and other sums payable under and by virtue of any Lease, and Mortgagor shall have the right to enforce the covenants of such Leases and other agreements and arrangements, and the right to enter into, modify and terminate such Leases and other agreements and arrangements in good faith (subject to the terms of the Subsidiary Guaranty and the First Lien Credit Agreement). Upon the occurrence of an Event of Default and during the continuance thereof, such license in favor of Mortgagor shall automatically and immediately terminate upon notice to Mortgagor, and Mortgagee shall be entitled thereupon to receive and collect the Rents personally or through an agent or a receiver so long as any such Event of Default shall exist and during pendency of any foreclosure proceedings.

2.4    Representations, Warranties and Covenants Concerning Subject Leases, Other Leases and Rents. Mortgagor represents, warrants and covenants with respect to the Property owned by it that:

(a)    Mortgagor has good and marketable title to the Leases and Rents hereby assigned (except for such defects in such rights that would not reasonably be expected, alone or in the aggregate, to have a Material Adverse Effect, as defined in the First Lien Credit Agreement) and authority to assign them, and no other person or entity has any right, title or interest therein (other than Permitted Encumbrances, as defined in the First Lien Credit Agreement);

(b)    no Rents have been or will be assigned, mortgaged or pledged, except to the extent permitted by the terms of the First Lien Credit Agreement;

(c)    the Leases are subordinate to this Mortgage in all respects;

7

FL-First Lien Mortgage

(d)    all rent and other charges in the Subject Leases and the other Leases have been paid to the extent they are payable to the date hereof;

(e)    Mortgagor enjoys the quiet and peaceful possession of the Leased Property;

(f)    Tesoro Mortgagor and Tesoro Club Mortgagor are not in default under any of the terms of the Subject Leases and there are no circumstances which, with the passage of time or the giving of notice or both, would constitute an event of default thereunder;

(g)    Lessors under the Subject Leases, are not in material default under any of the terms or provisions thereof on the part of the lessor to be observed or performed (but this statement is made for the benefit of and may only be relied upon by Mortgagee and Lenders);

(h)    Mortgagor shall defend, at Mortgagor's expense and to the extent commercially reasonable, any proceeding, legal or otherwise, pertaining to the Leases, including, if Mortgagee so requests, any such proceeding to which Mortgagee is a party;

(i)    Mortgagor shall neither create nor permit any encumbrance upon its interest as lessor of any of the Leases, except this Mortgage and any other encumbrances permitted by this Mortgage or the First Lien Credit Agreement;

(j)    Mortgagor causes all Leases hereafter entered into by Mortgagor to expressly provide that if such Leases are subordinate to this Mortgage and, if Mortgagee forecloses under this Mortgage, then the tenant shall attorn to Mortgagee or its assignee and the Lease will remain in full force and effect in accordance with its terms notwithstanding such foreclosure;

(k)    Tesoro Mortgagor and Tesoro Club Mortgagor shall promptly pay, when due and payable, the rent and other charges payable pursuant to the Subject Leases, and will timely perform and observe all of the other terms, covenants and conditions required to be performed and observed by Tesoro Mortgagor and Tesoro Club Mortgagor as lessees under the Subject Leases and shall do all things necessary to preserve and to keep unimpaired its rights thereunder;

(l)    Tesoro Mortgagor and Tesoro Club Mortgagor shall, immediately following the receipt thereof, deliver a copy of any notice of default, notice claiming a default or notice of lessors' intention to exercise any remedy reserved to lessors under the Subject Leases given to Tesoro Mortgagor and Tesoro Club Mortgagor by the lessors pursuant to the Subject Leases and promptly notify Mortgagee in writing of any default by the lessors in the performance or observance of any of the terms, covenants or conditions on the part of the lessor to be performed or observed thereunder;

8

FL-First Lien Mortgage

(m)     So long as any of the Secured Obligations remain unpaid or unperformed, the fee title to and the leasehold estate in the Leased Property shall not merge but shall always be kept separate and distinct notwithstanding the union of such estates in the lessor or Tesoro Mortgagor, or Tesoro Club Mortgagor, or in a third party, by purchase or otherwise;

(n)     If Tesoro Mortgagor and Tesoro Club Mortgagor acquire the fee title or any other estate, title or interest in the property demised by the Subject Leases, or any part thereof, the lien of this Mortgage shall attach to, cover and be a lien upon such acquired estate, title or interest and the same shall thereupon be and become a part of the Collateral with the same force and effect as if specifically encumbered herein; and

(o)     If either of the Subject Leases shall be terminated prior to its natural expiration of its term due to default by either Tesoro Mortgagor or Tesoro Club Mortgagor, as applicable, and if, pursuant to the provisions of the Subject Leases, Mortgagee or its designee shall acquire from the lessors a new lease of the premises subject to the applicable Subject Lease, Tesoro Mortgagor or Tesoro Club Mortgagor, as the context requires, shall have no right, title or interest in or to such new lease or the leasehold estate created thereby, or renewal privileges therein contained

2.5     <u>Intentionally deleted</u>

2.6     <u>Mortgagee in Possession</u>.  Mortgagee's acceptance of this assignment shall not, prior to entry upon and taking possession of the Collateral by Mortgagee, be deemed to constitute Mortgagee a "mortgagee in possession," nor obligate Mortgagee to appear in or defend any proceeding relating to any of the Leases or to the Collateral, take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under the Leases, or assume any obligation for any deposits delivered to Mortgagor by any lessee and not delivered to Mortgagee.  Mortgagee shall not be liable for any injury or damage to person or property in or about the Collateral unless caused by the gross negligence or intentional misconduct of Mortgagee.

2.7     <u>Indemnification</u>.  Mortgagor hereby indemnifies, agrees to defend, and holds Mortgagee, all agents for the Lenders and Lenders, and any persons or entities owned or controlled by, owning or controlling, or under common control or affiliated with, Mortgagee, the directors, officers, partners, employees, attorneys, agents and representatives of each of the foregoing persons and entities, and the heirs, personal representatives, successors and assignees of each of the foregoing persons and entities (collectively, the "<u>Indemnified Parties</u>") harmless from all liability, damage or expense imposed on or incurred by the Indemnified Parties from any claims under the Leases, including any claims by Mortgagor with respect to payments of Rents made directly to Mortgagee during the continuation of an Event of Default and claims by tenants for security deposits or for rental payments more than one (1) month in advance and not delivered to Mortgagee, but excluding any liability, loss or damage which may be incurred by the Indemnified Parties by reason of the Indemnified Parties' gross negligence or willful misconduct.

9

FL-First Lien Mortgage

2.8    <u>Records</u>.  If requested by Mortgagee, Mortgagor shall deliver to Mortgagee a copy of the executed originals of all Leases, and after an Event of Default, executed originals thereof in Mortgagor's possession or control.

2.9    <u>Right to Rely</u>.  Mortgagor hereby authorizes and directs its tenants under the Leases to pay Rents to Mortgagee upon written demand by Mortgagee provided such demand shall be given only if an Event of Default exists and is continuing, without further consent of Mortgagor, and the tenants may rely upon any such written statement delivered by Mortgagee to the tenants (including with respect to the existence and continuation of an Event of Default). Any such payment to Mortgagee shall constitute payment to Mortgagor under the applicable Leases.

ARTICLE 3.

SECURITY AGREEMENT AND FINANCING STATEMENT

3.1    <u>Security Interest and Financing Statement</u>.  This Mortgage shall also be a security agreement and financing statement between Mortgagor and Mortgagee covering the Collateral constituting personal property or fixtures (hereinafter collectively called "UCC Collateral") governed by the Uniform Commercial Code as adopted by the State of New York  (hereinafter called the "Code") as the same may be more specifically set forth in any financing statements delivered in connection with this Mortgage, and as further security for the payment and performance of the Secured Obligations, Mortgagor hereby grants to Mortgagee a security interest in such portion of the Collateral.  In addition to Mortgagee's other rights hereunder, Mortgagee shall have all rights of a secured party under the Code.  Mortgagor shall bear all costs of filing financing statements, continuation and change statements, including all Code searches. If Mortgagee should dispose of any of the Collateral comprising the UCC Collateral pursuant to the Code after the occurrence and during the continuation of an Event of Default, ten (10) days' prior written notice by Mortgagee to Mortgagor shall be deemed to be reasonable notice; *provided, however*, Mortgagee may dispose of such property in accordance with the foreclosure procedures of this Mortgage in lieu of proceeding under the Code.  Mortgagee may from time to time file financing statements (without the separate authorization or signature of Mortgagor) and may execute and deliver all continuation statements, termination statements, amendments, partial releases, or other instruments relating to all financing statements by and between Mortgagor and Mortgagee.

3.2    <u>Notice of Changes</u>.  Mortgagor shall not, voluntarily or involuntarily, change its name, identity or legal structure, unless Mortgagor shall have given to Mortgagee prior written notice of any such proposed change and shall have delivered to Mortgagee, prior to or concurrently with the occurrence of any such change, all additional financing statements or other documents that may be required to perfect, protect and preserve Mortgagee's security interest with respect to any Collateral described or referred to herein, all in form and substance reasonably satisfactory to Mortgagee.

10

FL-First Lien Mortgage

3.3    _Fixtures_.  The Property is specifically described on Exhibit A, Exhibit B, and Exhibit C attached hereto.  Some of the items of the Collateral described herein constitute property that is or will become fixtures related to the Property, and it is intended that, as to those items, this Mortgage shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records where this Mortgage is recorded.   For this purpose, the following information is set forth:

Name and address of each Mortgagor:

> 215 Celebration Place, Suite 200
> Celebration, FL 34747
> Attn: John Klumph
> Telefax: (321)939-4721

> copy to:

> Morris, Manning & Martin
> 1600 Atlanta Financial Center
> 3343 Peachtree Road, NE
> Atlanta, GA  30326
> Attn:  Sonny Morris
> Phone: (404) 504-7726

Name and address of Mortgagee:

> Credit Suisse, Cayman Islands Branch
> Eleven Madison Avenue
> New York, New York 10010
> Attn: Julia Kingsbury
> Tel:  (212) 538-3314
> Facsimile: (212) 325-8304

> copy to:

> Latham & Watkins LLP
> 885 Third, Suite 1000
> New York, NY 10022
> Attn:  Jamie Hisiger, Esq.
> Telefax: (212) 751-4864

The record owner of the fee interest in the Fee Property is the Mortgagor (except Tesoro Club).  The record owner of the leasehold interest in the Golf Leased Property is the Tesoro

11

NY\1152312.5

Club. The record owner of the leasehold interest in the Pond Leased Property is the Tesoro Mortgagor. The Golf Leased Property and the Pond Leased Property are located within a portion of the Tesoro Fee Property located at 2000 SE Via Tesoro Blvd., Port St. Lucie, FL 34984.

ARTICLE 4.

MORTGAGOR AND AGREEMENTS OF MORTGAGOR

Mortgagor does hereby covenant and agree for the benefit of Mortgagee, and as expressly specified, Mortgagor does hereby warrant and represent to Mortgagee as of the date of recording this Mortgage as follows:

4.1    Payment and Performance.  Mortgagor shall make all payments on the Secured Obligations when due and shall punctually and properly perform all of Mortgagor's covenants, obligations and liabilities under the Subsidiary Guaranty, First Lien Credit Agreement, the Hedge Agreements, this Mortgage, and the other Loan Documents, subject to any applicable cure or grace periods.  Time shall be of the essence with respect to this Mortgage (subject to cure or grace period in the Loan Documents).

4.2    Title to Collateral and Lien of this Mortgage.  Mortgagor represents and warrants that Mortgagor holds and will maintain (subject to Permitted Collateral Asset Sales and other dispositions permitted by the First Lien Credit Agreement and subject to Liens an other encumbrances permitted under the Loan Documents) (i) a good and marketable fee simple interest in the Fee Property, (ii) good title to the Improvements thereon, (iii) good and marketable title to the FF&E.  Tesoro Mortgagor and Tesoro Club Mortgagor represents and warrant that Tesoro Mortgagor and Tesoro Club Mortgagor hold and will maintain (subject to Permitted Collateral Asset Sales and other dispositions permitted by the First Lien Credit Agreement) (i) a good and marketable leasehold interest in their respective Leased Property, (ii) good title to the Improvements thereon, (iii) good and marketable title to the applicable FF&E. Mortgagor further represents and warrants that this Mortgage shall constitute a First Priority Lien on the Property. Each Mortgagor will not create or suffer to exist any Lien (as defined in the First Lien Credit Agreement) on their interests in the Property other than as expressly permitted under the First Lien Credit Agreement.  If the First Priority Lien (as defined in the First Lien Credit Agreement) created by this Mortgage or any other interest of Mortgagee in the Collateral shall be endangered or shall be attacked, directly or indirectly, Mortgagor, at Mortgagor's expense, will take all necessary and proper steps for the defense of such interest, including the employment of counsel reasonably satisfactory to Mortgagee, the prosecution or defense of litigation, and the compromise or discharge of claims made against such interest.

4.3    Taxes on Mortgage.  If at any time any law shall be enacted imposing or authorizing the imposition of any tax, assessment or other fees upon this Mortgage, or upon any rights, titles, liens or security interests created hereby (not including, however, Excluded Taxes (as defined in the First Lien Credit Agreement)), Mortgagor shall pay all such taxes, assessments or other fees prior to delinquency except to the extent any such tax, assessment or fee is being

12

FL-First Lien Mortgage

Properly Contested as permitted by the First Lien Credit Agreement. If it is unlawful for Mortgagor to pay such taxes, assessments or other fees, then Mortgagor agrees to promptly reimburse Mortgagee for the amounts incurred by Mortgagee to pay such taxes, assessments or other fees.

4.4    Statements by Mortgagor. At the request of Mortgagee, Mortgagor shall furnish promptly a written statement or affidavit, in such form as may be reasonably required by Mortgagee, to confirm the unpaid principal balance of each of the Loans and that there are no offsets or defenses against full payment of the alleged Loans and performance of the terms of the First Lien Credit Agreement or, if there are any such offsets or defenses, specifying them.

4.5    Repair, Waste, Alterations, etc. Mortgagor shall take all commercially reasonable actions required to keep the Property, Improvements and FF&E in good operating order, repair and condition, ordinary wear and tear excepted, and shall not commit or permit any waste thereof. Mortgagor shall not suffer any lien of mechanics or materialmen to be perfected by the filing of any lawsuit therefor respecting any part of the Collateral, except for Permitted Encumbrances. If Mortgagor shall fail to discharge any such lien that has become final by judgment, then, in addition to any other right or remedy of Mortgagee, Mortgagee may, but shall not be obligated to, discharge the same, either by paying the amount claimed to be due, or by procuring the discharge of such lien by depositing in court a bond for the amount claimed, or otherwise giving security for such claim, or by taking such action as may be prescribed by law. Mortgagor shall have the right from time to time at its sole cost and expense to make additions, alterations and changes, whether structural or non-structural (hereinafter collectively referred to as "Alterations") in or to the Collateral; provided, however, that in all cases Mortgagor shall comply with the other provisions of this Mortgage, the First Lien Credit Agreement, the Collateral Documents (as defined in the First Lien Credit Agreement) and in all material respects with applicable law, and all Alterations to any buildings included in the Collateral shall be located wholly within the boundary lines of the Property, except for immaterial encroachments and alterations located on and with respect to which Mortgagor has received an irrevocable easement or similar right permitting the location of said Alteration or encroachment on such part of the Property. Notwithstanding anything herein to the contrary, Mortgagor shall have the right to remove and replace FF&E as Mortgagor may deem appropriate in the ordinary course of Mortgagor's business and as otherwise permitted under the First Lien Credit Agreement or under the Subject Leases, as applicable.

4.6    Hold Harmless. Mortgagor shall indemnify Mortgagee hereunder to the extent set forth in the Subsidiary Guaranty. The provisions of this Section 4.6 shall survive the payment in full of the Secured Obligations and the release of this Mortgage as to events occurring and causes of action arising before such payment and release.

4.7    Further Assurances.    At Mortgagee's request, Mortgagor shall execute, acknowledge, deliver, and record such further instruments and do such further acts as may be necessary, desirable or proper to carry out the purposes of this Mortgage and to subject to the

13

FL-First Lien Mortgage

liens and security interests created thereby, any property intended by the terms thereof to be covered thereby, including specifically but without limitation any renewals, additions, substitutions, replacements, improvements or appurtenances to the Collateral.

4.8     Recording and Filing. Mortgagor shall cause this Mortgage and any related financing statements and all amendments, supplements and extensions thereto and substitutions therefor to be recorded, filed, re-recorded and refiled, as necessary to carry out the purpose of this Mortgage, the Subsidiary Guaranty and the First Lien Credit Agreement, and shall pay all such recording, filing, re-recording and refiling fees, title insurance premiums and other charges.

4.9     Payment of Debts. Mortgagor shall promptly pay when due all its obligations regarding the ownership and operation of the Collateral except any such obligations which are being Properly Contested (as defined in the First Lien Credit Agreement) in good faith by appropriate proceedings and as to which Mortgagor shall have set aside adequate reserves in accordance with GAAP and to the extent required by the terms of the Subsidiary Guaranty, the First Lien Credit Agreement or the other Collateral Documents.

4.10     Environmental Compliance. Mortgagor shall promptly take any and all necessary remedial action in connection with the presence, handling, storage, use, disposal, transportation or Release (as defined in the First Lien Credit Agreement) or threatened Release of any Hazardous Materials (as defined in the First Lien Credit Agreement) on, under or affecting any Real Property Asset (as defined in the First Lien Credit Agreement) in order to comply in all material respects with all applicable Environmental Laws (as defined in the First Lien Credit Agreement) and Governmental Authorizations (as defined in the First Lien Credit Agreement). In the event Mortgagor undertakes any Cleanup (as defined in the First Lien Credit Agreement) action with respect to the presence, Release or threatened Release of any Hazardous Materials on or affecting any Real Property Asset, Mortgagor shall conduct and complete such Cleanup action in material compliance with all applicable Environmental Laws, and in accordance with the policies, orders and directives of all federal, state and local governmental authorities except when, and only to the extent that, Mortgagor's liability for such presence, handling, storage, use, disposal, transportation or Release or threatened Release of any Hazardous Materials is being Properly Contested.

4.11     Enforceability. This Mortgage constitutes a legal, valid and binding obligation of Mortgagor, enforceable against Mortgagor in accordance with its terms, except as enforceability may be limited by the effect of applicable bankruptcy, insolvency, reorganization, moratorium or, other similar laws affecting creditors' rights generally or the application of equitable principles.

4.12     No Violation; No Consents. The execution, delivery and performance of this Mortgage by Mortgagor will not violate, conflict with or constitute a breach of any of the terms or provisions of, or a default under (or an event that, with notice or the lapse of time, or both, would constitute a default), or require consent under, or result in the imposition of a lien on any properties of Mortgagor or an acceleration of indebtedness pursuant to: (i) Mortgagor's

14

FL-First Lien Mortgage

partnership agreement, limited liability company agreement or other organizational documents, (ii) any bond, debenture, note, credit agreement, mortgage, or other agreement or instrument to which Mortgagor is a party or by which it or its property is or may be bound, (iii) any statute, rule or regulation applicable to Mortgagor, or any of its assets or properties, or (iv) any judgment, order or decree of any court or governmental agency or authority having jurisdiction over Mortgagor, or any of its assets or properties except for those which, in the case of clauses (ii), (iii) and (iv) only, could not reasonably be expected to have a Material Adverse Effect. No consent, approval, authorization or other action by, or order of, or filing, registration, qualification, license or permit of or with, any court or governmental agency, body or administrative agency is required for the execution, delivery and performance by Mortgagor of this Mortgage. No consents or waivers from any other person or entity are required for the execution, delivery and performance by Mortgagor of this Mortgage, other than those that have already been obtained and delivered to Mortgagee.

4.13    _Security Interest_.  The Collateral is owned solely by Mortgagor.  As of the date hereof, (i) Mortgagee has either filed or caused to be filed or submitted for filing all financing statements and other instruments necessary to perfect its security interest in the Collateral (other than the RP Collateral), (ii) Mortgagee's security interests in the Collateral (other than the RP Collateral) are valid First Priority Liens and, upon the filings referenced in clause (i) above, will be perfected, (iii) there are no other liens on the Collateral or any portion thereof except for the Permitted Encumbrances, and (iv) no effective financing statement or similar instrument exists or is on file in any public office with respect to the Collateral, except for financing statements filed in connection with the First Lien Credit Agreement.

4.14    _Disposition of Collateral_.  Mortgagor will not sell, transfer, assign, pledge, collaterally assign, exchange or otherwise dispose of the Collateral, except as expressly permitted by the First Lien Credit Agreement.  If the Collateral, or any part thereof, is sold, transferred, assigned, exchanged, or otherwise disposed of in violation of these provisions, the security interests of Mortgagee shall continue in such Collateral or part thereof notwithstanding such sale, transfer, assignment, exchange or other disposition.

## ARTICLE 5.

## EVENTS OF DEFAULT

The occurrence of any one of the following shall be a default hereunder ("_Event of Default_"):

5.1    _Failure of Performance or Payment under the Subsidiary Guaranty_.  The failure by Mortgagor to perform or pay pursuant to any of the Guarantied Obligations under the Subsidiary Guaranty.  Mortgagor acknowledges that this provision has the effect of cross-defaulting this Mortgage with various collateral, guaranty and other documents respecting the Subsidiary Guaranty and the First Lien Credit Agreement.

15

FL-First Lien Mortgage

5.2    <u>Transfer of the Property</u>.  Any transfer of Mortgagor's interest with respect to all or any part of the Property, Improvements or FF&E other than dispositions expressly permitted under the Loan Documents.

5.3    <u>Filing of Notice.</u>  Unless filed by Mortgagee, any filing for record of a notice pursuant to Section 697.04, *Florida Statutes*, limiting the maximum principal amount that may be secured by this Mortgage, shall constitute an Event of Default hereunder.

5.4    <u>Performance of Defaulted Acts</u>.  From and after the occurrence and during the continuance of an Event of Default, Mortgagee may, but need not, make any payment or perform any act herein required of Mortgagor in any form and manner deemed expedient, including making full or partial payments of principal or interest on prior encumbrances, if any, making rental payments and purchasing, discharging, compromising or settling any tax lien or other prior lien or title or claim thereof, or redeeming from any tax sale or forfeiture affecting the Collateral or contesting any tax or assessment.  All moneys paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including reasonable attorneys' fees, shall be included among the Secured Obligations and shall be due and payable upon demand and with interest thereon from the date of such payment or expense at the rate of interest payable after default under the terms of the First Lien Credit Agreement.  Inaction of Mortgagee shall never be considered as a waiver of any right accruing to it hereunder on account of any default on the part of Mortgagor.  Mortgagee, making any payment hereby authorized relating to taxes or assessments, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof.

## ARTICLE 6.

## REMEDIES

6.1    <u>Exercise of Specific Remedies</u>.  Upon the occurrence of any of Event of Default, and during the continuation thereof, Mortgagee shall be entitled to exercise all rights and remedies of a mortgagee or secured party under the laws of the State of Florida ("<u>Florida Law</u>"), including, without limitation, the following rights and remedies:

(a)    Mortgagee may deem the Secured Obligations immediately due and payable without notice or declaration to the Mortgagor and without presentment, demand or other notice of any kind, all of which are hereby waived by Mortgagor.

(b)    Mortgagee shall have the right to foreclose this Mortgage by judicial procedure as provided by Florida Law for the foreclosure of mortgages on real property.

(c)    Mortgagee shall, to the extent permitted by Florida Law, have the right and power, but not the obligation, with or without the appointment of a receiver, to enter upon and take immediate possession of the RP Collateral or any part thereof, to exclude

FL-First Lien Mortgage

Mortgagor therefrom, to hold, use, operate, manage and control such real property, to make all such repairs, replacements, alterations, additions and improvements to the same as Mortgagee may deem proper, and to demand, collect and retain the Rents as provided in Article 2 hereof.

(d)     Mortgagee, with respect to any or all of the Collateral, shall have the right to petition for the appointment of a receiver, without bond, pending any foreclosure of this Mortgage, and such receiver shall have all the same rights with respect to the Collateral as Mortgagee, including, but not limited to, the rights set forth in Section 6.1(c) above.

(e)     Mortgagee shall have all of the rights and remedies of a secured creditor granted by New York Law, including the Code, as more particularly provided in Article 3 above, and shall, to the extent permitted by New York Law, have the right and power, but not the obligation, to take possession of the UCC Collateral, and for that purpose Mortgagee may enter upon the Property on which any or all of the UCC Collateral is located and take possession of and operate such UCC Collateral or remove the same therefrom. After the occurrence and during the continuation of an Event of Default, Mortgagee may require Mortgagor to assemble the UCC Collateral and make it available to Mortgagee at a place to be designated by Mortgagee which is reasonably convenient to both parties.

(f)     Mortgagee, in its sole discretion, may elect to treat the fixtures constituting a part of the Improvements as either RP Collateral or UCC Collateral and proceed to exercise such rights and remedies as apply to such type of collateral.

(g)     Mortgagee may exercise the power of sale granted by this Mortgage and, subject to the mandatory requirements of Florida Law, may sell or have sold the RP Collateral or interests therein or any part thereof at one or more public sales, as an entirety or in parcels, at such place or places and otherwise in such manner and upon such notice as may be required by Florida Law, by this Mortgage or, in the absence of any such requirement, as Mortgagee may deem appropriate. Mortgagor shall make a conveyance to the purchaser or purchasers thereof without, to the extent permitted by Florida Law, any warranties express or implied. Mortgagee may postpone the sale of such RP Collateral or interests therein or any part thereof by public announcement at the time and place of such sale, and from time to time thereafter may further postpone such sale by public announcement made at the time of sale fixed by the preceding postponement. Sale of a part of the RP Collateral or interests therein or any defective or irregular sale hereunder will not exhaust the power of sale, and sales may be made from time to time until all such property is sold without defect or irregularity or the Secured Obligations are paid in full. Mortgagee shall have the right to appoint one or more attorney(s)-in-fact to act in conducting the foreclosure sale and executing a deed to the purchaser. It shall not be necessary for any of the Collateral at any such sale to be physically present or constructively in the possession of Mortgagee and Mortgagor shall deliver all of the Collateral to the purchaser at such sale. If it should be impossible or impracticable to take actual delivery of the Collateral, then the title and right of possession to the Collateral shall pass to the purchaser at such sale as completely as if the same had been actually present and delivered.

17

FL-First Lien Mortgage

(h)     Mortgagee (or any successor to Mortgagee) shall have the right to become the purchaser at any sale made pursuant to the provisions of this Article 6 and shall have the right to credit upon the amount of the bid made therefor the amount payable to it out of the net proceeds of such sale.  All other sales shall be, to the extent permitted by Florida Law, on a cash basis.  Mortgagor does hereby ratify and confirm all legal acts that Mortgagee may do in carrying out the provisions of this Mortgage.

(i)     Any sale of the Collateral or any part thereof pursuant to the provisions of this Article 6 will operate to divest all right, title, interest, claim and demand of Mortgagors in and to the property sold and will be a perpetual bar against Mortgagor and all persons claiming by or through or under Mortgagor, subject to Florida Law.  Mortgagee is hereby irrevocably appointed the true and lawful attorney-in-fact of the Mortgagor, in the Mortgagor's name and stead, for the purpose of effectuating any such sale, to execute and deliver all necessary deeds, conveyances, assignments, bills of sale and other instruments with power to substitute one or more persons with like power.  Nevertheless, if requested by Mortgagee so to do, Mortgagor shall join in the execution, acknowledgment and delivery of all proper conveyances, assignments and transfers of the property so sold.  Any purchaser at a foreclosure sale will receive possession of the property purchased at the earliest time permitted under Florida Law, and Mortgagor agrees that if Mortgagor retains possession of the property or any part thereof subsequent to such sale, Mortgagor will be considered a tenant at sufferance of the purchaser, and will, if Mortgagor remains in possession after demand to remove, be guilty of forcible detainer and will be subject to eviction and removal, forcible or otherwise, with or without process of law, and all damages to Mortgagor by reason thereof are hereby expressly waived by Mortgagor, to the extent permitted by Florida Law.

(j)     Mortgagee, at its option, is authorized to cause foreclosure of this Mortgage subject to the rights of any tenants under Leases, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by Mortgagor, a defense at any proceedings instituted by Mortgagee to collect the Secured Obligations.

6.2     Cost and Expenses.  All reasonable costs and expenses (including reasonable attorneys' fees and legal expenses, title premiums, title report and work charges, filing fees, and mortgages, mortgage registration, transfer, stamp and other excise taxes, if any) incurred by Mortgagee or by Mortgagor in perfecting, protecting or enforcing its rights hereunder, whether or not an Event of Default shall have occurred, shall be a demand obligation of Mortgagor to Mortgagee, as applicable, and shall bear interest if unpaid commencing thirty (30) days following demand (except if an Event of Default exists and is continuing in which case interest shall begin to accrue immediately upon the incurrence of such cost or expense) at the highest rate then applicable under the First Lien Credit Agreement with respect to the Secured Obligations, all of which shall be part of the Secured Obligations.

18

FL-First Lien Mortgage

6.3     Application of Proceeds.  The proceeds of any sale of the Collateral or any part thereof made pursuant to this Article 6 shall be applied in accordance with the terms of the First Lien Credit Agreement, including but not limited to Section 2.8E thereof.

6.4     Combination of Remedies.  From and after the occurrence and during the continuance of an Event of Default, Mortgagee may, at its option, in such order, and utilizing such combinations of remedies with respect to the Collateral and the other property of Mortgagor encumbered by a Collateral Document as Mortgagee shall so elect, pursue its remedies against (a) the Collateral, individually, or any other property of a Loan Party (as defined in the First Lien Credit Agreement) encumbered by a Collateral Document, individually, (b) the Collateral and any combination of the other property of a Loan Party encumbered by a Collateral Document, (c) the Collateral and all of the other property of Mortgagor and any other Loan Party encumbered by a Collateral Document, or (d) all or any combination of the other property of Mortgagor and the other Loan Parties encumbered by a Collateral Document, in separate proceedings or in one proceeding in any order which Mortgagee deems appropriate, all to the fullest extent permitted under Florida Law.

6.5     Advice of Counsel; Waivers.  Mortgagor acknowledges that it is aware of and has had the advice of counsel of its choice with respect to its rights, under Florida Law, with respect to this Mortgage, the Secured Obligations and the Collateral.  Except to the extent expressly set forth in the First Lien Credit Agreement or any other Loan Document, Mortgagor hereby agrees that Mortgagor shall not at any time hereafter have or assert, and hereby waive to the extent permitted under Florida Law, any right under any law pertaining to:  marshalling, whether of assets or liens, the sale of property in the inverse order of alienation, the exemption of homesteads, the administration of estates of decedents, appraisement, valuation, stay, extension, reinstatement, redemption, subrogation, or abatement, suspension, deferment, diminution or reduction of any of the Secured Obligations (including setoff), now or hereafter in force.

## ARTICLE 7.

## GENERAL PROVISIONS

7.1     Mortgagor.  This Mortgage and all provisions hereof shall extend to and be binding upon Mortgagors and all persons claiming under or through Mortgagor.  Whenever in this Mortgage there is reference made to any of the parties hereto, such reference shall be deemed to include, wherever applicable, a reference to the heirs, executors and administrators or successors and assigns (as the case may be) of such party.  Mortgagor's successors and assigns shall include a receiver, trustee or debtor-in-possession of or for Mortgagor.  Mortgagee's assigns and successors shall include any successor Collateral Agent under the First Lien Credit Agreement.

7.2     Cumulative Rights Waiver; Modifications.  Each and every right, power and remedy hereby granted to Mortgagee shall be cumulative and not exclusive, and each and every right, power and remedy, whether specifically hereby granted or otherwise existing, may be

FL-First Lien Mortgage

exercised from time to time and as often and in such order as may be deemed expedient by Mortgagee and the exercise of any such right, power or remedy will not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy. No delay or omission by Mortgagee in the exercise of any right, power or remedy will impair any such right, power or remedy or operate as a waiver thereof or of any other right, power or remedy then or thereafter existing. Any and all covenants of Mortgagor in this Mortgage may from time to time, by instrument in writing signed by Mortgagee, be waived to such extent and in such manner as Mortgagee may desire, but no such waiver will ever affect or impair the rights of Mortgagee hereunder, except to the extent specifically stated in such written instrument. All changes to and modifications of this Mortgage must be in writing and signed by Mortgagor and Mortgagee.

7.3    Additional Documents. Mortgagor agrees that upon request of Mortgagee it will from time to time execute, acknowledge and deliver all such additional instruments and will do or cause to be done all such further acts and things as may be reasonably necessary fully to effectuate the intent of this Mortgage.

7.4    Notices. All notices and other communications under this Mortgage shall be in writing, except as otherwise provided in this Mortgage. A notice, if in writing, shall be considered as properly given if given in accordance with the provisions of the First Lien Credit Agreement.

7.5    Choice of Law. Without regard to principles of conflicts of law, this Mortgage shall be construed under and governed by the laws of the State of New York applicable to contracts made and to be performed entirely within such state and the laws of the United States of America. Notwithstanding the foregoing: (i) Florida Law shall govern with respect to procedural and substantive matters relating to the creation, perfection, priority and enforcement of the liens created by this Mortgage on the RP Collateral and (ii), if upon judicial foreclosure and sale in accordance with Florida Law a deficiency exists, Mortgagor agrees that Mortgagee shall have the right to seek a deficiency judgment against Mortgagor.

7.6    Time of Essence. Time is of the essence of this Mortgage and of every part hereof of which time is an element.

7.7    Severability. If any provision hereof or of any of the other documents constituting, evidencing or creating all or any part of the Secured Obligations is invalid or unenforceable in any jurisdiction, the other provisions hereof or of said documents shall remain in full force and effect in such jurisdiction. The invalidity of any provision of this Mortgage in any jurisdiction will not affect the validity or enforceability of any such provision in any other jurisdiction. If any lien, encumbrance or security interest evidenced or created by this Mortgage is invalid or unenforceable, in whole or in part, as to any part of the Secured Obligations, or is invalid or unenforceable, in whole or in part, as to any part of the Collateral, such portion, if any, of the Secured Obligations as is not secured by all of the Collateral hereunder shall be paid prior to the payment of the portion of the Secured Obligations secured by all of the Collateral, and all

20

FL-First Lien Mortgage

payments made on the Secured Obligations (including cash and/or property received in connection with sales of Collateral pursuant to Article 3 hereof) shall, unless prohibited by applicable law or unless Mortgagee, in its sole and absolute discretion, otherwise elects, be deemed and considered to have been first paid on and applied to payment in full of the unsecured or partially secured portion of the Secured Obligations, and the remainder to the secured portion of the Secured Obligations.

7.8     Mortgagee's Powers.  Without affecting the liability of any other person liable for the payment of any Obligation herein mentioned, and without affecting the lien or charge of this Mortgage upon any portion of the Collateral not then or theretofore released as security for the full amount of all unpaid Secured Obligations, Mortgagee may, from time to time and without notice, (a) release any persons liable, (b) extend the maturity or alter any of the terms of any such Obligation, (c) permit the issuance of additional Loans and/or indebtedness under the First Lien Credit Agreement, (d) grant other indulgences, (e) release or reconvey, or cause to be released or reconveyed at any time at Mortgagee's option any parcel, portion or all of the Collateral, (f) take or release any other or additional security for any obligation herein mentioned, or (g) make compositions or other arrangements with Mortgagor in relation thereto.

7.9     Enforceability of Mortgage.  This Mortgage is deemed to be and may be enforced from time to time as an assignment, chattel mortgage, contract, Mortgage (as defined in the First Lien Credit Agreement), deed to secure debt, fixture filing, real estate mortgage, or security agreement, and from time to time as any one or more thereof, as is appropriate and permitted under applicable law.  A carbon, photographic or other reproduction of this Mortgage or any financing statement in connection herewith shall be sufficient as a financing statement for any and all purposes to the fullest extent permitted under applicable law.

7.10     Captions.  The captions or headings at the beginning of Articles and Sections hereof are for the convenience of the parties and are not part of this Mortgage.

7.11     Attorneys' Fees.  In connection with any enforcement of Mortgagee's rights under this Mortgage (and in addition to all rights for fees and costs provided for under the First Lien Credit Agreement), Mortgagor promises to pay Mortgagee all costs of enforcement and collection, including reasonable attorneys' fees actually incurred, whether or not such enforcement and collection includes the filing of a lawsuit, including, without limitation, any and all such reasonable fees and expenses actually incurred in connection with litigation, mediation, arbitration, other alternative dispute processes, administrative proceedings and bankruptcy proceedings, and any and all appeals from any of the foregoing.

7.12     Relationship of Parties.  The relationship between Mortgagor and Mortgagee is that of guarantor and lender only and neither Mortgagor nor Mortgagee is, nor shall it hold itself out to be, the agent, employee, joint venturer or partner of the other.

7.13     Collateral Agent.  Mortgagee, in its capacity as the Collateral Agent, will hold all items of Collateral at any time received under this Mortgage or the other Loan Documents in

FL-First Lien Mortgage

accordance with the terms of the First Lien Credit Agreement. It is expressly understood and agreed that the obligations of Mortgagee in its capacity as the Collateral Agent (and holder of the Collateral and interests therein and with respect to the disposition thereof) are only those expressly set forth in the First Lien Credit Agreement and the Subsidiary Guaranty.

7.14    Waiver of Jury Trial. EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR ANY OTHER LOAN DOCUMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY OR THEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY). EACH PARTY HERETO (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PERSON HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PERSON WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT AND THE LOAN DOCUMENTS BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

7.15    Intercreditor Agreement. Notwithstanding anything to the contrary contained herein, the lien and security interest granted to Mortgagee pursuant to this Mortgage and the exercise of any right or remedy by Mortgagee hereunder are subject to the provisions of the Intercreditor Agreement. In the event of any conflict between the terms and provisions of the Intercreditor Agreement and the terms and provisions of this Mortgage, the terms and provisions of the Intercreditor Agreement shall govern and control.

7.16    Future Advance. This Mortgage is given to secure not only existing indebtedness, but also such future advances, whether such advances are obligatory or are to be made at the option of the Mortgagee, or otherwise, as are made within twenty years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage. The total amount of indebtedness that may be so secured may decrease or increase from time to time, but the total unpaid balance so secured at one time shall not exceed $1,050,000,000, plus interest thereon, and any disbursements made for the payment of taxes, levies or insurance on the Property, plus interest thereon.

## [SIGNATURES ON THE FOLLOWING PAGE]

22

FL-First Lien Mortgage

IN WITNESS WHEREOF, Mortgagor has executed this instrument the day and year first above written.

| SIGNED IN THE PRESENCE OF: | TESORO MORTGAGOR: |
|---|---|
| *(Signature)* | **GINN-LA ST. LUCIE LTD., LLLP,**<br>a Georgia limited liability limited partnership |
| Benjamin Polon<br>(Printed Name) | By:   Ginn- St. Lucie GP,  LLC,<br>      its general partner<br><br>By:<br>Name:  Robert F. Masters<br>Title:   President<br><br>Post Office Address:<br>215 Celebration Place, Suite 200, Celebration, Florida 34747<br><br>[CORPORATE SEAL] |
| SIGNED IN THE PRESENCE OF: | BULOW MORTGAGOR: |
| *(Signature)* | **HAMMOCK BEACH RIVER CLUB, LLC,**<br>a Georgia limited liability company |
| Benjamin Polon<br>(Printed Name) | By:<br>Name: Robert F. Masters<br>Title:  President<br><br>Post Office Address:<br>215 Celebration Place, Suite 200, Celebration, Florida 34747<br><br>[CORPORATE SEAL] |

First Lien Mortgage
(Florida)

| SIGNED IN THE PRESENCE OF: | QUAIL WEST MORTGAGOR: |
|---|---|
| *(Signature)*<br><br>Benjamin Polen<br>(Printed Name) | **GINN-LA QUAIL WEST LTD., LLLP**, a Georgia limited liability limited partnership<br><br>By:Ginn-Quail West GP, LLC, a Georgia limited liability company<br>By:<br>Name: Robert F. Masters<br>Title:   President<br><br>Post Office Address:<br>215 Celebration Place, Suite 200, Celebration, Florida 34747<br><br>[CORPORATE SEAL] |
| SIGNED IN THE PRESENCE OF: | QUAIL WEST BEACH MORTGAGOR: |
| *(Signature)*<br><br>Benjamin Polen<br>(Printed Name) | **GINN QUAIL WEST BEACH, LLC,**<br>a Georgia limited liability company<br><br>By:<br>Name: Robert F. Masters<br>Title:  President<br><br>Post Office Address:<br>215 Celebration Place, Suite 200, Celebration, Florida 34747<br><br>[CORPORATE SEAL] |
| SIGNED IN THE PRESENCE OF: | TESORO CLUB MORTGAGOR: |
| *(Signature)*<br><br>Benjamin Polen<br>(Printed Name) | **THE TESORO CLUB, LLC ,**<br>a Georgia limited liability company<br><br>By:<br>Name: Robert F. Masters<br>Title:  President<br><br>Post Office Address:<br>215 Celebration Place, Suite 200, Celebration, Florida 34747<br><br>[CORPORATE SEAL] |

First Lien Mortgage
(Florida)

STATE OF NEW YORK

COUNTY OF NEW YORK

The foregoing instrument was acknowledged before me this _5_ day of June, 2006, by Robert F. Masters as President of Ginn–St. Lucie GP, LLC, a Georgia limited liability company, on behalf of the limited liability company, as the general partner of Ginn-LA St. Lucie Ltd., LLLP, a Georgia limited liability limited partnership, who is personally known to me or has produced _____ (state) driver's license or _____ as identification.

My Commission Expires:

(AFFIX NOTARY SEAL)

_____
Notary Public (Signature)

_____
(Printed Name)

MARK M. LESKIW
Notary Public, State of New York
No. 01LE4945303
Qualified in New York County
Commission Expires December 19, 2006

STATE OF NEW YORK

COUNTY OF NEW YORK

The foregoing instrument was acknowledged before me this _5th_ day of June, 2006, by Robert F. Masters as President of Hammock Beach River Club, LLC, a Georgia limited liability company, on behalf of the limited liability company, who is personally known to me or has produced _____ (state) driver's license or _____ as identification.

My Commission Expires:

(AFFIX NOTARY SEAL)

_____
Notary Public (Signature)

_____
(Printed Name)

MARK M. LESKIW
Notary Public, State of New York
No. 01LE4945303
Qualified in New York County
Commission Expires December 19, 2006

First Lien Mortgage
(Florida)

STATE OF NEW YORK
COUNTY OF NEW YORK

 The foregoing instrument was acknowledged before me this \_\_\_ day of June, 2006, by Robert F. Masters as President of Ginn–Quail West GP, LLC, a Georgia limited liability company, on behalf of the limited liability company, as the general partner of Ginn-LA Quail West Ltd., LLLP, a Georgia limited liability limited partnership, who is personally known to me or has produced _____ (state) driver's license or _____ as identification.

My Commission Expires:

(AFFIX NOTARY SEAL)

       _____
         Notary Public (Signature)
       _____
         (Printed Name)

         MARK M. LESKIW
        Notary Public, State of New York
         No. 01LE4945303
        Qualified in New York County
       Commission Expires December 19, 2006

STATE OF NEW YORK

COUNTY OF NEW YORK

 The foregoing instrument was acknowledged before me this \_\_\_ day of June, 2006, by Robert F. Masters as President of Ginn Quail West Beach, LLC, a Georgia limited liability company, on behalf of the limited liability company, who is personally known to me or has produced _____ (state) driver's license or _____ as identification.

My Commission Expires:

(AFFIX NOTARY SEAL)

       _____
         Notary Public (Signature)
       _____
         (Printed Name)

         MARK M. LESKIW
        Notary Public, State of New York
         No. 01LE4945303
        Qualified in New York County
       Commission Expires December 19, 2006

First Lien Mortgage
(Florida)

STATE OF NEW YORK

COUNTY OF NEW YORK

    The foregoing instrument was acknowledged before me this _____ day of June, 2006, by Robert F. Masters as President of The Tesoro Club, LLC, a Georgia limited liability company, on behalf of the limited liability company, who is personally known to me or has produced _____ (state) driver's license or _____ as identification.

My Commission Expires:

(AFFIX NOTARY SEAL)

                                    _____
                                      Notary Public (Signature)

                                      _____
                                      (Printed Name)

                                      MARK M. LESKIW
                              Notary Public, State of New York
                              No. 01LE4945303
                            Qualified in New York County
                    Commission Expires December 19, 2006

First Lien Mortgage
(Florida)