

**ORDERED in the Southern District of Florida on May 27, 2011.**

**Paul G. Hyman Jr., Chief Judge**
**United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

| | |
|---|---|
| In re: | Chapter 7 |
| GINN-LA ST. LUCIE LTD., LLLP, *et al.*, | Case No. 08-29769-BKC-PGH (Jointly Administered) |
| Debtors. _____/ | |
| Drew M. Dillworth, Trustee, | |
| Plaintiff, | |
| vs. | Adv. Case No. 10-2976-PGH-A |
| Edward R. Ginn, III, *et al.*, | |
| Defendants. _____/ | |

<u>**ORDER: 1) DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND ORDER ON MOTIONS TO DISMISS; AND 2) GRANTING ALTERNATIVE REQUEST FOR CERTIFICATION OF FINAL JUDGMENT AS TO DISMISSAL OF LOAN PROCEEDS CLAIMS**</u>

**THIS MATTER** came before the Court upon Drew M. Dillworth's ("Plaintiff" or "Trustee") *Motion To Alter Or Amend Order On Motions To Dismiss Or, Alternatively, For Certification Of Final Judgment As To Dismissal Of Loan Proceeds Claims* ("Motion") (D.E. #235). In the April 18, 2011 *Order Granting In Part And Denying In Part Lubert-Adler's And The Investor Defendants' Motions To Dismiss* ("Order"), the Court dismissed with prejudice the Loan Proceeds Counts set forth in Counts I-VI of the Third Amended Complaint and the Lien Counts set forth in Counts VII-XII of the Third Amended Complaint to the extent the Lien Counts asserted claims in respect of the First Liens.[1] The Order also dismissed the Lien Counts without prejudice to the extent they attempted to assert claims in respect of the Second Liens, and granted the Trustee leave to amend the Third Amended Complaint to assert such claims. The Trustee's Motion now seeks reconsideration of the Order, and asks the Court to either reinstate the claims that were dismissed with prejudice or grant leave to amend. Alternatively, the Trustee seeks certification, pursuant to Fed. R. Civ. P. 54(b), that the Order dismissing the Loan Proceeds is a final judgment subject to appeal.

*The Order*

The Third Amended Complaint contained alternative counts which identified two potential transfers that the Trustee sought to avoid and recover. The first transfer was of $148 million dollars in Credit Suisse Loan Proceeds. The second transfer was of Liens on substantially all of the Debtors' assets which secured the

---

[1] Capitalized terms, not otherwise defined herein, shall have the same meaning ascribed to the term in the Order.

Debtors' guaranties in the Credit Suisse Transaction. The Order determined that the Third Amended Complaint's allegations failed to establish that the Credit Suisse Loan Proceeds were the Debtors' property. This determination was critical to the Court's analysis, because if the Loan Proceeds were not the Debtors' property, the funds were not subject to avoidance and recovery under applicable fraudulent conveyance law.  Therefore, the Court dismissed the Loan Proceeds Counts with prejudice.  In contrast to the Loan Proceeds not being the Debtors' property, there was no dispute that the First Liens and Second Liens, on substantially all of the Debtors' assets which secured the Credit Suisse loans, were property of the Debtors. In the Court's view, this second transfer - of the Liens to Credit Suisse - was the appropriate cause of action for the Trustee to pursue.  However, early in this bankruptcy, in return for post-petition financing by Credit Suisse, the Trustee sought and received Court orders deeming the First Liens "unavoidable" and releasing Credit Suisse from claims.  Consequently, based upon the law of the case, the Court determined that the First Liens were not subject to avoidance, and therefore, the value of the First Liens could not be recovered by the Trustee.  Thus, the Court also dismissed with prejudice the Lien Counts with respect to claims concerning the First Liens.  As to the Trustee's claims respecting the Second Liens, the Court granted leave to amend because the Third Amended Complaint did not allege the value of the Second Lien claims and it did not distinguish between the First and Second Liens in the Lien Counts.

*Motion to Alter or Amend Judgment*

Federal Rule of Civil Procedure 59(e), made applicable to bankruptcy proceedings by Bankruptcy Rule 9023, allows bankruptcy courts to reconsider orders and judgments after their entry. A motion to alter or amend an order or judgment shall be filed no later than 14 days after entry of that order or judgment. *See* Fed. R. Bankr. P. 9023. The Trustee's Motion was timely filed, and thus the Court has jurisdiction to review it.

Under Federal Rule of Civil Procedure 59(e), a court may grant a motion to alter or amend an order or judgment if the movant presents: (1) newly discovered evidence that was not available at the time of trial, or (2) evidence in the record that clearly establishes manifest error of law or fact. *See In re Prince*, 85 F.3d 314 (7th Cir. 1996); *In re Investors Fla. Aggressive Growth Fund, Ltd.*, 168 B.R. 760 (Bankr. N.D. Fla. 1994). The Trustee's Motion asserts that the Order's analysis is flawed resulting in a manifest error of law or fact based upon the evidence in the record. However, in an obtuse footnote, the Motion also states that since filing the Third Amended Complaint, "the Trustee has obtained discovery of many thousands of additional documents which provide insight to 'evaluating the transaction in its entirety.' . . . Thus, at the very least, the Court should permit leave to amend as to the Loan Proceeds Claims to permit further development thereof." Mot. at 7 n.3. This footnote suggests, but does not affirmatively assert, that there exists newly discovered evidence not available at the time of the hearing that would change the result in this matter. The Court notes that newly discovered evidence which is

4

merely cumulative and would not have changed the result does not provide grounds for Rule 59 relief. *See Trans Mississippi Corp. v. United States*, 494 F.2d 770, 773 (5th Cir. 1974) (evidence that is "merely cumulative or impeaching is not generally within the canon of 'newly discovered evidence' for Rule 59 or Rule 60(b) purposes"). Since the Trustee presented no specific "newly discovered evidence" that would cause the Court to alter the Order, the only Rule 59 issue before the Court is whether the Order contained a manifest error of law or fact.

A.   *Loan Proceeds Counts*

The Motion argues that, with respect to the Loan Proceeds Counts, the Court failed to accept all well-pled factual allegations as true and ignored core supporting documents which were submitted to the Court without objection. The Motion further states that the Third Amended Complaint "expressly alleges that the transfers of loan proceeds allocated to the Debtors were transfers of Debtor property." Mot. at 5. In the Eleventh Circuit, property of the debtor is determined by the control test. *See Order* at 9-16 (discussing development of the control test in the Eleventh Circuit). The Order found that the Third Amended Complaint's conclusory allegations - that the Loan Proceeds were property of the Debtors - were unsupported by the documents cited. As stated in the Order, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1954 (2009). The viability of the Trustee's fraudulent transfer claims concerning the Credit Suisse Transaction requires that there be a "transfer of property of the debtor". *See* 11 U.S.C. § 544.  Of

the two alleged transfers identified in the Third Amended Complaint, the Liens which secured the Debtors' guaranties were undisputedly property of the Debtors, however, the Loan Proceeds were not. Nevertheless, the Court will address the Trustee's arguments purporting to show that the allegations, taken as true, evidence that the Loan Proceeds were property of the Debtor.

The Trustee's Motion presents a hypothetical scenario which asks the Court to consider "the situation that would have existed if the Debtors had been placed into bankruptcy on June 8, 2006, after the Credit Suisse Loans had been closed and funded, but before the transfers of the loan proceeds sought to be avoided herein were made." Mot. at 3. The Motion states that at this point in time Ginn-LA CS Borrower, LLC and Ginn-LA Conduit Lender, LLC (collectively, the "Borrowers") had some $325 million sitting in bank accounts, of which $148 million had been allocated to the Debtors and set aside for distribution to insiders of the Debtors as "Funds from a Capital Event *originating from* [the Debtors]." *Id.* (*quoting* Ginn-LA CS Holding, LLC Limited Liability Company Agreement, ¶ 5.2) (emphasis in original). The Motion then asks, when viewed at this point in time, is there any doubt that the Loan Proceeds allocated to the Debtors and set aside for distribution as funds from a capital event originating from the Debtors would have been treated as property of the Debtors' estates? The Trustee's hypothetical is unpersuasive. The Court finds that whether viewed after the loan closed but before the transfers were made, or viewed as of the petition date, the Debtors' lack of control over the Loan Proceeds remains unchanged.

At the outset, the Court notes that the Debtors were not parties to the Ginn-LA CS Borrower, LLC Limited Liability Company Agreement. In addition, that agreement defines the term "capital event" as:

> i) any sale, exchange, disposition of all or substantially all of the assets of the Property Owner (or the sale of all of the interests in the Property Owner), ii) any financing or refinancing of any Property Owner assets, other than the initial financing, iii) any casualty to any Property Owner property, iv) a condemnation of any Property Owner property, or v) any other capital event with respect to any Property Owner property.

Mot. Ex. 1: *Ginn-LA CS Holding, LLC Agree.*, Art. II. The Third Amended Complaint does not allege that the distributable Loan Proceeds originated from a capital event within the meaning of subsections (i), (iii) or (iv), *i.e.,* from a sale, casualty, or condemnation of the Debtors' property. The applicable capital event definition, consistent with the Trustee's argument, is subsection (ii) "any financing or refinancing" of the Debtors' assets. Indeed, the Trustee's Motion cites Lubert-Adler Defendants correspondence, accompanying distributions to the Fund III and IV Investors, stating that the distributions were generated by the refinance of the Debtors. However, even if the distributions originated from a refinancing of the Debtors' assets, it does not follow that the Loan Proceeds were property of the Debtors where, as here, the Debtors were guarantors, not borrowers, in the Credit Suisse Transaction.[2] It is undisputed that the Debtors pledged their assets to secure their guaranties in the Credit Suisse Transaction. Such encumbrance of the Debtors' assets is indeed a "financing or refinancing" of the assets pledged. However, when a party grants liens to support its guaranty of a loan, the proceeds

---

[2] The Court notes that the Trustee's Motion does not contest the Court's finding that the Debtors were guarantors and not borrowers in the Credit Suisse Transaction.

of the loan do not become the property of the guarantor, despite the fact that the guarantor's assets are "refinanced" upon guaranty of the liens. In this case, the refinance of the Debtors' assets, upon transfer of Liens to support the Debtors' guaranties of the Credit Suisse loan, does not make the Loan Proceeds themselves property of the Debtors.

In further support of the argument that the Debtors had a property interest in the Loan Proceeds, the Motion notes the change in the Debtors' internal balance sheets "which reflect a dramatic change in June 2006 as a consequence of the loan transaction and the transfer of loan proceeds allocated to the Debtors". Mot. at 5. However, once again, this change in balance sheet evidences the Debtors' liability that arose as a consequence of their guaranties of the debt to Credit Suisse, it does not evidence that the Debtors had any control over the Loan Proceeds themselves which in turn could establish that the Debtors had an avoidable property interest in the Loan Proceeds.  Indeed, the Motion itself concedes that the Debtors did not have possession or control of the Loan Proceeds which were "sitting in bank accounts" of the Borrowers. *Id.*  One of the Borrowers, Ginn-LA CS Borrower, LLC, was the parent of the Debtors.  A subsidiary entity does not control the property of its parent.

The Motion also takes issue with the Court "[i]nterpreting Defendants' sworn statement that the transfers of loan proceeds at issue were made 'pursuant to the terms of' the Debtors' operating agreements to mean merely that the transfers were made 'in keeping with' the Debtors' operating agreements." Mot. at 6.  The sworn

8

statement referred to is the Defendants' answers to interrogatories. The interrogatory question asked the Defendant to identify the consideration or value received by the Debtor in exchange for: "a) the portion of loan proceeds distribution credited to the Debtors; b) the guaranties they issued in connection with the loan transaction; and c) the liens they issued in connection with the loan transaction." *See Order* at 21. As the Trustee correctly points out, the Defendants' answers to interrogatories state that the transfers to the Lubert-Adler Fund investment limited partnerships were made pursuant to the terms of the Debtor's respective operating agreements which provided for distributions in a certain order of priority. The Court notes that before providing its answers, the Defendants objected to the interrogatory as being confusing. Perhaps this explains why the Defendants' answer does not appear to be responsive to the question asked. Nevertheless, the Court notes that the question itself indicates that while a portion of the Loan Proceeds distribution was credited to the Debtors, the Debtors actually granted Liens in connection with the Credit Suisse Transaction. Thus, the Trustee's interrogatory question implicitly recognizes that the Loan Proceeds were not property of the Debtors, while the assets subject to the Liens were. The Court further notes that being "credited" with a portion of the Loan Proceeds distribution is not equivalent to actually receiving the Loan Proceeds or being able to exercise control over the Loan Proceeds. The Court notes that the language in the Order that the Trustee takes issue with was intended to convey that while the Debtors' operating agreements may have contained the same scheme of distribution, and

9

thus been "in keeping" with the First Lien Credit Agreement, the distribution of the Loan Proceeds was made pursuant to section 2.9 of the First Lien Credit Agreement, which was one of the principal documents in the Credit Suisse Transaction.  The Debtors were not parties to the First Lien Credit Agreement, nor does it appear that the Debtors' operating agreements were included among the documents in the Credit Suisse Transaction. However, even if the Loan Proceeds were distributed pursuant to the Debtors' respective operating agreements, it does not establish the Debtors' control over the Loan Proceeds.  There is no allegation, or even a suggestion, that the Debtors could have altered the scheme of distribution or otherwise exercised any dispositive control over the Loan Proceeds. The Court is not persuaded by the Motion's hypothetical.  Whether viewed on June 8, 2006, after the Credit Suisse Transaction closed but before the Loan Proceeds were transferred to the Defendants, or viewed as of the petition date, the conclusion that the Loan Proceeds were not property of the Debtors remains unchanged.

The Motion also points to a "smoking gun" email exchange between Ginn executive Robert Masters and Lubert-Adler principal Neil Faucett.  While the emails may be evidence of an intentionally fraudulent act, it begs the question what can the Trustee recover and from whom?  In order to recover in an action based on fraudulent transfers, there must have been an actual transfer of property of the Debtors.  While the assets subject to the Liens were property of the Debtors, the Loan Proceeds were not, and therefore the Loan Proceeds may not be recovered by the Trustee in a fraudulent conveyance action.  As to the Motion's argument for

imposition of a constructive trust, the Court notes that Third Amended Complaint contains no allegations, nor seeks any relief, concerning imposition of a constructive trust.

The Trustee urges the Court to "step back and evaluate [the] transaction in its entirety to make sure that [its] conclusions are logical and equitable." *In re Harwell*, 628 F.3d 1312, 1319 (11th Cir. 2010) (*quoting Nordberg v. Societe Generale*, 848 F.2d 1196, 1199 (11th Cir. 1988)). Stepping back and evaluating the Credit Suisse Transaction in its entirety to make sure that its conclusions are logical and equitable, convinces the Court that the correct cause of action would have been avoidance of the Lien transfers because the Debtors had no control of, and consequently no property interest in, the Loan Proceeds themselves.

*B. Lien Counts – First Liens*

The Motion also asserts that there appears to be some confusion regarding the nature of the relief sought in the Lien Counts. Specifically, the Motion states that the Lien Claims do not seek to avoid the direct transfer of the Liens to Credit Suisse, but rather, the corresponding indirect transfer benefitting the Defendants. The Court was not confused in entering its findings of fact and conclusions of law. The Trustee in his Supplemental Memorandum (D.E. #223) relied upon *American Bank of Martin County v. Leasing Service Corp. (In re Air Conditioning, Inc. of Stuart)*, 845 F.2d 293 (11th Cir. 1988), and *Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.)*, 831 F.2d 586 (5th Cir. 1988), to argue that the Defendants were transfer beneficiaries within the meaning of § 550(a)(1). In *Air Conditioning,* the

debtor transferred a certificate of deposit to a bank to secure a letter of credit for the benefit of a creditor holding an antecedent unsecured debt. While noting that "neither a letter of credit nor its proceeds are property of the debtor's estate," the Eleventh Circuit agreed with the Fifth Circuit's opinion in *Compton* that "a creditor can receive an indirect benefit in the letter of credit context sufficient to meet the requirement" of a voidable preference under § 547. 845 F.2d at 296. In affirming the district court's determination that the trustee could recover the proceeds paid to the creditor from a letter of credit secured by the debtor's transfer of a certificate of deposit, the Eleventh Circuit noted that "[t]he district court did this primarily to uphold the sanctity of letters of credit as vital instruments of commerce[.]" *Id.* at 299. Both *Air Conditioning and Compton* address the unique circumstances presented in letter of credit arrangements. The Trustee would have this Court extend the limited holding of *Air Conditioning* even though the sanctity of letters of credit as vital instruments of commerce is not at issue in this case. Here, there is no letter of credit that would preclude claims against Credit Suisse, the recipient of the Liens. *See TOUSA, Inc.*, 444 B.R. 613, 679 (S.D. Fla. 2011) ("the holdings in both *Air Conditioning* and *Kellogg v. Blue Quail Energy, Inc. (In re Compton Corp.),* 831 F.2d 586 (5th Cir.1988), which the Eleventh Circuit relied on in *Air Conditioning*, were limited to banking disputes concerning letters of credit or certificates of deposit"). Furthermore, *Air Conditioning* does not control the outcome in this matter because, "the focus of the Eleventh Circuit in *Air Conditioning* was on Section 547—not Section 550—of the Bankruptcy Code. *Id.* at 678. [3]

---

[3] The Motion also cites *In re Craig*, 144 F.3d 587 (8th Cir. 1998) as a fraudulent transfer case

*Rule 54(b) Certification*

The Trustee's Motion alternatively requests that the Court direct entry of a final judgment as to the Loan Proceeds Counts pursuant to Fed. R. Civ. P. 54(b), which provides in pertinent part:

> Judgment on Multiple Claims or Involving Multiple Parties. When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. . . .

Fed. R. Civ. P. 54(b). Pursuant to Rule 54(b), a court dealing with multiple claims may direct entry of a final judgment as to fewer than all of the claims upon an express determination that there is no just reason for delay. In *Lloyd Noland Foundation, Inc., v. Tenet Health Care Corp.,* the Eleventh Circuit set forth the two-step analysis required for certification of a partial final judgment under Rule 54(b):

> First, the court must determine that its final judgment is, in fact, both "final" and a "judgment." *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7, 100 S.Ct. 1460, 1464, 64 L.Ed.2d 1 (1980). That is, the court's decision must be "'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action,'" and a "'judgment' in the sense that it is a decision upon a cognizable claim for relief." *Id.* (citing *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 436, 76 S.Ct. 895, 900, 100 L.Ed. 1297 (1956)). Second, having found that the decision was a final judgment, the district court must then determine that there is no "just reason for delay" in certifying it as final and immediately appealable. *Id.* at 8, 100 S.Ct. at 1465. This inquiry is required because "[n]ot all final judgments on individual claims should be immediately appealable." *Id.* The district court must act as a "dispatcher" and exercise its discretion in certifying partial judgments in consideration of "judicial administrative interests" - including "'the historic

---

involving the allocation of loan proceeds in which the indirect transfer doctrine was applied. The *Craig* court determined that the debtor's allocation of loan proceeds to pay for a residence titled in his wife's name was an indirect fraudulent transfer to the debtor's wife. *Craig* is inapposite because the debtor controlled how the loan proceeds were used. The Debtors here had no such dispositive control.

federal policy against piecemeal appeals'" - and "the equities involved." *Id.* (quoting *Sears, Roebuck & Co.*, 351 U.S. at 438, 76 S.Ct. at 901).

483 F.3d 773, 777-78 (11th Cir. 2007). In order to be considered final, a judgment must dispose entirely of a separable claim. *Id.* at 779. "[T]he touchstone for determining whether an entire 'claim' has been adjudicated for the purposes of Rule 54(b) is whether that claim is 'separately enforceable' without 'mutually exclu[ding]' or 'substantially overlap[ping]' with remedies being sought by the remaining claims pending in the district court." *Id.* at 780 (*citing Brandt v. Bassett (In re Southeast Banking Corp.),* 69 F.3d 1539, 1547 (11th Cir. 1995)). In this case, the Third Amended Complaint included ten counts, five counts sought avoidance and recovery of $148 million of Credit Suisse Loan Proceeds alleged to have been fraudulently transferred, and five counts sought recovery of the diminution of the value of the First and Second Liens alleged to have been fraudulently transferred. The Lien Counts have been partially adjudicated. The Order dismissed with prejudice the Lien Counts insofar as they asserted claims respecting the First Liens, but as to claims respecting the Second Liens, the Trustee was granted leave to amend. However, the dismissal with prejudice of the Loan Proceeds Counts is a final judgment separately enforceable from the Lien Counts. The remedy sought in the Loan Proceeds Counts, recovery of $148 million in Credit Suisse Loan Proceeds, does not exclude or overlap recovery of the diminution in value of the Liens, the remedy sought in the Lien Counts. Having determined that the dismissal of the Loan Proceeds Counts is a final judgment disposing entirely of the Loan Proceeds claims, the Court finds that there is no just reason for delay in certifying the

14

judgment as final and immediately appealable. *See id.* at 777. In making this determination, the Court "must take into account judicial administrative interests as well as the equities involved." *Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1, 8, 100 S.Ct. 1460, 1465 (1980). "Consideration of the former is necessary to assure that application of the Rule effectively 'preserves the historic federal policy against piecemeal appeals.'" *Id.* (citations omitted). The factors considered in the interest of sound judicial administration include whether the claims under review are separable from others remaining to be adjudicated, and whether the nature of claims already determined are such that a reviewing court need not decide the same issues more than once in any subsequent appeals. *Id.* In this matter, the claims are independent of each other, and the concern for piecemeal appeals is not implicated. Having found that there is no just reason for delay, the Court finds that the equities favor entry of final judgment to permit immediate appeal of the Loan Proceeds claims. While it is this Court's view that given the facts alleged the Loan Proceeds Counts are not the appropriate cause of action, review of the Court's decision at this stage will assist the Trustee to ascertain what claims may be prosecuted to recover the losses stemming from the egregious and intentionally fraudulent conduct alleged. Therefore, the Court certifies that dismissal of the Loan Proceeds Counts is a final judgment pursuant to Rule 54(b).

*Conclusion*

For the reasons stated above, the Court finds that there is no basis to grant the Trustee's request for Rule 59 relief to alter or amend the Order. The Third

15

Amended Complaint identified two fraudulent transfers which the Trustee sought to avoid and recover. The Order dismissed the Loan Proceeds claims with prejudice because the Third Amended Complaint's allegations failed to show that the Loan Proceeds were property of the Debtors, a statutory requirement to prosecute a fraudulent transfer action. It remains this Court's view that the Lien Counts, rather than the Loan Proceeds Counts, was the appropriate cause of action for the Trustee to pursue. However, early in this bankruptcy, the Trustee sought and received this Court's approval to release Credit Suisse from claims and to deem the First Liens not subject to avoidance. Therefore, pursuant to the law of the case, the Trustee's cause of action to avoid and recover the value of the First Liens is untenable.

Thus, while the Court denies the Trustee's request to alter or amend the judgment, the Court finds that dismissal of the Loan Proceeds Counts is a final judgment, separate and independent from the partially adjudicated Lien Counts. In addition there is no just reason to delay certification of the Loan Proceeds Counts as a final judgment subject to appeal pursuant to Rule 54(b).

*Order*

The Court, having reviewed the Motion, the record in this case, the applicable law, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Motion is **granted in part** and **denied in part**. The Court **denies** the Trustee's Rule 59 request to alter or amend the Order, and **grants** the Trustee's request to certify that the Court's Order dismissing the Loan Proceeds Counts is a final judgment pursuant to Rule 54(b).

2. Contemporaneously herewith, the Court will enter a separate final judgment pursuant to Rule 7058.

### # # #

Copies furnished to:

Mr. Stearns, Esq.
Mr. Singerman, Esq.
Mr. Busey, Esq.
Mr. Throckmorton, Esq.
Mr. Baena, Esq.

The Trustee is directed to serve a copy of this order on any interested parties who do not receive electronic service.

Case 10-02976-PGH    Doc 245    Filed 05/27/11    Page 17 of 17