## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### West Palm Beach Division
### www.flsb.uscourts.gov

|  |  |  |
|---|---|---|
| In re: | : | **CASE NO. 08-29769(PGH)** |
| GINN-LA ST. LUCIE LTD., LLLP, *et al.*,[1] | : | All Cases Jointly Administered |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
| In re: | : |  |
| GINN-LA QUAIL WEST., LTD, LLLP, *et al.*,[2] | : | Chapter 7 |
|  | : |  |
| Debtors. | : |  |
|  | : |  |
| DREW M. DILLWORTH, Chapter 7 Trustee, | : | **ADV. PRO. NO. 10-02976-PGH** |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| vs. | : |  |
|  | : |  |
| EDWARD R. GINN III, *et al.*, | : |  |
|  | : |  |
| Defendants. | : |  |

### GINN DEFENDANTS' MOTION TO DISMISS FOURTH AMENDED COMPLAINT FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS, AND OTHER RELIEF, AND SUPPORTING MEMORANDUM OF LAW

Defendants Edward R. Ginn III ("Ginn"); Edward R. Ginn III Revocable Trust Dated

September 14, 2002 (the "Ginn Trust"); ERG Management, LLC ("ERG Management"); and

ERG Enterprises, L.P. ("Enterprises") (collectively, the "Ginn Defendants") respectfully move,

---

[1]   The "Tesoro Debtors' Estates" (Nos. 08-29769-PGH, 08-29770-PGH, 08-29772-PGH, 08-29773-PGH) are substantively consolidated into Lead Case No. 08-29769-PGH. *See* ECF No. 308/309. The "Tesoro Debtors and the last four digits of their respective tax identification numbers are: (i) Ginn-LA St. Lucie Ltd., LLLP – 5632;     (ii) Ginn-St Lucie GP, LLC – 0983; (iii) Tesoro Golf Club Condo., LLC – 4385; (iv) The Tesoro Club, LLC – 1917. *See* 11 U.S.C. § 342(c)(1).

[2]   The "Quail West Debtors' Estates" (Nos. 08-29774-PGH, 08-29775-PGH, and 08-29776-PGH) are substantively consolidated into Lead Case No. 08-29774-PGH. *See* ECF No. 34. The "Quail West Debtors," and the last four

pursuant to Fed.R.Bankr.P. 7012 and Fed.R.Civ.P. 12(b)(6), for an order dismissing the Trustee's Fourth Amended Complaint For Avoidance and Recovery of Fraudulent Transfers and Other Relief (ECF No. 268) (the "Fourth Amended Complaint" or "FAC").

## I.    INTRODUCTION

### A.    The Credit Suisse Transaction

The Fourth Amended Complaint is the Trustee's fifth effort to obtain a monetary recovery from all Defendants based on a $675,000,000 loan transaction consummated on June 8, 2006 and administered by Credit Suisse, Cayman Islands Branch (the "Credit Suisse Transaction").

The Credit Suisse Transaction consisted of a first loan in the amount of $525,000,000 (the "First Lien Loan") and a second loan in the amount of $150,000,000 (the "Second Lien Loan") extended to Ginn-LA CS Borrower, LLC ("CS Borrower") and Ginn-LA Conduit Lender, Inc. ("Conduit Lender") (collectively the "Borrowers"). The Borrowers are not parties to this action.

The Debtors, which were developers of residential projects in Naples and Port St. Lucie, Florida, guaranteed Credit Suisse's loans to the Borrowers. Other related entities that were developing residential projects in other locations also guaranteed the loans.[3] In connection with their guaranties, and because there were two separate Credit Suisse loans, the Debtors granted the "First Liens" and "Second Liens" on substantially all of their assets.  (FAC, ¶ 74).

---

digits of their respective tax identification numbers, are: (i) Ginn-LA Quail West Ltd., LLLP – 2397; (ii) Ginn-Quail West Beach, LLC – 9142; and (iii) Ginn-Quail West GP, LLC – 6313.  *See* 11 U.S.C. § 342(c)(1).

[3]   The other developments were known as: Ginn Sur Mer, located on Grand Bahama Island; Laurelmor, located in Boone, North Carolina; and the Gardens, located in Palm Coast, Florida (collectively the "Other Projects").  As discussed more fully below, prior to the closing of the Credit Suisse Transaction: (i) Ginn-LA CS Holdings, LLC ("CS Holding") and CS Borrower (both Delaware limited liability companies) were formed, with CS Holding as the parent of CS Borrower; and (ii) pursuant to certain "contribution" agreements, all of the Project entities were "rolled up" under the umbrella of CS Holding.

B.    **Application of the Loan Proceeds**

At the June 8, 2006 closing, $360,000,000 of the *First* Lien loan proceeds together with

the Second Lien loan proceeds of $150,000,000 were used as follows:

> "(i) to repay the Existing Indebtedness of the Borrower, its
> Subsidiaries and Bahamas Owner, (ii) to make certain distributions
> to the holders of Capital Stock in the Borrower in the amount of
> $333,125,000, and (iii) to pay the Transaction Costs."

First Lien Credit Agreement, Section 2.9.A.[4]

The Existing Indebtedness relating to the five projects paid off at closing (the "Pre-

Existing Project Level Debt") was $158,291,252.86. (FAC, ¶ 95).[5]   As to that Pre-Existing

Project Level Debt, $50,824,707.55 was used to pay Quail West Project debt and $31,072,001.55

was used to pay Tesoro Project debt.  (FAC, ¶ 97).  Thus, the amount of the *First* Lien Loan

($360,000,000) was more than enough to pay the Pre-Existing Project Level Debt for all of the

projects and, in particular, these Debtors.

---

[4]   The authenticity of the First Lien Credit Agreement (ECF No. 76-2) and other corporate and transactional documents cited in this motion, including those documents discussed in the attached Ginn Affidavit, are undisputed as to authenticity and central to the Trustee's claims. As such, this Court may consider them without converting this Rule 12(b)(6) motion into a Rule 56 summary judgment motion.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).  This Court discussed this principle in this adversary proceeding in its *Order Granting Without Prejudice Lubert-Adler's and the Investor Defendants' Motions to Dismiss Trustee's Second Amended Complaint, etc.* (ECF No. 154) at 5-7. In that order, the Court noted the parties' agreement that "in considering the legal sufficiency of the [then-pending Second Amended] Complaint, the Court may look beyond the four corners of the pleading and consider matters of public record and other documents central to the claims asserted such as the Credit Suisse Transaction loan documents." Id. at 7, n.8.

[5]   To the extent that the Trustee implies in ¶ 95 of the FAC that the Closing Fees were paid prior to the Pre-Existing Project Level Debt, he mischaracterizes the terms of the First Lien Credit Agreement.  Specifically, Sec. 3.1.C of that agreement provides: "(iii) simultaneously with funding of the Loans, the obligations of the lenders under the Existing Indebtedness shall have been repaid in full, all commitments thereunder shall have been permanently terminated and all Liens granted thereunder shall have been permanently terminated and released, and the Administrative Agent shall have received evidence thereof to its reasonable satisfaction."

Importantly – because of the Trustee's crucial allegation that Ginn, as a guarantor, "benefited" from the payment of these debts – we note that, while Ginn guaranteed all of the pre-existing Tesoro Project debt owed to Wachovia ($6,650,256.66) and R-G Crown Bank ($24,421,744.89), he only guaranteed a portion of the pre-existing Quail West Project debt to FBT Illinois ($21,279,029.55) and none of the pre-existing Quail West Project debt to Quail West Ltd. ($29,545,678.00).  (*See* Aff. of Edward R. Ginn III ("Ginn Aff.") attached hereto as **Exhibit A**, ¶¶ 14-15).  Ginn's limited guaranty exposure was discharged in connection with the funding of the *First* Lien Loan, and *there is no allegation in the FAC that any of the proceeds from the Second Lien Loan were used to pay the Pre-Existing Project Level Debt.*[6]

### C.    Trustee's Prior Attempts To Recover Money Damages From Defendants

In his first four pleading attempts, the Trustee sought to characterize the actual cash proceeds of the Credit Suisse loans as property of the Debtors and to portray Defendants as subsequent transferees of that property. Those attempts ended unsuccessfully with the Court's dismissal, with prejudice, of the "Loan Proceeds Counts" in the Third Amended Complaint (the "TAC").  *See Order Granting in Part and Denying in Part Lubert-Adler's and the Investor Defendants' Motions to Dismiss* (ECF No. 232) (the "April 2011 Dismissal Order").  The Court dismissed the Loan Proceeds Counts because the Debtors were not the borrowers under the operative loan documents and never had "control" of the Loan Proceeds.  Therefore, under binding Eleventh Circuit precedent (which the Court reviewed in detail), the loan proceeds were not "property" of the Debtors. *Id*. at 8-27.

In the April 2011 Dismissal Order, the Court also dismissed the Trustee's "First Lien Claims," holding that it is the law of the case that those liens may not be avoided. *Id*. at 27-32.

---

[6]  Indeed, in order for Credit Suisse to have acquired First Liens, the prior liens securing the Pre-Existing Project Level Debt had to first be satisfied before any excess proceeds remained for distribution to the Borrowers.

The Court, however, held that the law of the case doctrine did not apply to the avoidability of the Trustee's "Second Lien Claims." The Court held that the Lien Counts of the TAC:

> "fail to distinguish between the First Liens which may not be avoided, and the Second Liens which might be. In addition, the Third Amended Complaint **fails to clearly allege the value of the Second Liens** . . .
>
> Because recovery under § 550(a)(1) is available only 'to the extent that a transfer is avoided', and because the allegations concerning avoidance of the Second Liens are unclear, the Court does not reach the issue of whether the Defendants are entities for whose benefit the Second Liens were transferred."

*Id.* at 33-34 (emphasis added). In other words, the Court held that any future lien avoidance claims could relate only to the Second Liens, and that the Trustee would be required to "clearly allege" the value of those liens.

### D.    <u>The Fourth Amended Complaint</u>

On July 1, 2011, well over a year after commencing this action, and after receiving Defendants' and non-parties' production of tens of thousands of pages of documents, the Trustee filed his Fourth Amended Complaint.

<u>Fraudulent Transfer Claims</u>:  In Counts I-VI (the "Second Lien Avoidance Claims"), the Trustee asserts fraudulent transfer claims against all Defendants, relating solely to the Debtors' grant of the Second Liens to Credit Suisse.  Specifically, in Counts I and II (as to Tesoro) and Counts IV and V (as to Quail West) (collectively the "Avoidance Counts"), the Trustee seeks to avoid the Second Loan Guarantees (*i.e.,* the Debtors' guarantees of payment of the Second Loan) and the Second Liens.  In Counts III and VI (the "Recovery Counts"), the Trustee seeks to recover the "diminution in value" of the Second Liens.

<u>Breach of Fiduciary Duty Claims</u>:  In Counts VII and VIII, the Trustee, for the first time, asserts breach of fiduciary duty claims (the "Fiduciary Duty Claims") against Ginn, Enterprises,

Dean Adler, the Lubert-Adler Fund III Entities,[7] and the Lubert-Adler Fund IV Entities[8] (collectively the "Fiduciary Defendants") relating to the consummation of the Credit Suisse Loan Transaction.

### E.    Summary of Argument and Grounds for Dismissal

In this fifth iteration of his complaint, the Trustee has still failed to state viable claims. As discussed herein, all of the Trustee's claims against the Ginn Defendants should be dismissed with prejudice.

Second Lien Avoidance Claims: The Second Lien Avoidance Claims fail for three reasons:

First, the Trustee has mischaracterized *each* of the more than 350 Defendants as an "entity for whose benefit" the Second Lien Loans were made (each an alleged "Transfer Beneficiary") in derogation of § 550(a)(1).[9] (FAC, ¶¶ 202, 221).  Yet he has failed to allege that *any* Defendant received a direct and quantifiable benefit from the transfer of the Second Liens to Credit Suisse.  Rather, the only "benefits" alleged by the Trustee are those that flowed from the use of the loan proceeds belonging to the *Borrowers* and not the Debtors, to-wit: (i) that some Credit Suisse *loan proceeds* (and not specifically Second Lien Loan proceeds) were used to repay Pre-Existing Project Level Debt guaranteed by Ginn (but not the other Ginn Defendants) (FAC, ¶¶ 203, 222) and (ii) that other *loan proceeds* (and not specifically Second Lien Loan proceeds) were ultimately distributed to the Defendants.  (FAC, ¶¶ 204, 223).  He has failed to

---

[7]   The Trustee defines the Lubert-Adler Fund III Entities as defendants Lubert-Adler Real Estate Fund III, L.P., Lubert-Adler Real Estate Parallel Fund III, L.P. and Lubert-Adler Capital Real Estate Fund III, L.P. (FAC, ¶ 37).

[8]   The Trustee defines the Lubert-Adler Fund IV Entities as Lubert-Adler Real Estate Fund IV, L.P., Lubert-Adler Real Estate Parallel Fund IV, L.P. and Lubert-Adler Capital Real Estate Fund IV, L.P. (FAC, ¶ 38).

[9]   Unless otherwise noted, all statutory citations are to the Bankruptcy Code, Title 11, U.S. Code.

plead any other "direct and quantifiable benefit" to the Defendants flowing from the grant of the *Second Liens.*

Second, although the Trustee seeks damages for "the diminution in value" of the Second Liens, he still has "failed to clearly allege the value of the Second Liens" as expressly directed by this Court at page 34 of the April 2011 Dismissal Order, and he has not pled *any* "diminution." The Trustee has completely sidestepped his pleading obligation on the damage element of his claim by pleading that "[t]he precise value [of the Second Liens] will be established through expert testimony." (FAC, ¶¶ 200, 219). By failing to plead value and diminution, the Trustee has failed to meet the Rule 12(b)(6) *Twombly/Iqbal* pleading standard for damages.[10]

Third, recovery under § 550 is inappropriate because the Second Liens that the Trustee seeks to avoid were non-possessory liens on collateral that the Debtors owned on the Petition Date. The proper remedy for "recovery" of an avoided lien under the circumstances of this case is preservation of the lien for the estate's benefit under § 551, not recovery under § 550.

Fiduciary Duty Claims: In his Fiduciary Duty Claims, the Trustee simply pleads in conclusory terms that *all* of the Fiduciary Defendants breached fiduciary duties owed to *all* of the Debtors. The Trustee completely ignores (i) the Debtors' respective legal structures as Georgia limited liability companies or Georgia limited liability limited partnerships; (ii) the respective legal structures of CS Borrower and CS Holding as Delaware limited liability companies; (iii) the relevant terms of the respective operating agreements or partnership agreements of the Debtors, CS Borrower, and CS Holding; and (iv) the actual legal relationships of Ginn and Enterprises to each of these entities.

The Fiduciary Duty Claims fail for several reasons. First, under applicable law, Ginn and

---

[10]   *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ("*Twombly*"); *Ashcroft v. Iqbal,* ___ U.S. ____, 129 S. Ct. 1937 (2009) ("*Iqbal*").

Enterprises owed no fiduciary duties to the Debtors because (i) no such relationship was created by statute or contract, and (ii) Ginn and Enterprises stood in no confidential relationship to any of the Debtors. Second, the Trustee makes no well-pleaded factual allegations of conduct by Ginn or Enterprises that would amount to a breach of fiduciary duty.

Finally, the Trustee has not alleged that the Debtors suffered damages from any of the alleged breaches. Damages is an essential element of any claim for breach of fiduciary duty. As he did with the Recovery Counts, the Trustee has sidestepped his pleading obligation on this element by stating that "[t]he precise magnitude of the [Debtors'] damages will be established through expert testimony" (FAC, ¶¶ 234, 243), and otherwise failing to allege any specific economic harm in a quantifiable amount.

As demonstrated below, these deficiencies cannot be rectified by further pleading. The Trustee has had ample opportunity to take pre-complaint discovery pursuant to Fed.R.Bankr.P. 2004 and to amend his complaint multiple times. Despite five attempts over more than a year and tens of thousands of pages of discovery, the Trustee is still unable to state viable claims against the Ginn Defendants; and, therefore, the Court should dismiss this action with prejudice.

## II.    THE MOTION TO DISMISS STANDARD

*Twombly* and *Iqbal* require this Court, in considering a motion to dismiss under Rule 12(b)(6), to (1) strip away and discard all legal conclusions and formulaic recitations of claims; and (2) examine the sufficiency of the remaining factual allegations to determine if the Trustee has stated a plausible claim for relief. *See, e.g., Feltman v. Keybank, N.A. (In re Levitt and Sons, LLC)*, Adv. No. 09-2273-BKC-RBR-A, 2010 WL 1539878, at *2 (Bankr. S.D. Fla. Apr. 16, 2010) (dismissing complaint seeking to avoid fraudulent and preferential transfers for failure to adequately plead claims). Conclusory allegations are not entitled to be assumed true; the Trustee must plead enough facts that plausibly establish grounds for a cognizable claim. *Twombly*, 550

U.S. at 555 ("[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 129 S.Ct. at 1949-50 (pleadings that are no more than conclusions are not entitled to assumption of truth).

## III.    THE SECOND LIEN AVOIDANCE AND RECOVERY COUNTS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

This Court previously rejected the Trustee's Loan Proceeds Claims, wherein he had attempted to fit the proverbial "square peg into a round hole" (by arguing that the Debtors were "substantively Borrowers" and by attempting to "collapse" the loan transaction). As a result, his only surviving avoidance counts relate to the Debtors' grant of *liens* and *guaranties* to Credit Suisse in connection with the Second Lien Credit Agreement. (FAC, Counts I - VI).[11]

The Trustee could not and does not allege that Defendants were the initial or subsequent "transferees" of those liens and guaranties. His hope of a monetary recovery under § 550 therefore depends – again – on his ability to shoehorn this case into Chapter 5 of the Bankruptcy Code, this time by mischaracterizing *each* of the more than 350 Defendants as an "entity for whose benefit such [transfers of liens and guaranties] was made" under § 550(a)(1).

As demonstrated below, this Circuit's settled decisional law under § 550 bars this result. As this Court has observed, the Trustee's avoidance remedies, if any, lay against Credit Suisse. April 2011 Dismissal Order at 35. The Trustee has failed to state a claim against Defendants for "Transfer Beneficiary" liability as to the second liens and related guaranties.

### A.    The Trustee Does Not Allege Facts Sufficient to Establish That the Defendants Are Transfer Beneficiaries.

In Counts III and VI, the Trustee seeks recovery under 11 U.S.C. § 550(a). Assuming

---

[11]   The Avoidance Counts themselves seek to avoid transfers that were made to Credit Suisse, but the Trustee has not sued Credit Suisse. The Avoidance Counts, as pleaded, appear to state claims for avoidance, although Defendants vigorously dispute the underlying factual allegations. In any event, if the Court dismisses the Recovery Counts, the Avoidance Counts would serve no purpose and should also be dismissed.

*arguendo* that the Trustee could succeed on his avoidance counts (Counts I and II as to the "Tesoro Transfers" and Counts IV and V as to the "Quail West Transfers"), he may recover the avoided transfers only from:

> (1)    the initial transferee of such transfer or ***the entity for whose benefit such transfer was made***; or
>
> (2)    any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a) (emphasis added).

The Trustee's Recovery Counts are based exclusively, as to all Defendants, on the "formulaic" conclusory allegation that "[w]ith respect to the transfers of the [Second Liens], each of the Defendants was an entity for whose benefit the transfers were made under 11 U.S.C. § 550(a)(1)." (FAC, ¶¶ 48, 202, 221).  As a threshold matter, the Trustee does not allege that the Second Liens (or the proceeds of same) paid off the Pre-Existing Project Level Debt, or that any of the Debtors' property was used to satisfy that debt or to make distributions to insiders. That is, the Trustee has failed to allege any benefit to the Defendants – whether relief from guaranties or receipt of cash distributions – derived *directly* from the *Second Liens* granted to Credit Suisse. This Court should dismiss Counts I – VI on this ground alone.

Moreover, even if the Trustee had alleged the necessary connection between the Second Liens and the alleged "benefits" to Defendants, his claims would fail.  As discussed below, the Trustee has not satisfied the *Twombly/Iqbal* mandate that he allege "facts that plausibly establish grounds for a cognizable claim" that any Defendant is a "Transfer Beneficiary" of the Tesoro Transfers or Quail West Transfers.

The Trustee's only attempt to comply with *Twombly* and *Iqbal* and to buttress his formulaic allegation of Transfer Beneficiary liability consists of the following additional allegations:

- <u>Removal of Guaranties</u>:  In paragraphs 203, 204, 222 and 223, the Trustee alleges — *solely* as to Defendant Ginn  and the Lubert-Adler Fund III & IV Entities [12] — that one of the purposes of the Credit Suisse Loan Transaction was the "removal of all [their] guarantee exposure" by "paying off all existing recourse debt" and that "[b]ut for the Debtors and Other Project Entities' issuance of the Second Lien mortgages and liens, that objective would not have been possible … ."

- <u>Insider Distributions</u>:  In paragraphs 204 and 223, the Trustee also alleges that "[b]ut for the Debtors['] and Other Project Entities' issuance of the Second Lien mortgages and liens,...the "Capital Event" which prompted the distribution of the Second Lien loan proceeds to insiders would never have occurred."

  **1. Any "Removal of Guarantee Exposure" Was Not the "Immediate and Necessary Consequence" of the Transfers of the Second Liens**

  The Trustee alleges – incorrectly – that Ginn was relieved of exposure on guarantees of the Pre-Existing Project Level Debt that was refinanced with the proceeds of the Second Lien Loan.  (FAC, ¶¶ 203, 222).  "The paradigm case of a benefit under section 550(a) is the benefit to a guarantor by the payment of the underlying debt of the debtor."  *Reily v. Kapila (In re Int'l Mgmt. Assoc.)*, 399 F.3d 1288, 1292-93 (11th Cir. 2005).  But that "paradigm" case arises when the *initial transfer* is the *debtor's* payment of the guaranteed debt rather than a third party's payment of that debt.

  Here, there are several reasons why this is not the paradigm case and why the Trustee has not and cannot plead such a paradigm case.  First, the Trustee does not here seek to avoid the *Debtors' payments* to the holders of the Pre-Existing Project Level Debt.  He instead seeks to avoid the transfer of the Second Liens to *Credit Suisse*, and argues that the *Borrowers' subsequent* use of the *proceeds* of that transfer to payoff pre-existing debt converts the guarantors of that debt into Transfer Beneficiaries.  But this is not the law:

---

[12] The Trustee pleads that only seven of the more than 350 Defendants − *i.e.*, Ginn and the Lubert-Adler Fund III and Fund IV Entities were relieved of pre-existing project level debt obligations as a result of the Credit Suisse Loan

> Simply put, the "for whose benefit" language does not apply where the "benefit" is not the immediate and necessary consequence of the initial transfer, but flows from the manner in which the initial transfer is *used* by its recipient - the "benefit must derive directly from the [initial] transfer, not from the use to which it is put by the transferee."

*In re TOUSA, Inc.*, 444 B.R. 613, 674 (S.D.Fla. 2011)(emphasis in original)(internal citations omitted). *Accord Bonded Fin. Servs. v. European Amer. Bank,* 838 F.2d 890, 895-96 (7th Cir. 1988) (discussing "transferee" liability under § 550 and concluding that a subsequent transferee cannot be the "entity for whose benefit" a transfer was made); *Turner v. Phoenix Fin., LLC (In re. Imageset, Inc.),* 299 B.R. 709, 718-19 (Bankr. D. Me. 2003) (same). Here, the Borrowers' satisfaction of the Debtors' Pre-Existing Project Level Debt was not "the immediate and necessary consequence of the initial transfer" [*i.e.*, the Debtors' grant of the Second Liens to Credit Suisse], but flowed from the Borrowers' subsequent use of the Credit Suisse Loan Proceeds — funds which, per this Court's April 2011 Dismissal Order, were never property of the Debtors.

Next, the Trustee alleges that "but for" the Second Lien transfers, the removal of guarantee exposure "would not have been possible." (FAC, ¶¶ 204, 223). This is wrong on its face, because the guaranties were extinguished in connection with the First Lien Loans. In any event, the Trustee's suggested "but for" test would expand the reach of § 550(a)(1) to capture all manner of remote parties who would not have realized some benefit "but for" a particular avoidable transfer. It would consequently render the rest of § 550(a) mere surplusage. And it is not the law. *In re Int'l Mgmt. Assoc.*, *supra*; *TOUSA*, *supra*.

Finally, the Trustee has failed to plead the value of the Second Liens at the time they were issued, let alone that their value corresponded to the amount of the Pre-Existing Project

---

Transaction. (FAC, ¶¶ 203, 222). The Trustee makes no such allegation as to the other Defendants, including Ginn Trust, ERG Management, and Enterprises.

Level Debt that was repaid.  (FAC, ¶¶ 200-201, 218-219).  *See In re Int'l Mgmt. Assoc.,* 399 F.3d 1288 at 1293 ("benefit" for purposes of § 550(a)(1) must be "direct, ascertainable, and quantifiable").

        2.       **The Allegations of a "Cash Out Mortgage" Do Not Suffice to Impose Transferee Beneficiary Liability on Defendants**

The Trustee's argument that insider distributions would not have happened "but for" the transfer of the Second Liens (which he describes as a "cash out mortgage") is an equally unavailing attempt to predicate Transfer Beneficiary liability on the Borrowers' *subsequent* use of the loan proceeds:

> "But for the Debtors['] and Other Project Entities' issuance of the Second Lien mortgages and liens,...the "Capital Event" which prompted the distribution of the Second Lien loan proceeds to insiders would never have occurred. …
>
> Merely avoiding the ... Debtors' transfers of ... Second Liens will not restore the ... Debtors to the financial condition they would have enjoyed if the transfers had never occurred. For the Credit Suisse loan transaction was "[a] *cash out* Mortgage" consummated in the midst of what Ginn himself described as the biggest market collapse he has seen in 40 years, which limited the Debtors' ability to dispose of their property prior to further depreciation."

(FAC, ¶¶ 204, 205, 223, 224) (emphasis in original).

This argument appears to reflect the notion that the Court should impose liability upon Defendants purely on equitable grounds.  Moreover, imposing § 550 liability on Defendants in connection with the *Borrower's* use of the loan proceeds would require a "collapsing" of the Credit Suisse Loan Transaction, contrary to the law of the case established in this Court's April 2011 Dismissal Order, which found such a theory "untenable." *Id.* at 26.

The Trustee's desire to restore the Debtors to their previous financial condition or protect them from market-driven depreciation of the value of their property does not equate to a "cognizable claim" for relief under § 550(a). And the "cash out mortgage" allegation, like the "guaranty exposure" argument, refers not to a direct benefit from the initial transfer, but to the

subsequent use of the Borrowers' loan proceeds.  As such, it cannot support a claim that Defendants have Transfer Beneficiary liability.  *In re Int'l Mgmt. Assoc.*, *supra*; *TOUSA*, *supra*.

### B.    The Trustee Has Failed To Allege Specific Facts To Support His "Diminution In Value" Damage Claim.

The Trustee's final contention is that he should be entitled to recover "the diminution in value of the ... Second Liens after they were issued" in order to "prevent a windfall to the Defendants, who cashed out early ... ."  (FAC, ¶¶ 206, 225).  This argument, which is untethered to the language of § 550(a)(1), again improperly posits the statute as an all-purpose equitable remedy for the prevention of alleged "windfalls." The existence or non-existence of a "windfall" is not a criterion of Transfer Beneficiary liability in this Circuit.  *In re Int'l Mgmt. Assoc.*, *supra*; *TOUSA*, *supra*.[13]

The notion of post-transfer diminution in value of the allegedly avoidable Second Liens speaks, not to whether the Trustee has stated a "cognizable claim" of § 550(a)(1) liability under the *Twombly/Iqbal* standards, but to the measure of damages. The Trustee, however, has failed to allege any facts to support the damage claim he has chosen.

To support a claim for damages for "diminution in value," such as that asserted by the Trustee, a plaintiff must "provide *some* 'factual enhancement' beyond its conclusory claim.*" Dreiling Millennium Trust II v. Reliant Renal Care, Inc.,* No. 10-1951, 2011 WL 2604374, at *6 (E.D. Pa. June 30, 2011) (emphasis in original) (citing *Iqbal*).  In *Dreiling,* which involved a claim for interference with contractual relationships in connection with certain dialysis centers, the court stated:

> "Dreiling has not alleged any facts to support their claim of damages for the diminution in value of the dialysis centers.

---

[13]    The Trustee's incongruous argument that he is entitled to damages for "diminution in value" of a transferred *lien* highlights the inapplicability of § 550 to this situation. As discussed *infra*, the appropriate "recovery remedy" for an avoided *lien* is preservation of the lien for the benefit of the estate under § 551.

> Although Fed. R. Civ. P. 8(a) does not require the Plaintiff to cite specific numbers, Dreiling must provide *some* 'factual enhancement' beyond its conclusory claim. *Iqbal,* 129 S.Ct. at 1949…. In short, Dreiling has failed to 'nudge its claim across the line from conceivable to plausible.' *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 121 S. Ct. 1955, 167 L.Ed. 2d 929 (2007)."

*Id.* (emphasis in original).

Here, despite the Court's clear statement in the April 2011 Dismissal Order that "the Third Amended Complaint fail[ed] to clearly allege the value of the Second Liens," the Trustee still has not alleged the value of the Second Liens at the time they were granted, let alone sufficient "factual enhancement" that they diminished in value. (April 2011 Dismissal Order at 34). As to the amount of diminution, the Trustee alleges only that the amount "will be established through expert testimony." (FAC, ¶¶ 200, 219).

The Trustee has no excuse for sidestepping this issue. In June 2010, the Trustee sought authority to employ several experts for the specific purpose of addressing valuation issues germane to this adversary proceeding (ECF No. 495 in Case No. 08-29769), and, more than 13 months ago, this Court granted that request by order dated July 7, 2010. (ECF No. 505 in Case No. 08-29769). Moreover, in its April 2011 Dismissal Order, this Court specifically highlighted to the Trustee that he needed to plead the value of the Second Liens. (April 2011 Dismissal Order at 33-34).

The Trustee alleges that the Credit Suisse Loan Transaction was "[a] *cash out* Mortgage" consummated in the midst of a market collapse "which limited the Debtors' ability to dispose of their property prior to further depreciation." (FAC, ¶¶ 205, 224). But there is no allegation whatsoever concerning how the Debtors' ability to dispose of their property was limited by the Second Liens, or that the Debtors even attempted to dispose of the property but were prevented from doing so because of the existence of the Second Liens. To the contrary, the Trustee alleges

-15-

that sales fell off – not because of the Second Liens - but because "real estate markets began to collapse" in the latter part of October 2005, and that collapse continued during the months preceding the Credit Suisse loan closing.  (FAC, ¶¶ 8, 62-64, 149, 205, 224).

Therefore, based on the Trustee's own factual allegations that a market collapse, which commenced in 2005 and continued into 2006 and beyond, caused sales to decline, his conclusory allegation that the Second Liens limited the Debtors' ability to dispose of their property is facially implausible.  "A complaint may dismissed if the facts as pled to not state a claim for relief that is plausible on its face."  *Sinaltrainal v. Coca-Cola Co.* 578 F.3d 1252, 1260, 1268 (11th Cir. 2009) (holding that complaint allegations failed to "nudge the [conspiracy] claims across the line from conceivable to plausible.").

Courts routinely dismiss claims, where as here, the plaintiff fails to adequately plead damages:

> At the pleading stage, governed by Rule 12(b)(6), a plaintiff's demand for money damages must satisfy the *Twombly* and *Iqbal* requirement of factual, non-conclusory allegations stating a plausible claim that defendant's conduct caused specific economic harm in a quantifiable amount.

*Kopperl  v. Bain*, No. 3:09-CV-1754, 2010 WL 3490980, at *4 (D. Conn. Aug. 30, 2010).  S*ee also Perez v. Ocwen Loan Servicing, LLC,* No. 10CV1403, 2011 WL 2680503, at *6 (S.D. Cal. July 8, 2011) (claim dismissed where sole allegations as to damages was that plaintiff was "entitled to damages in an amount to be proven at trial"); *Garvey v. Amer. Home Mortg. Servicing, Inc.,* No. CV-09-973, 2009 WL 2782128, at *1 (D. Ariz. Aug. 31, 2009) (claim dismissed because the plaintiff's conclusory allegations that the damages were "subject to proof at trial" were not substantiated by factual allegations in the complaint); *Restrepo v. Wells Fargo Bank, N.A.,* No. 09-22436, 2010 WL 374771, at *2 (S.D. Fla. Feb. 3, 2010) (claims dismissed where the plaintiff failed to plead he had suffered actual damages); *NRG Energy, Inc. v. Fuchs*,

No. 10-CV-0989, 2011 WL 1625169, at *4 (S.D. Cal. Apr. 28, 2011) (dismissing claim for because allegations regarding alleged monetary loss were "entirely speculative.").

Further, it is not uncommon for bankruptcy courts to dismiss avoidance and fraudulent transfer claims where the plaintiff fails to plead facts to substantiate the requisite element of value. *See Angell v. BER Care, Inc. (In re Caremerica, Inc.),* 409 B.R. 737, 756 (Bankr. E.D.N.C. 2009) (dismissing constructive fraud claims on grounds the plaintiff failed to establish why the value of the consideration received was less than that transferred); *Official Comm. of Unsecured Creditors of Hydrogen, L.L.C. v. Blomen (In re Hydrogen, L.L.C.),* 431 B.R. 337, 353-54 (Bankr. S.D.N.Y. 2010) (granting the motion to dismiss based on the lack of facts in complaint to support the "formulaic" contention that the debtor received lack of reasonably equivalent value).

In light of the Trustee's utter failure in Counts III and VI to plead the value of the Second Liens, let alone facts to support his claimed "diminution in value" as required by *Twombly* and *Iqbal* and the other cases cited above, the Second Lien Avoidance Claims (Counts I-VI) should be dismissed with prejudice.

C.    **The Trustee's Remedy, If Any, Lies Under §551, Not § 550.**

In his Second Lien Avoidance Claims, the Trustee seeks to avoid both (i) the Debtors'
Second Lien Guaranties and (ii) the Second Liens, which were pledged to secure the guaranties.
No further remedy is necessary with respect to the *guaranties* themselves, to the extent they are
avoided; Credit Suisse has relinquished any claim against the Debtors' estates and the Trustee
has previously expressly acknowledged that he is not seeking recovery for the value of the
guaranties as distinct from the liens.  (ECF No. 186 at 20). The question is thus whether § 550
provides the appropriate "recovery" remedy if the Second *Liens* are avoided.  The answer is no.

The purpose of the recovery and avoidance sections of the Code is to restore the estate to
the condition that would have existed had the transfer never occurred, not to use the provisions
of the Code to confer a "windfall" on the debtor's estate.  *Bakst v. Sawran (In re Sawran),* 359
B.R. 348, 354 (Bankr.S.D.Fla. 2007) (Hyman, C.J.).  Where, as here, the transfer to be avoided is
a non-possessory lien in property that was part of the bankruptcy estate as of the date of the
petition, upon avoidance, the estate is automatically made whole pursuant to § 551, which
preserves the lien for the benefit of the estate, and § 541(a)(4), which provides the preserved
value is deemed property of *the estate.  See Rodriguez v. Daimlerchrysler Fin. Servs. Am. LLC
(In re Bremer),* 408 B.R. 355, 360 (10th Cir. B.A.P. 2009) (holding that avoidance of lien was
sufficient to recover the transferred property under § 551 and a remedy under § 550(a) is
unnecessary) *aff'd sub nom. Rodgriguez v. Drive Fin. Servs. Ams. L.P. (In re Trout),* 609 F.3d
1106, 1109-14 (10th Cir. 2010).

Recently, another bankruptcy court directly considered the issue of whether a chapter 7
trustee was entitled to recovery under § 550(a), where the trustee had previously sold the
property in a court approved post-petition sale.  *Rhiel v. Huntington Nat'l Bank (In re Phalen),*
445 B.R. 830, 864-65 (Bankr. S.D. Ohio 2011).  In that case, the chapter 7 trustee moved to

avoid a mortgage on the debtor's real property under section 544 of the Bankruptcy Code and recover the value of the property from the creditor under section 550. The real property was still owned by the debtors as of the date they filed their petition for relief under the Bankruptcy Code. The court determined that the trustee was limited to the relief accorded to her in section 551. *Id.* at 864-65. The court, citing to extensive authority, stated that "[Section 550] relief is not appropriate here if avoidance of [the] mortgage alone is a sufficient remedy." *Id.* at 864 (citing *Suhar v. Burns (In re Burns),* 322 F.3d 421, 427 (6th Cir.2003); *In re Bremer, supra; In re Trout, supra;* 4 Norton Bank L. & Pract. 3d 70.3 (2009); *Schnittjer v. Linn Area Credit Union (In re Sickels),* 392 B.R. 423, 427 (Bankr. N.D. Iowa 2008)).

In this case, as in *Phalen*, permitting the Trustee to recover the "value" of the Second Liens under § 550(a) would be improper and provide the Trustee with a windfall given the Trustee's utter failure to allege any facts to support his damage claim. Here the underlying collateral was still owned by the Debtors as of the Petition Date, and the Trustee affirmatively sought Sale Orders relating to the collateral. As determined by the Sale Orders dated March, 20 2009 [ECF Nos. 185, 188, 189 in Case No. 08-27967], the gross sale price for all the Debtors' properties was approximately $27,000,000 (*i.e.,* only a fraction of the debt owing in connection with the First Lien Loan).

In other words, via the bankruptcy sale, it has been determined in this case that the Second Liens have no value. *See In re Levitt, supra,* 384 B.R. at 639-640. If the Trustee had avoided the Second Liens before selling the underlying assets, the recovery for the benefit of the estate would have been limited to, at most, the value of the collateral as of the Petition Date or thereafter (about $27 million), but even that result presupposes that he would have also avoided the First Liens — instead of stipulating to a binding order by this Court that they were nonavoidable. Although the Trustee asserts in the FAC that a monetary recovery is necessary to

-19-

prevent a "windfall" to Defendants, it is he who is seeking the windfall by asking this Court to assess money damages against Defendants in respect of a Second Lien that, by his own admission, was valueless at all relevant times.  Accordingly, the Trustee's Count I through VI claims seeking recovery under section 550(a) for the value of the Second Liens should be dismissed with prejudice.

Moreover, even had the Second Liens had any value as of the Petition Date, it was within the Trustee's power to preserve those liens for the benefit of the Debtors' estates.  He chose not to do so.  Instead, he opted to sell the Debtors' assets free and clear of the Second Liens and give the net sales proceeds to Credit Suisse.  As such, he should not now be able to recover the alleged "value" of Second Liens which he already confirmed were valueless by failing to object to the Sale Orders which provided the Second Liens had no value.

After five attempts, it is clear that the Trustee cannot state an avoidance claim against the Defendants, and Counts III and VI should be dismissed with prejudice.  The avoidance counts themselves (Counts I, II, IV, and V) should also be dismissed with prejudice, insofar as they relate to all Defendants, as the mere avoidance of the Second Liens — as to Defendants — would serve no purpose and confer no benefit upon the estate in the absence of an available recovery remedy under § 550.

## IV.    THE FIDUCIARY DUTY CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM AGAINST THE GINN FIDUCIARY DEFENDANTS.

In Counts VII and VIII, the Trustee, *on behalf of the Debtors*, has sued the Fiduciary Defendants for alleged breaches of fiduciary duty owed to the Debtors relating to the consummation of the Credit Suisse Loan Transaction (the "Fiduciary Duty Claims") (FAC, ¶¶ 2,

227-233, 238-241).[14]  Defendants Ginn and Enterprises are hereinafter sometimes collectively referred to as the "Ginn Fiduciary Defendants."  The Fiduciary Duty Claims should be dismissed as to the Ginn Fiduciary Defendants for the following reasons:

First, stripping away the Trustee's gratuitous use of derisive accusations of "looting" (FAC, ¶¶ 230, 239) and groundless, conclusory allegations regarding the exercise of control over the Debtors by the Ginn Fiduciary Defendants (FAC, ¶¶ 228, 237), the Trustee has not (and cannot) alleged facts to establish the existence of any relationship giving rise to a fiduciary duty owed by the Ginn Fiduciary Defendants to the Debtors.

Second, the Trustee has failed to allege facts demonstrating damage to the Debtors from the alleged breach of fiduciary duties by any of the Fiduciary Defendants.

### A.    No Fiduciary Relationship Existed Between the Ginn Fiduciary Defendants and the Debtors.

Whether a particular Fiduciary Defendant owed a fiduciary duty to a particular Debtor is not the "one size fits all" proposition that the Trustee suggests.  That is, the Trustee's generalized allegations of a claim by all of the Tesoro Debtors against all of the Tesoro Fiduciaries for a collective breach of fiduciary duty (FAC, ¶¶ 229-230) and by all of the Quail West Debtors against all of the Quail West Fiduciaries for a collective breach of fiduciary duty (FAC, ¶¶ 238-239) do not satisfy the *Twombly/Iqbal* pleading standard.  Under *Twombly/Iqbal*, the Trustee must allege facts that plausibly establish the existence of a fiduciary relationship between each Fiduciary Defendant and each of the Debtors.

In *Lubin v. Skow*, 382 F.App'x 866 (11th Cir. 2010), the Eleventh Circuit affirmed the dismissal of a trustee's breach of fiduciary duty claim brought against the officers of a holding

---

[14]    Count VII relates to the Tesoro Debtors, with the Trustee defining the "Tesoro Fiduciaries" as Defendants Edward R. Ginn, ERG Enterprises, L.P., Dean Adler and the L-A Fund III Entities.  Count VIII relates to the Quail West Debtors, with the Trustee defining the "Quail West Fiduciaries" as Defendants Edward R. Ginn, ERG Enterprises, L.P., Dean Adler and the L-A Fund III and IV Entities.

company and its failed subsidiary, stating that, "generalized statements of blame do not state a legal claim for breach of fiduciary duties." *Id.* at 873. Accordingly, a claim for breach of fiduciary duty must be dismissed if it "simply recites the elements of breach of duty in the 'unadorned, the defendant-unlawfully-harmed-me' manner *Iqbal* prohibits.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1949). *See also Waithe v. Arrowhead Clinic, Inc.*, No. CV 409-021, 2011 WL 565615, *5-6 (S.D. Ga. Jan. 12, 2011) (holding under Georgia law that plaintiffs' conclusory allegations that defendant chiropractic clinics "owed fiduciary duties to their patients to protect their privacy and to provide adequate chiropractic services" were insufficient to state a claim for breach of fiduciary duty).

### 1.    The Relationship of the Ginn Fiduciary Defendants to the Debtors

As to the Ginn Fiduciary Defendants, the Trustee alleges a fiduciary relationship with the Debtors solely premised on the following allegations:

- *"Within the Ginn and Lubert-Adler corporate hierarchy, Ginn and Adler shared ultimate decision-making authority with respect to the Credit Suisse loan transaction."* (FAC, ¶ 105).

- *"During the time period in question, Ginn was the C.E.O. of ERG Enterprises, L.P., the Manager of Ginn-LA CS Holding Company, LLC."* (FAC, ¶ 106).

- *"[Ginn] was also designated as the 'Authorized Representative' for ERG Enterprises, L.P. within the Ginn-LA CS Holding Company LLC Agreement, and for the General Partners of the Tesoro and Quail West LLLPs, within their operative Agreements of Limited Partnership."* (FAC, ¶ 107).

However, when examined in the context of the organizational structure of the Debtors, these factual allegations are insufficient as a matter of law to establish the existence of a fiduciary relationship between the Ginn Fiduciary Defendants and the Debtors.

### a.    The Pre-Credit Suisse Organizational Structure

At the time of the Credit Suisse Transaction, the organizational structure of the Tesoro Debtors and the Quail West Debtors each consisted of <u>three distinct tiers</u> bearing the following relationship to each other: [15]

(1)    The <u>first tier debtors</u> consisted of the "General Partner LLC Debtors" (Ginn-Quail West GP, LLC and Ginn-St. Lucie GP, LLC), each of which was a manager-managed limited liability company organized under Georgia law.  With respect to each General Partner LLC Debtor, the sole Member was Enterprises and the sole Manager was Robert F. Masters. (Ginn Aff., ¶¶ 3, 5, 6, 7, 9, 10).

(2)    The <u>second tier debtors</u> consisted of the "LLLP Debtors" (Ginn-LA Quail West, Ltd. LLLP and Ginn-LA St. Lucie Ltd., LLLP), each of which was a limited liability limited partnership organized under Georgia law.  With respect to each LLLP Debtor, a General Partner LLC Debtor served as the sole general partner.  (Ginn Aff., ¶¶ 4, 8).

(3)    The <u>third tier debtors</u> consisted of the "Subsidiary LLC Debtors" (Ginn-Quail West Beach, LLC, Tesoro Golf Club Condominium, LLC, and the Tesoro Club, LLC), each of which was a manager-managed limited liability company organized under Georgia law.  With respect to each Subsidiary LLC Debtor, the sole Member was a LLLP Debtor and the sole Manager was Robert F. Masters. (Ginn Aff., ¶¶ 16, 17, 18).

### b.    The Post-Credit Suisse Organizational Structure

As part of the restructuring associated with the Credit Suisse Transaction, Enterprises contributed all of its interest as a Member in each of the General Partner LLC Debtors to CS Holding, a manager-managed Delaware limited liability company in which Enterprises was the Manager.  (Ginn Aff., ¶¶ 11, 12, 13).  The terms of the contribution agreement provided that the contributed interests in the General Partner LLC Debtors would be held by CS Holding's wholly-owned subsidiary, CS Borrower.  (Ginn Aff., ¶ 13).  CS Borrower was a manager-managed Delaware limited liability company whose Manager was Robert F. Masters.  (Ginn Aff., ¶ 12).

---

[15]    Attached hereto as **Exhibit B** are diagrams showing the structure of the Debtors both before and after the restructuring associated with the Credit Suisse Transaction.

Thus, after the restructuring, the only relationship of Enterprises to the Debtors was derived from its indirect ownership of CS Borrower, the parent of the Debtors, and its position as manager of CS Holding, the parent of CS Borrower.

Stated another way – at the time the Credit Suisse Transaction was consummated:

(1)    the Ginn Fiduciary Defendants were not (and had never been) partners in the LLLP Debtors;[16]

(2)    Ginn was neither a member nor a manager of any of the Debtors, CS Holding or CS Borrower;

(3)    Enterprises was a member and manager of CS Holding and, before the restructuring, had been a member (but never a manager) of the General Partner LLC Debtors; and

(4)    Robert F. Masters (not the Ginn Fiduciary Defendants) was the sole manager of CS Borrower, the General Partner LLC Debtors, and the Subsidiary LLC Debtors. [17]

> **2.    The Trustee's Claim for Breach of Fiduciary Duty Fails Because There Was No Confidential Relationship Between the Ginn Fiduciary Defendants and the Debtors.**
>
> **a.    Georgia Law Controls This Analysis.**

Here, all of the Debtors were either manager-managed limited liability companies or limited liability limited partnerships organized under Georgia law and authorized to do business in Florida as foreign entities. [18]  Under Florida choice of law provisions, a claim for breach of

---

[16]   The Trustee erroneously alleges that Enterprises was identified as the general partner in the Tesoro LLLP Debtor's partnership agreement dated as of April 15, 2004.  (FAC, ¶¶ 114-115).  However, Enterprises was not formed until December 29, 2005 and, therefore, was not even in existence when this partnership agreement was executed.  (Ginn Aff., ¶ 9).

[17]   The Trustee has not named CS Borrower or CS Holding Company as a defendant.

[18]

| DEBTOR | GEORGIA LEGAL FORM |
|---|---|
| Ginn-LA St. Lucie Ltd., LLLP | limited liability limited partnership |

fiduciary duty involving a foreign limited liability company or foreign limited partnership is governed by the law of the state of organization, which in this case is Georgia for all of the Debtors. FLA. STAT. ANN. § 608.505(3) (LexisNexis 2011) ("The laws of the state or other jurisdiction under which a foreign limited liability company is organized govern the foreign limited liability company's organization, internal affairs, and the liability of its managers, members, and their transferees"); FLA. STAT. ANN. § 620.1901(3) (LexisNexis 2011) ("The laws of the state under which a foreign limited partnership is organized govern relations among the partners of the foreign limited partnership and between the partners and the foreign limited partnership . . . .").

### b. The Elements of a Claim for Breach of Fiduciary Duty Under Georgia Law

Under Georgia law, a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach. *Bienert v. Dickerson,* 276 Ga. App. 621, 624, 624 S.E.2d 245, 248 (2005). The existence of "[a] fiduciary duty is created by a confidential relationship," as defined by Section 58 of Title 23 (Equity), Chapter 2 (Grounds For Equitable Relief) of the Georgia Code:

§ 23-2-58. Confidential relations defined

| | |
|---|---|
| Ginn-St Lucie GP, LLC | limited liability company |
| Tesoro Golf Club Condominium, LLC | limited liability company |
| The Tesoro Club, LLC | limited liability company |
| Ginn-LA Quail West Ltd., LLLP | limited liability limited partnership |
| Ginn-Quail West Beach, LLC | limited liability company |
| Ginn-Quail West GP, LLC | limited liability company |

(Ginn Aff. ¶¶ 3, 4, 7, 8, 16, 17, 18).

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.[19]

*Atwater v. Nat'l Football League Players Ass'n.*, No. 1:06-CV-1510-JEC, 2009 WL 3254925, at *12 (N.D. Ga. March 27, 2009) (quoting GA. CODE ANN. § 23-2-58 (the "Confidential Relations Statute")).

As reflected in the plain language of the statute, a confidential relationship may be "created by law" or "result[] from contracts."[20]   Importantly, though, the existence of a confidential relationship will not be presumed, but must be proven by the party asserting the existence of a confidential relationship.  *U. S. ex rel. Meva Corp. v. Ne. Constr. Co.*, 298 F. Supp. 1135, 1141 (S.D. Ga. 1969) ("There is never a presumption of confidential relationship. The burden is upon the party asserting same to establish its existence.").

Here, the Trustee has failed to allege any facts that, if proven, would satisfy the Trustee's burden of establishing the existence of a confidential relationship "created by law" or "resulting from contracts" that would give rise to any fiduciary duties owed by the Ginn Fiduciary Defendants to these Debtors.  Moreover, the Trustee cannot meet his burden because Georgia law governing limited liability companies and limited partnerships and the Debtors' respective operating and partnership agreements that govern the management and conduct of their businesses are to the contrary.

---

[19]   The word "etc." actually appears in the statute.
[20]    There can be no contention here that the fiduciary relationship arose from "nature" as in the case of a parent/child or husband/wife relationship.

### c.    Control of the General Partner and Subsidiary LLC Debtors

Pursuant to Georgia law, the management and control of a manager-managed limited liability company is vested in its managers.  GA. CODE ANN. § 14-11-304(b) (2011) ("If the articles of organization or a written operating agreement vests management of the limited liability company in one or more managers, then such persons shall have such right and authority to manage the business and affairs of the limited liability company as is provided in the articles of organization or a written operating agreement. . . .").  Similarly, the right to manage and conduct the business of a limited partnership is vested in the general partners.  GA. CODE ANN. § 14-8-18(5) (2011); § 14-9A-70 (2011).  Consistent with Georgia law, Article IV of the operating agreements of the General Partner LLC Debtors and Subsidiary LLC Debtors provided, as follows:

> "The business and affairs of the Company shall be managed by its Manager who shall be appointed by and serve at the sole discretion of the Member.  Except for situations in which the approval of the Member is expressly required by the Operating Agreement or by nonwaivable provisions of applicable law (including the Act), the Manager, so long as he continues to serve, shall have full and complete authority, power, and discretion to manage and control the business, affairs and properties of the Company, to make all decisions regarding those matters, and to perform any and all other acts or activities customary or incident to the management of the Company's business. . . ."

(Ginn Aff., ¶¶ 3, 7, 16, 17, 18).  Enterprises' status as the member and manager of CS Holdings, did not entitle it to participate in the management and conduct of the business of the General Partner LLC Debtors or the Subsidiary LLC Debtors, nor did Ginn's alleged status as the C.E.O. of Enterprises confer upon Ginn any right to do so under either Georgia law or the terms of the operating agreement of those entities.

### d.    Control of the LLLP Debtors

-27-

The partnership agreements of the LLLP Debtors provided for similar authority of the General Partner to manage and conduct the business of the General Partner LLC Debtors subject to limited management participation by limited partners:

"7.1.1  General.  The day-to-day management of the business and affairs of the Partnership shall be vested in the General Partner. . . ."

(Ginn Aff., ¶¶ 4,8).

While it is certainly true that Ginn is *defined* in Article II of these partnership agreements as the "Authorized Representative" of the General Partner LLC Debtors, the term as it relates to Ginn does not appear elsewhere in the partnership agreements.  Insofar as Ginn is concerned, the title is meaningless and confers no rights, powers or duties on Ginn as a matter of either Georgia law or the partnership agreements themselves.  Moreover, neither Ginn nor Enterprises was a partner in the LLLP Debtors and, therefore, had no right to participate in the management and conduct of the business of those partnerships.

In summary, the Trustee's allegations that the Ginn Fiduciary Defendants "exercised control over the will, conduct, and interest" of the Debtors are belied by the absence of any confidential relationship between those defendants and the Debtors "created by law" or "resulting from contracts."  Neither the Georgia statutes governing the operation of the Debtors nor the applicable operating agreements and partnership agreements among the parties give rise to any such confidential relationship.  Therefore, the Trustee's claims against the Ginn Fiduciary Defendants fail as a matter of law.

3.    **The Georgia LLC Act Expressly Negates All Duties of a Member to a Manager-Managed Limited Liability Company.**

The Trustee's claims against Enterprises (and indirectly against Ginn by virtue of his alleged role as C.E.O. of Enterprises) are also precluded by Georgia statutory law to the extent they are based solely on Enterprises' membership status, whether directly or indirectly, in the

General Partner LLC Debtors (and the Subsidiary LLC Debtors). Georgia's "Limited Liability Company Act" expressly prescribes the fiduciary obligations that are owed to a Georgia manager-managed limited liability company, as follows:

> In managing the business or affairs of a limited liability company:
>
> (1) A member or manager shall act in a manner he or she believes in good faith to be in the best interests of the limited liability company and with the care an ordinarily prudent person in a like position would exercise under similar circumstances. A member or manager is not liable to the limited liability company, its members, or its managers for any action taken in managing the business or affairs of the limited liability company if he or she performs the duties of his or her office in compliance with this Code section. Except as otherwise provided in the articles of organization or a written operating agreement, **a person who is a member of a limited liability company in which management is vested in one or more managers, and who is not a manager, shall have no duties to the limited liability company or to the other members solely by reason of acting in his or her capacity as a member**; . . . ."

GA. CODE ANN. § 14-11-305(1) (2011) (emphasis added).

Where, as here, the articles of incorporation and operating agreements provided that management and control of the General Partner LLC Debtors (and Subsidiary LLC Debtors) was vested in the manager, a member such as Enterprises who was ***not*** a manager owes ***no*** fiduciary duties to the limited liability company solely by virtue of its status as a member. GA. CODE ANN. § 14-11-305 (2011); *ULQ, LLC v. Meder,* 293 Ga. App. 176, 666 S.E.2d 713 (2008) (stating, in accordance with Ga. Code Ann. § 14-11-305(1), that a member of a limited liability company whose management is vested in manager had no fiduciary duty to the limited liability company not to interfere with customer relationships). In that regard, Ga. Code Ann. § 14-11-305 is unequivocal that a non-manager member "shall have no duties to the limited liability company or to other members solely by reason of acting in his or capacity as member."

Accordingly, not only has the Trustee failed to allege facts establishing the existence of a confidential relationship that might give rise to fiduciary duties, Georgia law expressly negates any such fiduciary duty. As a matter of Georgia law, the Ginn Fiduciary Defendants owed no fiduciary duties to the General Partner LLC Debtors, each of which was a manager-managed limited liability company. Ergo, the Ginn Fiduciary Defendants also did not owe any derivative fiduciary duties to the Debtors through their status as members of the General Partner LLC Debtors.

### 4.    The Ginn Fiduciary Defendants Did Not Owe Any Derivative Fiduciary Duties to the LLLP Debtors.

The Trustee's sweeping allegations that the Fiduciary Defendants collectively breached fiduciary duties also encompass claims that the Ginn Fiduciary Defendants breached fiduciary duties purportedly owed to the LLLP Debtors.[21]  The ostensible fiduciary duties owed by the Ginn Fiduciary Defendants to the LLLP Debtors are predicated on allegations that Enterprises shared management of CS Holding with the Lubert-Adler Fiduciary Defendants in accordance with the operating agreement of CS Holding.  (FAC, ¶¶ 110-111).  However, those allegations are inherently flawed because (a) the Ginn Fiduciary Defendants were never partners in the LLLP Debtors before the restructuring related to the Credit Suisse Transaction; and (b) the economic and management rights of the partners in the LLLP Debtors were unchanged by the restructuring and contribution of those partnership interests to CS Holding.  Specifically, the operating agreement of CS Holding recited:

---

[21]   Analysis of this aspect of the Fiduciary Duty Claims is made somewhat more difficult by the Trustee's failure to plead which Fiduciary Defendants owed what fiduciary duties to which Debtors and how those duties were breached.  As previously explained, Lubert Adler Funds III and IV were the original limited partners of the LLLP Debtors.  Shortly before the Credit Suisse Transaction, Lubert Adler Funds III and IV contributed their limited partnership interests in the LLLP Debtors to CS Holding to be held by CS Borrower.  The Ginn Fiduciary Defendants were never partners in the LLLP Debtors.  *See* Ginn Aff.

"Though all of the Property Owners are indirectly owned by [CS Holding], it is the intention of the members that ***all distributions, capital calls, buy-sell rights, other economic rights and management rights with respect to each Property Owner and Property continue to be separate from each other as they were prior to the date of this Agreement*** . . . ."

Limited Liability Company Agreement of Ginn-LA CS Holding Company, LLC, pp. 1-2 (emphasis added).  [LA019436-LA019437].

Hence, the express terms of the CS Holding operating agreement itself – the agreement upon which the Trustee rests his claim that the Ginn Fiduciary Defendants owed fiduciary duties to the Debtors – refute the existence of any such duties.  The Ginn Fiduciary Defendants owed no fiduciary duties to the Debtors before the restructuring; and the foregoing excerpt from the CS Holding operating agreement confirms that the restructuring did not alter the economic and management rights of the Ginn Fiduciary Defendants so as to create new fiduciary duties that did not exist prior to the restructuring.

Moreover, there is no legal authority whatsoever for the proposition that Enterprises (or indirectly Ginn by virtue of his alleged position as C.E.O.) based upon its status as a member and manager of CS Holding, a Delaware limited liability company, owed fiduciary duties to its wholly-owned Delaware subsidiary, CS Borrower, or to CS Borrower's Georgia subsidiaries, which included the Debtors.[22]  "Delaware law is stingy about affording fiduciary protections to those who do not clearly qualify for them."  *The Cont'l Ins. Co. v. Rutledge & Co. Inc.,* No. 15539, 1999 WL 66528, at * 5 (Del. Ch. Jan. 26, 1999).  For instance, in the corporate context, it is well-settled that a parent does not owe fiduciary duties to its wholly-owned subsidiary. *Anadarko Petrol. Corp. v. Panhandle E. Corp.,* 545 A.2d 1171, 1174 (Del. 1988) (citing *Sinclair Oil Corp. v Levien,* 280 A.2d 717, 720 (Del. 1971) and *Goodman v. Futrosky,* 213 A.2d 899, 902

(Del. 1965)). Decisions from courts in other jurisdictions are in accord with Delaware law

regarding the absence of a fiduciary duty to a wholly-owned subsidiary. *See Household*

*Reinsurance Co., Ltd. v. Travelers Ins. Co.*, No. 91 C 1308, 1992 WL 22220, at *3 (N.D. Ill. Jan.

31, 1992) ("Under Minnesota law, a 100% shareholder does not owe a fiduciary duty to the

wholly owned corporation. "); *Anderson v. Benson*, 394 N.W.2d 171, 175 (Minn. Ct. App. 1986)

(holding that a sole shareholder "may use the corporate assets as he sees fit" unless the

corporation was organized for an illegal purpose and that as a matter of law, there can be no

misappropriation of corporate assets by a sole shareholder); *Resolution Trust Corp. v. Bonner*,

No. H-92-430, 1993 WL 414679, at *3 (S.D. Tex. June 3, 1993) ("the cause of action for breach

of fiduciary duty against [the parent entities] must be dismissed because a parent corporation

owes no duties to its wholly-owned subsidiary").[23]

Likewise, by analogy to Delaware corporate law, a parent organized as a Delaware

limited liability company owes no fiduciary duties to its wholly-owned Delaware limited liability

company subsidiary. Nor, by further analogy, does that limited liability company parent owe

any duties to its subsidiary's wholly-owned subsidiaries (wherever and in whatever form they

may be organized), who stand in no better position than the parent's wholly-owned subsidiary

itself. Thus, the Trustee's attempt to bootstrap claims against the Ginn Fiduciary Defendants for

breach of fiduciary duties to the Debtors, as CS Borrower's subsidiaries, based upon alleged

duties owed by CS Holding to CS Borrower fails because, as a matter of Delaware law, CS

Holding owed no such duties to CS Borrower.

---

[22] Under Florida choice of law provisions, a claim that CS Holdings breached fiduciary duties to its subsidiary, CS
Borrower, is governed by Delaware law, the state of organization for both CS Holding and CS Borrower. FLA STAT.
ANN. § 608.505(3) (LexisNexis 2011).
[23] The reasoning behind this rule is that when an entity is wholly owned "there is only one interest to be protected
[the parent's] and hence no opportunity for divided loyalties." 3 Fletcher Cyc. Corp. § 844.30 (2011 ed).

**B.**    **The Fiduciary Duty Claims Also Fail Because the Trustee Has Failed to Allege Facts to Establish That the Debtors Suffered Any Damages.**

Even assuming the Trustee adequately pleaded (which he has not) that any of the Ginn Fiduciary Defendants breached fiduciary duties allegedly owed to the Debtors, the Fiduciary Duty Claims must be dismissed because the Trustee has failed to plead enough facts to establish any resultant damages to the Debtors.   Under *Twombly/Iqbal*, "a simple recitation of the [staggering losses], together with generalized statements of blame do not state a legal claim for breach of fiduciary duties . . . ."  *Lubin*, 382 F. App'x at 873.  *See also Conner v. Hart*, 252 Ga. App. 92, 96, 555 S.E.783, 787 (2001) (stating that actual damages must specifically result from a breach of fiduciary duty).   Courts routinely dismiss claims for failure to adequately plead damages under *Twombly* and *Iqbal*.  *See* Sec. III. B., *supra*.

Here, the Trustee has not alleged any particular damages resulting from the alleged breach of fiduciary duties.  He merely alleges in generalized, conclusory terms that:

- "the respective breaches of fiduciary duty proximately caused the [Debtors] to sustain substantial economic damages" (FAC, ¶¶ 232, 241);

- the Ginn Fiduciary Defendants effectively "looted" the Debtors of their value in connection with the loan transaction (FAC, ¶¶ 12, 190, 209, 230, 239); and

- "The precise magnitude of the [ ] Debtors' damages will be established through expert testimony."[24]  (FAC, ¶¶ 228, 237).

The Trustee uses the word "looting" in conclusory fashion to suggest that the Ginn Fiduciary Defendants are somehow responsible for the Debtors' loss of the value of their Projects. However, the Trustee fails to allege a factual basis sufficient to connect that decline in value to the Ginn Fiduciary Defendants or the Credit Suisse Transaction as opposed to the general collapse of the real estate market that the Trustee has repeatedly urged as the motivation for the

---

[24]   As noted above, the Court authorized the Trustee to retain experts over a year ago.

Credit Suisse Transaction.    Nevertheless, despite the Trustee's characterization of the Credit Suisse Transaction as "looting" the Debtors, it is indisputable that the Debtors continued to own and operate their respective projects after the Credit Suisse Transaction was completed through the Petition Date.    Furthermore, as this Court has already held, the Loan Proceeds from the Credit Suisse Transaction were not property of the Debtors and, therefore, cannot form the basis for a damage claim by the Debtors of "looting" their value.

When the foregoing allegations are stripped away, the Trustee's only allegation of damage to Debtors' property resulting from the transfer of the Second Liens was "a dramatic detrimental change in [the Debtors'] financial condition."  (FAC, ¶¶ 233, 242).  In support of this allegation, however, the Trustee only cites to internal balance sheets of Tesoro and Quail West. Liabilities reflected on a balance sheet do not constitute a financial loss.[25]    As the Eleventh Circuit stated in *Lubin*, "[d]ebt is not an intrinsic harm."  *Lubin*, 382 F. App'x at 872.

In light of the Trustee's failure to plead "non-conclusory allegations stating a plausible claim that [the Ginn Fiduciary Defendants]' conduct caused specific economic harm in a quantifiable amount," he has not satisfied the *Twombly/Iqbal* Rule 12(b)(6) pleading requirement as to damages.  *Kopperl*, No. 3:09-CV-1754 (CSH), 2010 WL 3490980, at *4.  Accordingly, Counts VII and VIII should be dismissed with prejudice.

---

[25] The documents referenced in the FAC are internal balance sheets and pro form tax returns for the LLLP Debtors only.  The FAC contains no allegations of damage to the General Partner LLC Debtors.

V.    **CONCLUSION**

This Court should dismiss the Fourth Amended Complaint, in its entirety, with prejudice.


Dated: August 12, 2011                                    Respectfully submitted,


                                                          **SMITH MOORE LEATHERWOOD LLP**

                                                          /s/Lynn F. Chandler
                                                          Lynn F. Chandler
                                                          Email: *lynn.chandler@smithmoorelaw.com*
                                                          525 North Tryon Street
                                                          Suite 1400
                                                          Charlotte, North Carolina 28202
                                                          Telephone: (704) 384-2600
                                                          Facsimile: (704) 384-2800
                                                          *Counsel to the Ginn Defendants*

                                                          - AND -

                                                          **KOZYAK TROPIN &**
                                                          **THROCKMORTON, P.A.**
                                                          Charles W. Throckmorton
                                                          (Florida Bar No. 286192)
                                                          Email: *cwt@kttlaw.com*
                                                          2525 Ponce de Leon, 9th Floor
                                                          Miami, Florida 33134
                                                          Telephone: (305) 377-1800
                                                          Facsimile: (305) 372-3508
                                                          *Counsel to the Ginn Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy of this document has been furnished by the Court's electronic notification system to all parties who have appeared in this adversary proceeding, and by electronic mail on the following, this 12th day of August, 2011:

| Law Firm | Attorney | Email Address |
|---|---|---|
| Stearns Weaver Miller Weissler Alhadeff & Sitterson, P.A. | Eugene E. Steans, Esq.<br>Harold D. Moorefield, Jr., Esq.<br>Matthew W. Buttrick, Esq.<br>Andrew E. Stearns, Esq. | estearns@stearnsweaver.com<br>hmoorefield@stearnsweaver.com<br>mbuttrick@stearnsweaver.com<br>astearns@stearnsweaver.com |
| Bilzin Sumberg Baena Price & Axelrod, LLP | Scott L. Baena, Esq.<br>Jay M. Sakalo Esq. | sbaena@bilzin.com<br>jsakalo@bilzin.com |
| Ropes & Gray | D. Ross Martin, Esq.<br>Peter L. Welsh, Esq.<br>Keith Wofford, Esq.<br>Patricia Chen, Esq. | ross.martin@ropesgray.com<br>peter.welsh@ropesgray.com<br>keith.wofford@ropesgray.com<br>patricia.chen@ropesgray.com |
| Berger Singerman, P.A | Paul Steven Singerman, Esq.<br>Michel 0. Weisz, Esq. | singerman@bergersingerman.com<br>mwsz@bergersingerman.com |
| Klehr Harrison Harvey Branzburg LLP | William A. Harvey, Esq.<br>Rona J. Rosen, Esq. | wharvey@klehr.com<br>rrosen@klehr.com |
| Smith Hulsey & Busey | Stephen D. Busey<br>James A. Bolling | busey@smithhulsey.com<br>jbolling@smithhulsey.com |

/s/Lynn F. Chandler
Lynn F. Chandler